UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re:<br><br>ACE MOTOR ACCEPTANCE CORPORATION,<br><br>         Debtor,<br><br>ACE MOTOR ACCEPTANCE CORPORATION,<br><br>         Plaintiff,<br><br>v.<br><br>MCCOY MOTORS, LLC; MCCOY MOTORS, LLC, d/b/a RIDE FAST; ROBERT MCCOY, JR.; AND MISTY MCCOY,<br><br>         Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Case No. 18-30426**<br>**Chapter 11**<br><br>**Adversary Proceeding No. 18-03036**<br><br>**DEFENDANT, MCCOY MOTORS, LLC; MCCOY MOTORS, LLC, d/b/a RIDE FAST RESPONSE TO VERIFIED COMPLAINT** |

NOW COMES the Defendant/ Creditor MCCOY MOTORS, LLC; MCCOY MOTORS, LLC, d/b/a RIDE FAST ("Defendant"), in this action who hereby responds specifically to the Plaintiff Debtor's ("Plaintiff") Complaint as follows:

1.      Defendant lacks sufficient knowledge regarding the allegation contained in paragraph 1 of Plaintiff's Complaint.

2.      Defendant admits the allegation contained in paragraph 2 of Plaintiff's Complaint.

3.      Defendant admits the allegation in paragraph 3 of Plaintiff's Complaint.

4.      Defendant admits the allegation contained in paragraph 4 of Plaintiff's Complaint.

5.       Paragraphs 5, 6, 7 and 8 are legal conclusions, which requires no response. To the extent a response is required, the same is denied.

6.       Defendant lacks sufficient knowledge regarding the allegation contained in paragraphs 5, 6 of Plaintiff's Complaint.

7.       Defendant lacks sufficient knowledge regarding the allegation contained in paragraph 7 of Plaintiff's Complaint.

8.       Defendant lacks sufficient knowledge regarding the allegation in paragraph 8 of Plaintiff's Complaint.

9.       Defendant denies the allegation in paragraph 9 of Plaintiff's Complaint.

10.      Defendant denies the allegations contained in paragraph10 of Plaintiff's Complaint.

11.      Defendant partially admits the allegations contained in paragraphs 11 and 15 of Plaintiff's Complaint with the exception regarding the validity and/or enforceability of said "Agreements" and "Guarantee(s)"

12.      Defendant lacks sufficient knowledge regarding the allegations in paragraphs 12, 13, 14 of Plaintiff's Complaint.

13.      Defendant denies the allegations contained in paragraphs 16, 17, 18 of Plaintiff's Complaint.

14.      Defendant denies the allegation contained in paragraph 19 of Plaintiff's Complaint.

15.      Paragraphs 20-22 are legal conclusions, which requires no response. To the extent a response is required, the same is denied.

16.      Paragraph 23 is a legal conclusion, which requires no response. To the extent a response is required, the same is denied. Defendant denies that the "Contracts" were terminated properly by the Debtor.

17.      Regarding Paragraphs 24, 25, 26, and 27, contained in Plaintiff's Complaint, Defendant denies the allegations; however, said matters have been temporarily resolved by Order of the Court issued June 25, 2018 (copy attached as Exhibit "A").

18.      Defendant partially admits the allegations contained in paragraphs 28-31 of Plaintiff's Complaint with the exception regarding the validity and/or enforceability of said Agreements.

19.    Defendant admits the allegation contained in paragraph 32 of Plaintiff's Complaint.

20.    Defendant denies the allegations contained in paragraph 34 of Plaintiff's Complaint.

21.    Paragraph 35 is a legal conclusion, which requires no response. To the extent a response is required, the same is denied.

22.    Defendant lacks sufficient knowledge regarding the allegations in paragraphs 33, 35, 36-37, 38 of Plaintiff's Complaint.

23.    Defendant denies the allegations contained in paragraphs 39, 40 of Plaintiff's Complaint.

24.    Defendant partially admits the allegations contained in paragraph 41 of Plaintiff's Complaint with the exception that Defendant contends that Debtor is at a maximum entitled to one-half of said value of contracts and lacks sufficient knowledge regarding the allegation and which specific titles and payments that Debtor is claiming.

25.    Defendant partially admits the allegations contained in paragraph 42 of Plaintiff's Complaint with the respect to the email notice and Defendant denies the allegations contained in paragraph 42 of Plaintiff's Complaint.

26.    Defendant admits the allegation contained in paragraph 43 of Plaintiff's Complaint.

27.    Defendant lacks sufficient knowledge regarding the allegations in paragraph 44 of Plaintiff's Complaint.

28.    Defendant admits the allegations contained in paragraphs 45-48 of Plaintiff's Complaint.

29.    Defendant denies the allegations contained in paragraphs 49 of Plaintiff's Complaint and offers text messages on Exhibit "B" as proof that Debtor was in fact the one disabling the GPS systems.

30.    Defendant denies the allegations contained in paragraph 50 of Plaintiff's Complaint.

31.    Defendant lacks sufficient knowledge regarding the allegations in paragraph 51 of Plaintiff's Complaint.

32.     Defendant partially admits the allegations contained in paragraphs 52-53 of Plaintiff's Complaint with the exception that Defendant contends that Debtor is not entitled to sell said Contracts and Agreements because Defendant contends that they own one-half of said contracts.

33.     Defendant lacks sufficient knowledge regarding the allegations in paragraph 54 of Plaintiff's Complaint.

34.     Defendant denies the allegations contained in paragraph 55 of Plaintiff's Complaint and requests that the Court determine said dollar amounts.

35.     Defendant partially admits the allegations contained in paragraph 56 of Plaintiff's Complaint with the exception regarding the validity and/or enforceability of said Agreements.

36.     Defendant partially admits the allegations contained in paragraph 57 of Plaintiff's Complaint with respect to receiving said Notice of Default; however, denies the past due dollar figure allegation and requests that the Court determine said dollar amounts.

37.     Defendant partially admits the allegations contained in paragraphs 58-60 of Plaintiff's Complaint with respect to receiving said Notice of Default; however, denies that Defendant was in breach/default.

38.     Defendant denies the allegations contained in paragraph 61 of Plaintiff's Complaint.

39.     Defendant admits the allegations contained in paragraph 62 of Plaintiff's Complaint with respect to the fact that Debtor made such demand(s).

40.     Defendant admits the allegations contained in paragraph 63 of Plaintiff's Complaint but denies that Debtor had the right to make such acceleration, as such right should be determined by the Court.

41.     Defendant partially admits the allegations contained in paragraphs 64-66 of Plaintiff's Complaint but denies the right of Debtor to enforce said provisions.

42.     Defendant denies the allegations contained in paragraph 67 of Plaintiff's Complaint.

43.     Defendant admits the allegations contained in paragraphs 68-69 of Plaintiff's Complaint.

44.     Defendant lacks sufficient knowledge regarding the allegations in paragraph 70 of Plaintiff's Complaint and denies the allegation(s) of default.

45.     Defendant admits the allegations contained in paragraph 71 of Plaintiff's Complaint.

46.     Defendant partially admits the allegations contained in paragraph 72 of Plaintiff's Complaint with respect to receiving said email Notice; however, denies that the Debtor had the right to terminate said servicing rights.

47.     Defendant lacks sufficient knowledge regarding the allegations in paragraphs 73-76 of Plaintiff's Complaint

48.     Defendant denies the allegations contained in paragraphs 77-78 of Plaintiff's Complaint.

49.     Defendant partially admits the allegations contained in paragraph 79 of Plaintiff's Complaint with respect to receiving said notice; however, denies that the Debtor owns 100% of the Contracts.

50.     Defendant partially admits the allegations contained in paragraph 80 of Plaintiff's Complaint with respect to receiving said notice; however, denies that the Debtor had the right to terminate said servicing rights and request a determination of such by said Court.

51.     Defendant denies the allegations contained in paragraph 81 of Plaintiff's Complaint as such determination of what constitutes property of the bankruptcy estate is a proper determination of said Court.

52.     Defendant partially admits the allegations contained in paragraph 82 of Plaintiff's Complaint with respect to sending said text message; however, denies and disputes the allegation of said lack of authority by the Debtor.

53.     Defendant admits the allegation contained in paragraph 83 of Plaintiff's Complaint.

54.     Defendant denies the allegations contained in paragraph 84 of Plaintiff's Complaint.

55.     Defendant partially admits the allegations contained in paragraph 85 of Plaintiff's Complaint with respect to making a statement regarding the blocked GPS access; however, the Debtor blocked GPS access for the Defendant to *ALL [emphasis added]* vehicles, not just the ones defined as "Repossessed Vehicles."

56.     Defendant admits the allegations contained in paragraphs of 86-87 Plaintiff's Complaint.

57.    Defendant denies the allegations in paragraphs 88-90; however, said matters have been resolved by Order of the Court issued June 25, 2018.

58.    Defendant denies the allegations contained in paragraph 91 of Plaintiff's Complaint.

59.    Defendant partially admits the allegations contained in paragraph 92, that the Debtor has repeatedly demanded payments from the Defendant; however, Defendant denies the right of Debtor to such demands due to the disputes regarding the underlying Agreements.

60.    Defendant denies the allegations contained in paragraphs 93-94 of Plaintiff's Complaint; however, said matters have been resolved by Order of the Court issued June 25, 2018.

61.    Defendant lacks sufficient knowledge regarding the allegations in paragraph 95 of Plaintiff's Complaint.

62.    Defendant admits the allegations contained in paragraph 96 of Plaintiff's Complaint.

63.    Defendant lacks sufficient knowledge regarding the allegations in paragraphs 97- 99 of Plaintiff's Complaint due to the fact that Defendant cannot have knowledge of phone calls Debtor's counsel may or may not have received and furthermore, said email excerpts are not listed as Exhibits but are only inserted in the Complaint.

64.    Defendant denies the allegations contained in paragraph 100 of Plaintiff's Complaint due to the fact that said communications allegedly from Vehicle Buyers arose from Debtor's counsel's aforementioned letter and not Defendant.

65.    Defendant denies the allegations contained in paragraphs 101-104 of Plaintiff's Complaint.

66.    Defendant denies the allegations contained in paragraph 105 of Plaintiff's Complaint with respect to being in default and furthermore, Defendant considers said statement "… the Defendants are engaging in similar conduct with respect to their contracts with those other companies" of which no evidence nor names of "other companies" was provided and considers such statements as slanderous, false, misleading and inflammatory with the intention to cloud the true underlying legal issues before this Court.

67.    Defendant denies the allegations contained in paragraph 106 of Plaintiff's Complaint; however, said payment matters were temporaily resolved by Court Order issued June 25, 2018 and Defendant requests such determination of payment/servicing/collection rights by this Court.

68.    Defendant denies the allegations contained in paragraphs 107-108 of Plaintiff's Complaint.

69.    Defendant lacks sufficient knowledge regarding the allegations in paragraphs 109-112 of Plaintiff's Complaint due to the fact that Defendant cannot speak to the Debtor's ordinary course of business dealings or which companies Debtor may or may not have used in the past for GAP insurance nor of any profit strategies or dealer awareness.

70.    Defendant denies the allegations contained in paragraph 113, and requests that Debtor provide an example of how the dealer made a profit of "…marking up the GAP products…" when the Debtor sets such pricing.

71.    Defendant denies the allegations contained in paragraph 114 of Plaintiff's Complaint.

72.    Defendant denies the allegations contained in paragraph 115 of Plaintiff's Complaint.

73.    Defendant admits the allegations contained in paragraphs 116-117 of Plaintiff's Complaint.

74.    Defendant denies the allegations contained in paragraph 118 of Plaintiff's Complaint.

75.    Defendant denies the allegations contained in paragraphs 119-120 of Plaintiff's Complaint due to the specific language contained in the GAP Addendum which is in part as follows:

*The GAP contract states **"TERMINATION OF ADDENDUM"** This **Addendum** will terminate on the earlier date that one of the following events occurs: 1) the date **Your Financing Contract** is scheduled to terminate; 2) upon payment in full of the **Financing Contract**; 3) expiration of any redemption period following the repossession or surrender of the **Collateral**; 4) in the event of a **Constructive Total Loss** or theft of the **Collateral**; or 5) the date the **Financing Contract** is prepaid or the **Financing Contract** is refinanced.*

*To address the repossession, 3; in both NC and SC the "right to redemption" is 10 days and the vehicle must be paid off in full. So the Gap Company seems to be saying after the 10 days the Gap Addendum is terminated. Also if the vehicle is paid in full GAP should be canceled because the consumer no longer needs the product. To address the titling issue please see 5; If there is a titling issue then the Debtor will obviously will not be the lienholder, therefore the contract must me re-contracted or refinanced again terminating the GAP contract.*

Also, on the *GAP contract "YOUR RIGHT TO CANCEL" ... "In the event of a cancellation, the **Financial Institution/Lender** will be named as payee on all refunds and sole payee on a repossession refund."*

Once the Dealer pays off the Debtor, the dealer then becomes the Financial Institution; therefore, all refunds are due to the dealer, including the unused portion(s) received by the GAP Company and the Debtor.

By way of an illustrative example,

GAP Refund Example:

Customer pays $399.00 to Debtor for GAP coverage and finances the underlying vehicle for 36 months, then, Customer defaults on the vehicle loan after 3 months, and the vehicle is repossessed.   The pro-rata refund due to the Customer is $365.76 ($399.00 divided by 36 x 33 (remaining months).

Since dealer paid off Debtor when dealer bought the Contract, so the dealer is the one who is DUE the remaining GAP premium which should be credited to the Customer's account.

76.     Defendant admits the allegations contained in paragraph 121 of Plaintiff's Complaint with respect that they are seeking GAP refunds; however, Defendant believes that Debtor is liable to Defendant for said refunds.

77.     Defendant admits the allegations contained in paragraph 122 of Plaintiff's Complaint with respect to being the party to cancel the GAP protection; however, the Debtor still owes their portion of the GAP funds per the Addendum to the dealer/Defendant.

78.     Defendant denies the allegations contained in paragraph 123 of Plaintiff's Complaint as such duty is in the Agreements already a part of the Complaint exhibits. See Exhibit "C" which is the form of GAP Addendum required to be signed by all customers who purchase GAP coverage.  Said Addendum by its terms requires said duty of cancellation.

79.     Defendant admits the allegations contained in paragraph 124 of Plaintiff's Complaint with respect to being the calculations being incorrect due to the fact that the Defendant used the current industry standard of a pro-rata calculation for all of the GAP cancellations instead of applying the prorate or the "rule of '78" depending upon who issued the GAP coverage – Carco Gap (uses pro-rata) and OwnerGuard Gap (who uses the "rule of 78").   Said calculations can easily be determined once the underlying contractual issues and ownership of such is determined.

80.      Defendant denies the allegations contained in paragraph 125 of Plaintiff's Complaint.

81.      Defendant partially admits the allegations contained in paragraph 126 of Plaintiff's Complaint with respect to having made a representation to Debtor regarding applying for GAP refunds; however, such representation was made PRIOR to the meeting Pro Se Defendant, Roberty McCoy, Jr. had with Russ Algood and Robin Milestone on May 9, 2018.

82.      Defendant admits the allegations contained in paragraph 127 of Plaintiff's Complaint.

83.      Defendant denies the allegations contained in paragraph 128 of Plaintiff's Complaint.   See Exhibit "D" which includes an email dated 05/15/2018 at 12:08 p.m. from Robin Milestone which substantively discusses the GAP refund issue and a Weekly Statement sent to Defendant from Debtor (dated 05-16-2018) whereby Debtor credited Defendant with the $50,000.00 "carryover balance" and reduced Defendant's amount owed by such $50,000.00.   Then, approximately 1- 2 hours later that same day, a "revised" Weekly Statement was issued and removed the $50,000.00 credit.

84.      Defendant admits the allegations contained in paragraph 129 of Plaintiff's Complaint.

85.      Defendant admits the allegations contained in paragraph 130 of Plaintiff's Complaint.

86.      Defendant admits the allegations contained in paragraph 131 of Plaintiff's Complaint.

87.      Defendant denies the allegations contained in paragraphs 132-133 of Plaintiff's Complaint.

88.      Defendant denies the allegations contained in paragraphs 134-136 of Plaintiff's Complaint.  See previous Exhibit"D" whereby there is no label of "disputed amount" nor is "Carryover Balance" a term that means "a/k/a a disputed amount."

89.      Defendant denies the allegations contained in paragraphs 137-138 of Plaintiff's Complaint.

90.      Defendant admits the allegations contained in paragraphs 139-141 of Plaintiff's Complaint with respect to the existence of said emails; however, in order to put the underlying matters into proper context, specifically, the term "obligation", the entire email threads are necessary and are attached hereto as Exhibit "E".

91.    Defendant denies the allegations contained in paragraphs 142-147 of Plaintiff's Complaint due to the fact that Defendant disputes both the validity and enforceability of said Agreements which per the Plaintiff's excepts provided in the Complaint, state that there is no right of offset, etc. due to fraud, usury and the like which are contrary to public policy and therefore, could render said Agreements null and void.

Furthermore, the parties hereto acted in their industry's normal and customary standards and business practices, whereby they observed the intention and "spirit" of the Agreements.

92.    Defendant denies the allegations contained in paragraphs 148-150 of Plaintiff's Complaint due to the fact that said GAP refunds belong to the customer/consumer's account(s) which Defendant/dealer owns by having purchased/been assigned said contracts from Debtor.

93.    Defendant denies the allegations contained in paragraphs 151 -152 of Plaintiff's Complaint for the following reasons:  (1) said N.C.G.S. 25-9-609 does not govern as the underlying events (cars being removed from McCoy Motors, LLC lot) took place in South Carolina, not North Carolina; (2) the BHPH (as previously defined in the Complaint) advertisement (used with the intention of acquiring new dealers) states in relevant part "… No lien on your property;" said advertisement is attached hereto as Exhibit "F"; (3) Defendant contends that "breaking and entering" into private property and destroying locks and fences and the like is a "breach of the peace" as that term is commonly defined and used; (4) Furthermore, other property NOT [emphasis added] a part of this proceeding was damaged by the Defendant's and/or their (hired) agents.  For example, the grounds have deep and numerous tire marks and groves and other vehicles that are NOT a part of this proceeding were damaged by said illegal removals.   Copies of some of the damages are included herein as photographs on Exhibit "G".  Said photos are meant to be examples and not inclusive of all damages but to demonstrate to the Court what took place.

94.    Defendant denies the allegations contained in paragraph 153 of Plaintiff's Complaint Plaintiff's Complaint as Defendant has tendered to Debtor all such keys in their possession.

95.    Defendant lacks sufficient knowledge regarding the allegations in paragraph 154 of Plaintiff's Complaint since Defendant was not a party to the stated subcontract with Car Masters.

96.    Defendant denies the allegations contained in paragraph 155 of Plaintiff's Complaint and contains a legal conclusion, which requires no response. To the extent a response is required, the same is denied.

97.    Defendant denies the allegations contained in paragraph 156 of Plaintiff's Complaint to the extent that Defendant contends that Debtor's actions rise to the level of being "grossly negligent."

98.    The allegations contained in paragraphs 157-166; and 168-169; and 171-172; and 179-180 of Plaintiff's Complaint have been rendered moot; as such matters were resolved by Court Order issued June 25, 2018 and Defendant's compliance with said Order.

99.    Defendant denies the allegations contained in paragraphs 167 and 170 and 173 of Plaintiff's Complaint as such determination of legal repossession has not been made and said matters have been rendered moot; as such matters were resolved by Court Order issued June 25, 2018.

100.    Defendant denies the allegations contained in paragraphs 174, 175, 176, 177, 179, and 180 of Plaintiff's Complaint and said matters have been rendered moot; as such matters were resolved by Court Order issued June 25, 2018.

101.    Defendant denies the statements contained in paragraph 178 of Plaintiff's Complaint as previously indicated herein.

102.    Defendant lacks sufficient knowledge regarding the allegations contained in paragraphs 181, and 183-206 of Plaintiff's Complaint and to the extent that a response is required, the same is denied and said matters should not be considered a substantive part of a bankruptcy proceeding.

103.    Defendant partially admits the allegations contained in paragraph 182 to the extent that Defendant sent an email to his then attorney, David Badger of Plaintiff's Complaint.

104.    Defendant admits the allegations contained in paragraphs 207-208 of Plaintiff's Complaint.

105.    Defendant denies the statements contained in paragraph 209 of Plaintiff's Complaint due to the fact that Defendant (and Defendant LLC) is listed as a lienholder on said vehicle titles which are the subject of this proceeding.  See attached Exhibit "H" as an example of said title whereby Defendant LLC is listed as a second lienholder and per Federal law adopted by the state of North Carolina states in relevant part that Debtor trade names are insufficient.  See N.C.G.S. 25-9-503.

And see Exhibit "I" which was submitted to dealers and advertised on the website of the Debtor by Debtor stating that as a dealer participant in the BHPH program, said dealer will "…retain equity in your business."

Furthermore, Defendant cannot locate documentation that the entity listed on said titles as a first lienholder and on other contracts and agreements ("AMAC") exists in a corporate and/or legal capacity or as a "DBA" or trade name or assumed name. See Exhibit "J" attached hereto as Defendant research on said name issue.

106.   Defendant denies the allegations contained in paragraph 210 of Plaintiff's Complaint and is a matter for the determination by the Court.

107.   Defendant denies the allegations contained in paragraphs 211, 213-217 of Plaintiff's Complaint and is a matter for the determination by the Court.

108.   Defendant lacks sufficient knowledge regarding the allegations contained in paragraph 212 of Plaintiff's Complaint.

109.   Defendant denies the allegations contained in paragraphs 218-219 of Plaintiff's Complaint and asserts that no such written notice as provided for in the referenced agreements was necessary due to the fact that the parties were engaged in communication regarding said Weekly Statements and the amounts contained therein and that Defendants continued to act and discuss such amounts in good faith and pursuant to their normal course of business dealings and communications as they had for almost two years. Again, Defendants were keeping with the "spirit" and intent of said agreements and in the normal and customary course of industry business.

110.   Defendant denies the allegations contained in paragraphs 220-223 of Plaintiff's Complaint.

111.   Defendant admits the allegations contained in paragraph 224 of Plaintiff's Complaint.

112.   Defendant denies the allegations contained in paragraphs 225-226 of Plaintiff's Complaint.

113.   Paragraphs 227, 236, 252, 257, 261, 263, 269, 276, 281, 284, 287, 293, 301, 308, 314, 317, 319 are incorporation paragraphs and as such, no response is required.

114.   Defendant lacks sufficient knowledge regarding the allegations, if any, contained in paragraphs 228-233 of Plaintiff's Complaint and such paragraphs state (in part) purported legal conclusions, which require no response. To the extent a responses are required, the same is denied.

115.   Paragraphs 234-235 of Plaintiff's Complaint have been rendered moot; as such matters were resolved by Court Order issued June 25, 2018.

116.    Defendant denies the allegations contained in paragraphs 237-239; 241-246 of Plaintiff's Complaint.

117.    Defendant lacks sufficient knowledge regarding the allegations, if any, contained in paragraphs 240, 247-251 of Plaintiff's Complaint.

118.    Paragraphs 253-254, 256, 258 and 260 of Plaintiff's Complaint have been rendered moot; as such matters were resolved by Court Order issued June 25, 2018.

119.    Defendant denies the allegations contained in paragraphs 262, 264-268 and 270 of Plaintiff's Complaint and are matters for the determination by the Court.

120.    Defendant denies the allegations contained in paragraphs 271-275 and 270 of Plaintiff's Complaint.

121.    Defendant lacks sufficient knowledge regarding the allegations, if any, contained in paragraphs 277-278 of Plaintiff's Complaint.

122.    Defendant denies the allegations contained in paragraphs 279-280; 282-283, 286, 288-292 of Plaintiff's Complaint.

123.    Defendant denies the allegations contained in paragraph 294 of Plaintiff's Complaint.

124.    Defendant admits the allegations contained in paragraph 295 of Plaintiff's Complaint.

125.    Defendant denies the allegations contained in paragraphs 296-300 of Plaintiff's Complaint.

126.    Paragraphs 302-303 of Plaintiff's Complaint have been rendered moot; as such matters were resolved by Court Order issued June 25, 2018.

127.    Defendant denies the allegations contained in paragraphs 304, 306, and 307 of Plaintiff's Complaint.

128.    Paragraph 305 was resolved by Court Order issued June 25, 2018, but was not in favor of the Plaintiff but terminated by Defendant to the York County Sheriff's Department pursuant to the Court Order.

129.    Defendant denies the allegations contained in paragraphs 309-313 of Plaintiff's Complaint.

130.   Defendant denies the allegations contained in paragraphs 315, 316, 318 of Plaintiff's Complaint.

131.   Paragraphs 320-324 are legal conclusions, which requires no response.  To the extent a response is required, the same is denied.

132.   Paragraph 325 is an incorporation paragraph and as such, no response is required.   For the sake of a response, Defendant specifically denies the multiple allegations raised in this paragraph.

**PRAYER FOR RELIEF**:

1.   That a Trustee be appointed.

2.   That the Plaintiff's Claim(s) be dismissed and the Plaintiff recover nothing by way of its Claim.

3.   That damages be assessed for the vehicles that Debtor illegally removed from the premises of McCoy Motors, LLC, and other related damages and those funds be put into a constructive trust pending the final outcome of these proceedings.

4.   That the Court determine that Defendant is entitled to one-half of the payments under the contracts as was the normal course of business dealings with Debtor until said Bankruptcy filing and that Defendant is due the GAP refunds as outlined herein.   Furthermore, that the servicing payments return to the Defendant and Defendant shall remit as is proper.

5.   That the Court lift the section of the June 25, 2018 Order regarding repossession of vehicles as customers who have received (1)   Debtor's Counsel's original letter and then (2) the Court Order are confused and not making payments and defaulting on their loan obligations.   The lack of the ability to repossess is damaging both the Debtor (and the Bankruptcy estate/assets) as well as the Defendant(s).

6.   For such other and further relief as the Court deems just and proper in law and equity.

7.   That the costs of this action and legal fees be taxed against the Plaintiff.

This the 17th day of July, 2018.

**LANG LAW FIRM**

/s/ Kristin Harmon Lang
Kristin Harmon Lang, Esquire
North Carolina Bar No.: 20539
2435 Plantation Center Drive
Matthews, NC 28105
Phone: 704-907-2203
Fax: 704-847-1452
kharmonlang@gmail.com

CERTIFICATE OF SERVICE

This is to certify that I, the undersigned have this day served a copy of the attached DEFENDANT'S REPLY TO VERIFIED COMPLAINT via ECF to all parties or their attorney of record requesting notice and via email to the following:

Robert B. McCoy Jr.
mccoymotors@live.com
mnmccoy@hotmail.com
robmccoymotors@comporium.net

This the 17th day of July, 2018.

**LANG LAW FIRM**

/s/ Kristin Harmon Lang
Kristin Harmon Lang, Esquire
North Carolina Bar No.: 20539
2435 Plantation Center Drive
Matthews, NC 28105
Phone: 704-907-2203
Fax: 704-847-1452
kharmonlang@gmail.com







J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ACE MOTOR ACCEPTANCE | ) | Case No. 18-30426 |
| CORPORATION, | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ACE MOTOR ACCEPTANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. 18-3036 |
| v. | ) | |
| | ) | |
| MCCOY MOTORS, LLC, MCCOY | ) | |
| MOTORS, LLC d/b/a RIDE FAST; ROBERT | ) | |
| MCCOY, JR. and MISTY MCCOY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER CONCERNING INTERIM SERVICING OF ACCOUNTS OF VEHICLE BUYERS; AND ORDER SETTING HEARING ON PRELIMINARY INJUNCTION

THIS MATTER came before the Court on June 21, 2018 on the following: Emergency Motion for Preliminary Injunction, 11 U.S.C. Section 105, Bankruptcy Rule 7065; Emergency Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542; Bankruptcy Rule 7064; Attachment; Emergency Motion for Injunction of Defendants from Pursuing Car Masters Litigation; Emergency Motion for Injunction of Defendants from Pursuing Criminal Complaint; and Emergency Motion for Imposition of Constructive Trust (the "Motions"). The Debtor was represented by James Henderson and the Defendants were represented by Kristin Lang ("Lang").

Having considered the record herein, including the Verified Complaint, and the arguments of counsel, it is

ORDERED as follows:

1.     As a result of today's proceedings and under current order of the Court, the accounts of Vehicle Buyers[1] will be serviced by McCoy Motors, LLC ("McCoy LLC"). McCoy LLC is solely responsible for the collection of said monies.

2.     Commencing June 22, 2018, the Debtor (if Debtor receives any such monies or insurance checks and the like) and McCoy LLC shall provide each other with complete, accurate and current data concerning collections of the Vehicle Buyer accounts, on a daily basis, pending further order of this Court.   In order for McCoy LLC to post daily such payments, Debtor must return the access previously provided to McCoy LLC in order for payments to be timely posted to Debtor's servicing account system.

3.     Any payments posted by McCoy LLC for servicing payments of Vehicle Buyers on or after June 21, 2018 shall be paid over to Lang on a daily basis (if received on a daily basis during regular business hours), and shall be held in an escrow account maintained by Lang pending further order of this Court.   Lang shall establish a separate bank escrow account ("Lang Escrow Account") solely for the purpose of collecting said monies from McCoy pursuant to this order.   Furthermore, if Debtor receives any such monies or insurance checks and the like after June 21, 2018, Debtor shall remit such payments into the Lang Escrow Account.

4.     Neither the Debtor nor McCoy LLC, or the employees or agents thereof, will repossess, caused to be repossessed or threaten to repossess the automobile of any Vehicle Buyer, pending further order of this Court.

5.     McCoy LLC shall by no later than Wednesday, June 27, 2018, provide the Court with a complete, accurate and current accounting of account activity for all Vehicle Buyer accounts since May 1, 2018.

6.     McCoy LLC will contact the York County Sheriff's Office regarding the criminal complaint it made to such office regarding the removal of vehicles from McCoy's property and shall disclose to said York County Sheriff's Office that said matter is considered closed on McCoy's part.

7.     By no later than end of business on June 25, 2018, McCoy LLC shall dismiss the four (4) lawsuits filed against Car Masters in the Gaston County District Court, and provide written evidence of such dismissals to counsel for the Debtor. The three (3) motor vehicles which are the subject of the Gaston County litigation shall be stored with Manheim Auto Auction in Statesville, NC, pending further order of the Court, and no storage fees shall accrue to McCoy LLC.   In addition, Debtor acknowledged that there were a total of twenty-three (23) vehicles (including the aforementioned three (3)) and such remaining twenty (20) vehicles shall also be stored with

---

[1] "Vehicle Buyers" are the Buyers of automobiles from McCoy LLC (and/or Ride Fast) pursuant to a) Retail Installment Contracts or similar financing instrument, which have been purchased by and assigned to the Debtor; or b) financed under the Floorplan agreement with the Debtor.

Manheim Auto Auction in Statesville, NC, pending further order of the Court, and no storage fees shall accrue to McCoy LLC.

8.    McCoy LLC shall account for any funds from the collection of Vehicle Buyer accounts which are in the possession or control of McCoy LLC as of June 21, 2018 and McCoy LLC shall not spend those funds pending further order of this Court.

9.    The Defendant (through counsel) shall file written responses to the Motions by no later than July 9, 2018.

10.    The hearing on the Motions and the Court's consideration of a preliminary injunction will be held on July 11, 2018 at 9:30 a.m.

11.    McCoy LLC has the right to contact Debtor regarding the purchase of vehicles and/or titles as selected by McCoy LLC and Debtor shall promptly respond with a current written payoff statement, from which then, McCoy LLC shall provide certified funds for payment of such titles and at such time that payment is made, Debtor shall tender a clear title to McCoy LLC.

12.    With respect to GPS locator access (through a company called PassTime), Debtor terminated McCoy LLC's rights to access such locators.  Given that McCoy LLC shall be responsible for collection/servicing payments, said access shall be promptly returned to McCoy LLC by Debtor after the issuance of this Court order.

13.    The debtor shall provide all vehicle buyers with a copy of this court order upon entry.


This Order has been signed                    United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

‹ Messages (255)   **David**                    Details

Wed, Apr 4, 7:02 PM



I don't know who at Ace is cutting off customers cars that are current on their payments but tell to cut the cars back on now

Ok

It is automated nobody does anything

I sent An email to customer service if the customers are showing current in ams then they shouldn't ever shut down.

I have 1 example that made his payment yesterday (we posted it yesterday), he's 0 days past due at ace cut his car off today

Thu, Apr 5, 2:41 AM

Can you please get me the Jd timer name so we can research what may of happened

  Text Message                    Send

**Carco**
Comprehensive Auto Resources Company

Agreement No.: CMFV-150-

EXHIBIT "C"

# GAP
## ADDENDUM

Financing Agreement Type: ☐ Installment Sale Contract ☐ Loan ☐ Lease ☐ Other

The **Addendum** is entered into between the **Customer/Borrower (You** or **Your)** and the Dealer/Creditor **(We, Us,** or **Our)**, pursuant to the terms and conditions contained in this **Addendum**.

## COVERED VEHICLE INFORMATION

| | | | |
|---|---|---|---|
| M.S.R.P. | Original Contract Date: | Term (Months) | APR% |
| Year | Make | Model | Mileage: |
| VIN# | | Amount Financed/ Capitalized: | ☐ New    ☐ Used |

## DEALER INFORMATION

| | | |
|---|---|---|
| Name: | Fax: | Phone: |
| Address: | | Dealer # |
| City: | State: | Zip: |

☐ Commercial Use Option (Surcharge Applies)    ENROLLMENT CHARGE $

## LENDER/CREDITOR/ASSIGNEE INFORMATION

| | | |
|---|---|---|
| Name: | Fax: | Phone: |
| Address: | | Finance Agreement # |
| City: | State: | Zip: |

## BORROWER INFORMATION

| | | | |
|---|---|---|---|
| Last Name: | First Name: | Middle Initial: | Phone: |
| Address: | | | |
| City: | State: | Zip: | |

This **Addendum** amends the **Financing Contract**. In the event of a **Constructive Total Loss** of the **Collateral**, **We** hereby agree to waive **Our** rights against **You** for the amount due under a **Qualifying Loss**. **You** will remain responsible for any past due amounts, payment extensions, or any items listed in EXCLUSIONS. This **Addendum** will follow the **Financing Contract** with no subrogation rights against the **Customer/Borrower**, if the **Financing Contract** is sold or assigned by **Us**.

Although not required to do so, **You** elect to purchase this **Addendum** for an additional charge which is shown above. **You** may, as an alternative to purchasing this **Addendum**, be able to purchase a similar product from a company of **Your** choice. This **GAP Program is not insurance, does not take the place of insurance on the Collateral, and does not afford collision, comprehensive, or any other form of automobile insurance coverage. You** are responsible for all communications with **Your Primary Carrier** including notice and claims.

ENROLLMENT IS AVAILABLE ONLY AT THE TIME THE **FINANCING CONTRACT** IS ORIGINALLY EXECUTED. BY **YOUR** SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT **YOUR** ACCEPTANCE OF THIS **ADDENDUM** IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT THE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THE **COLLATERAL**.

The coverage under this **Addendum** may decrease over the term of **Your Financing Contract**. **You** should carefully read all pages of this **Addendum** for additional information on conditions, limitations, and exclusions that could prevent **You** from receiving the amount due under a **Qualifying Loss** attributed to a **Constructive Total Loss**.

This **Addendum** has no coverage to any **Collateral** where: a) the amount financed is greater than the Maximum Amount Financed Limit stated on page two; and/or b) the **Financing Contract** term exceeds the Maximum Term stated on page two. This **Addendum** is not available in NY or TX.

By **Your** signature below, **You** acknowledge: 1) **You** have read and understand this **Addendum** and its CONDITIONS; 2) no other verbal representations have been made to **You** that differ from these written provisions; 3) this **Addendum** is not an insurance policy or part of an insurance policy; and 4) **You** authorize release of the **Financing Contract** or any other information required for processing this **Addendum** or processing of a loss.

| | | | |
|---|---|---|---|
| Customer/Borrower Signature | Date | Dealer/Creditor | Date |
| Co-Customer/Borrower Signature | Date | Title | |

Rev. 01/16    Administrator: See Reverse Side    CMFV-150 (Page 1 of 5)

### PROGRAM LIMITS

| Maximum AFVR:<br>150% MSRP/NADA | Maximum Term:<br>84 Months | Maximum Limit of Coverage:<br>$50,000 | Maximum Amount Financed Limit:<br>$100,000 |
|---|---|---|---|

**YOUR RIGHT TO CANCEL:** **You** have the unconditional right to cancel this optional **Addendum** for a refund/credit of the unearned portion of the charge for this **Addendum** at any time. If the **Addendum** is terminated or cancelled by **You** within thirty (30) days of the **Addendum** purchase, **You** will receive a full refund/credit of the **Addendum** cost, provided no loss has occurred. After thirty (30) days, **You** will receive a refund/credit of the **Addendum** cost calculated by the Pro Rata refund method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee, where such cancellation fee is permitted by law (No Cancellation fee on Ford Motor Credit Company contracts). To cancel this **Addendum** and request a refund/credit, **You** must contact the Dealer/Creditor, in writing, at the address shown on page one. If the refund/credit is not received within sixty (60) days of notice of cancellation, contact the Administrator shown below. In the event of a cancellation, the **Financial Institution/Lender** will be named as payee on all refunds and sole payee on a repossession refund.

A **Qualifying Loss** must be reported to the Administrator within ninety (90) days from the **Settlement Date**. No amount will be waived for any **Qualifying Loss** reported after ninety (90) days. In the event there is no **Primary Insurance**, the **Customer/Borrower** has ninety (90) days from the **Date of Loss** to report a **Qualifying Loss**. A **Qualifying Loss** will cause this **Addendum** to terminate and be fully earned and not subject to any cancellation refund.

**QUALIFYING LOSS PROCEDURES.** In the event of a **Constructive Total Loss**, **You** must notify and provide the following to the Administrator: 1) a copy of the **Financing Contract** and a copy of this signed **Addendum**, 2) a copy of the **Financing Contract** history and pay-off as of the **Date of Loss**, 3) a legible copy of the police report, which must include confirmation of the **Collateral** shown on this **Addendum**. If a police report is not available, and the cause of loss to **Collateral** was NOT due to theft, fire, or vandalism, a signed and notarized brief description of the loss (including confirmation of the **Collateral**) will be acceptable. 4) a copy of the settlement check, **Collateral** valuation report, total loss breakdown, and Declarations Page, issued by the **Primary Carrier** (provided **Primary Carrier** coverage is in effect on the **Date of Loss**). 5) a copy of the Bill of Sale (aka Buyer's Order, Purchase Agreement, etc.) as well as the manufacturer's invoice or window sticker (if the vehicle was purchased new). If the vehicle was purchased used, a copy of the bookout sheet, 6) verification of any other refundable amounts. 7) any additional or reasonable documentation requested by the Administrator. The Administrator will not be able to obtain this information for **You**.

REPORT A QUALIFYING LOSS TO OUR ADMINISTRATOR:
Administrator: Comprehensive Auto Resources Company, P.O. Box 1268, Exton, PA 19341, (877) 902-8790
Qualifying Loss Documentation Fax Number: (610) 524-8504          Email: Claims@c-a-r-co.com

**CONDITIONS**

1. Concealment, Misrepresentation, and Fraud: This **Addendum** may not cover a **Qualifying Loss** if **You**, the **Customer/Borrower**, intentionally conceal or misrepresent any material fact relating to this **Addendum**.
2. **You** are responsible for making at least the minimum payment under the terms of the **Financing Contract** for each payment due after the **Date of Loss** until the request for a **Qualifying Loss** has been processed.
3. Should **You** not have collectible automobile physical damage insurance on the **Date of Loss**, it is **Your** responsibility to advise the Administrator within ninety (90) days from the **Date of Loss** and have the **Collateral** available for inspection by the Administrator (inspection costs are **Your** responsibility). The **Collateral** must be available for the Administrator's inspection to determine if the **Collateral** is a total loss, except in the case of unrecovered theft. The Administrator will calculate the **Actual Cash Value** of the **Collateral** immediately prior to the loss.
4. This coverage applies only to a **Qualifying Loss** sustained while the **Collateral** is within the United States of America (USA), its territories or possessions, Canada, or being transported between any parts thereof.
5. This **Addendum** will provide coverage to the **Collateral** where the Amount Financed to Value Ratio (AFVR) exceeds the Maximum AFVR stated above; however, this **Addendum** will not cover the amount exceeding the Maximum AFVR.

**MITIGATION OF LOSS**

You should do all things reasonable and practical to avoid any loss covered under this **Addendum** and to protect the **Collateral** from any further loss. **You** should also take reasonable measures to ensure that the maximum amount of **Actual Cash Value** of the **Collateral** is paid by **Your** **Primary Carrier**.

**TERMINATION OF ADDENDUM**

This **Addendum** will terminate on the earlier date that one of the following events occurs: 1) the date **Your** **Financing Contract** is scheduled to terminate; 2) upon payment in full of the **Financing Contract**; 3) expiration of any redemption period following the repossession or surrender of the **Collateral**; 4) in the event of a **Constructive Total Loss** or theft of the **Collateral**; or 5) the date the **Financing Contract** is prepaid or the **Financing Contract** is refinanced.

**EXCLUSIONS**

In addition to other provisions herein, this **Addendum** does not provide coverage for:
A. any loss occurring prior to the effective date of this **Addendum**.
B. any loss occurring prior to the **Financing Contract** inception date shown on page one.
C. any loss due to confiscation of the **Collateral** by a government body or public official.
D. any loss caused by theft, fire, or vandalism, unless a police report is filed.
E. any loss resulting from the **Collateral** being operated, used, or maintained in any race, speed contest, or other contest.
F. **Collateral** held as security under any wholesale, floor plan, field warehouse, or any type of financing made to a dealership or its employees.
G. **Collateral** with a GVWR exceeding 12,500 lbs., unless the **Commercial Use** option is selected on page one of this **Addendum** and the appropriate premium is paid.
H. **Collateral** used as an emergency vehicle, for livery or delivery, as a taxi, or for limousine or shuttle service where compensation is provided for those services (share-the-expense car pools are not excluded under this policy). Commercial transactions are excluded where prohibited by law.
I. any loss occurring after the **Collateral** has been repossessed by the **Financial Institution/Lender** or placed in their possession or in the possession of their employees or agents.
J. **Collateral** with a **Financing Contract** in which the amount financed for **Collateral** exceeds the Maximum Amount Financed Limit shown on the top of this page at the inception date of the **Financing Contract**.
K. **Collateral** with a **Financing Contract** where the contract term exceeds the Maximum Term as shown on the top of this page.
L. any amounts deducted from the **Primary Carrier** settlement including but not limited to: wear and tear, prior damage, unpaid insurance premiums, towing, storage, and salvage.
M. certain vehicles, including but not limited to: Aston Martin, Bentley, Daewoo, Ferrari, Lamborghini, Lotus, Maserati, Rolls Royce, Saab, Saturn, and Yugo.
N. any loss attributable to other than the standard or optional equipment available from the manufacturer of the **Collateral**, including but not limited to: special carpeting, furniture, bars, audio, video or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to overcome a physical handicap. Factory approved conversion packages and dealer installed options usually included in used car value guidebooks are not excluded.
O. **Collateral** with a salvage or rebuilt title at the time of sale or for which the title has been changed or re-issued as salvage or rebuilt prior to the **Date of Loss**.
P. any loss resulting directly or indirectly from any dishonest, fraudulent, criminal, or illegal act or arising from an intentional act committed by **You**.
Q. a **Financing Contract** that does not have uniform scheduled payments after the first payment is made and/or a **Financing Contract** or **Loan** that is self-financed. The first payment must be made within forty-five (45) days of the **Financing Contract** inception date.

## DEFINITIONS

**Actual Cash Value (ACV)** means the retail value of the **Collateral** on the **Date of Loss**, as listed in a national or regional guide, such as National Automobile Dealers Association (NADA) or an equivalent national or regional guide, for the territory in which the **Collateral** is principally garaged.

**Addendum** means this GAP **Addendum** to the **Installment Sales Contract**.

**Collateral** is the vehicle described on page one of this **Addendum** and described in the **Financing Contract**.

**Commercial Use** means **Collateral** that is utilized for commercial/business purposes including but not limited to: 1) business name is displayed on the vehicle; 2) the vehicle is used in furtherance of business or commercial purposes; or 3) the purchase, license, registration, or primary insurance is in a business or commercial name or policy. No coverage is provided for a **Commercial Use** loss unless the **Commercial Use** option is selected on page one of this **Addendum** and the appropriate premium is paid. **Collateral** listed under EXCLUSION H is not eligible for coverage.

**Constructive Total Loss** means a direct and accidental loss of or damage to the **Collateral**, which meets one of these criteria: 1) the total cost to repair the **Collateral** is greater than or equal to the **Actual Cash Value** of the **Collateral** immediately prior to the loss; or 2) the **Customer/Borrower's Primary Carrier** declares the **Collateral** a total loss. In the case there is no primary insurance coverage, the **Collateral** must be available for the Administrator's inspection to determine if the **Collateral** is a total loss, except in the case of unrecovered theft.

**Customer/Borrower** - The natural person(s) or business named in the **Financing Contract** purchasing this **Addendum** from the Dealer/Creditor.

**Date of Loss** means the date on which the **Collateral** is reported stolen or incurs physical damage that is severe enough to constitute a **Constructive Total Loss**.

**Financing Contract** means the contract which represents the financing instrument for the purchase of the **Collateral**, which sets forth the terms, conditions, inception date, and expiration date of the financing instrument.

**Financial Institution/Lender** means the entity to which **Your Financing Contract** is sold, assigned, or transferred.

**Installment Sales Contract** means **Financing Contract**.

**Loan** means **Financing Contract**.

**Net Payoff** means the amount, as of the **Date of Loss**, represented by the portion of **Your** unpaid balance according to the original payment schedule of the **Financing Contract** that is secured by the **Collateral**, subject to the following limitations: the amount does not include any unearned finance charges or loan/financing charges; past due payments/skipped payments as described in the **Financing Contract**; late charges; uncollected service finance charges; refundable prepaid taxes and fees; disposition fees; termination fees; penalty fees; the recoverable portion of finance service charges or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life and vehicle service coverages/warranties) that are owed by **You** on the **Date of Loss**; and amounts that are added to the financing instrument balance after the inception date of the **Financing Contract**.

**Primary Carrier** means the insurance company selected by **You** prior to the **Date of Loss** that underwrites a policy of insurance providing physical damage coverage on the **Collateral**, or, the insurance company that provides liability coverage to any person who has caused the **Collateral** to incur a **Constructive Total Loss**.

**Qualifying Loss** means the difference between the **Net Payoff** and the **Primary Carrier** settlement or in the event of no **Primary Carrier**, the **Net Payoff** and the **Actual Cash Value**. The **Qualifying Loss** will not exceed the Maximum Limit of Coverage as shown on the top of page two. If settlement by the **Primary Carrier** or the **Actual Cash Value** is greater than or equal to the outstanding balance, no **Qualifying Loss** will be afforded under this **Addendum**. **Qualifying Loss** includes the amount of the physical damage deductible on the **Primary Carrier** policy up to $1,000. In the event that there is no **Primary Carrier** coverage in effect on the **Date of Loss**, if the **Primary Carrier** is declared insolvent, if no proceeds are received from the **Primary Carrier** policy, or if there are policy limits on the **Primary Carrier** policy which preclude the **Primary Carrier** from settling for full **Actual Cash Value**, the **Addendum** will only cover the difference between the **Net Payoff** and the **Actual Cash Value** of the **Collateral** on the **Date of Loss**. If there is no **Primary Carrier**, the **Collateral** must be available for inspection by the Administrator to determine if the **Collateral** is a **Constructive Total Loss**, except in the event of an unrecovered theft.

**Settlement Date** - the date on which the **Primary Carrier** issues the settlement check for the **Collateral**

## STATE PROVISIONS

The following state specific requirements are added to and become part of **Your Addendum** and supersede any other provision to the contrary:

**Colorado, Indiana, Kansas, Louisiana, Missouri, New Hampshire, New Mexico, South Carolina, Vermont, Washington, and Wisconsin**: The cancellation fee is not applicable.

**Alaska**: The deductible provision is excluded for GAP **Addendums** sold in Alaska.

**Colorado**: In accordance with Colorado Rule 8, before purchasing and signing the GAP **Addendum**, it is required that **You** review the following:
1. The purchase of GAP is not required in order to obtain the credit or any particular or favorable credit terms;
2. The fee for GAP is disclosed;
3. You may wish to consult an insurance agent to determine whether similar coverage may be obtained and at what cost;
4. GAP benefits may decrease over the term of the consumer credit sale or consumer loan;
5. You may cancel GAP for any or no reason within thirty (30) days after GAP was purchased and receive a full refund of the GAP fee so long as no loss or event covered by GAP has occurred. If it is cancelled after thirty (30) days, the refund will be on a pro-rata basis.
6. GAP is not a substitute for collision or property damage insurance.

This **Addendum** is not applicable to leases in the state of Colorado. As regards to cancellation of the GAP Protection and discontinuation of its benefits, the separate cancellation form being provided to **You** should be completed and sent to the address indicated on the form. GAP must pay or forgive the deficiency balance that would have been owed if the consumer had maintained property damage insurance on the automobile (even if the consumer has not done so) or if the creditor has purchased property damage insurance for the automobile and added it to the amount of the debt. A consumer shall have ninety (90) days after the loss settlement from any property damage insurance or from the date the creditor notifies the consumer of any deficiency balance owed, whichever is later, to file a GAP claim or seek debt cancellation from the creditor.

**Georgia**: The effective date of any cancellation may be no earlier than ninety (90) days prior to the date such written notice is received by the Dealer/Creditor.

**Illinois**: There is no deductible coverage available for vehicles leased in Illinois.

**Indiana**: The sale of this GAP **Addendum** is not permitted if the amount financed, less the cost of the GAP **Addendum**, less the cost of credit insurance, and less the cost of warranties, is less than 80% of MSRP for a new vehicle or 80% of the NADA average retail value for a used vehicle. If the **Addendum** is terminated or cancelled by **You** within sixty (60) days of the **Addendum** purchase, **You** will receive a full refund/credit of the **Addendum** cost, provided no loss has occurred. After sixty (60) days, **You** will receive a refund/credit of the **Addendum** cost calculated by the Pro Rata refund method. **You** may be able to obtain GAP coverage from **Your Primary** insurance **Carrier**. For Questions or Complaints, **You** may contact the Indiana Department of Financial Institutions at: 30 South Meridian St., Suite 300, Indianapolis Indiana 46204, 1-800-382-4880.

**Kansas**: This GAP **Addendum** may not cancel or waive the entire amount owing at the time of loss. Actual Cash Value (ACV) means the retail value of the **Collateral** on the **Date of Loss**, prior to its physical damage or theft, as determined by the **Borrower's Primary Carrier** net of the **Borrower's** primary deductible, not to exceed $1,000. If no **Primary Carrier** exists, or the **Primary Carrier** has been declared insolvent, the retail value will be determined as listed in a national or regional guide, such as National Automobile Dealers Association (NADA) or an equivalent national or regional guide for the territory in which the **Collateral** is principally garaged. For Questions or Complaints, **You** may contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603, (785) 296-2266 or toll free 1-877-387-8523.

**Louisiana**: The extender of credit hereby agrees, by acceptance of this **Addendum** as an amendment to the **Installment Sales Contract** upon assignment, to waive **Your** liability for the difference between the outstanding balance (excluding past due amounts, payment extensions, insurance or other charges as described in this **Addendum**) under the **Installment Sales Contract** and the **Actual Cash Value** of **Your** vehicle as of the **Date of Loss**. The deductible provision is excluded for GAP **Addendums** sold in Louisiana.

**Maryland**: Leases are not eligible for coverage. Neither the maximum AFVR nor the $50,000 Maximum Limit of Coverage are applicable. "Actual Cash Value" means the retail value of the **Collateral** on the **Date of Loss**, prior to its physical damage or theft, as determined by the **Primary Carrier**. If no **Primary Carrier** exists, the retail value will be determined by the Program Administrator using the nationally or regionally recognized guide, such as National Automobile Dealers Association (NADA) or Kelley Blue Book (KBB), based on the best information available on the **Collateral's** options, mileage, and condition. The definition of Net Payoff is deleted in its entirety and replaced with the following: Net Payoff shall not include delinquent or deferred payments, past due charges, late payment charges, unearned interest, unearned rental payments, the portion of any financed taxes or charges, including charges for credit life insurance, credit health insurance, credit involuntary unemployment insurance and mechanical repair contracts actually refunded to the Buyer or credited as a reduction to the Loan balance, and any Primary Insurance deductible in excess of $1,000.

**Minnesota**: This GAP **Addendum** cannot be sold in conjunction with the sale or lease of any used motor vehicle that is an automobile or truck that is valued at less than $5,000. If a cancellation request is being made because of the termination of the **Financing Contract**, notice must be provided within ninety (90) days of the occurrence of the event terminating the **Financing Contract**. **THE GAP WAIVER IS OPTIONAL. YOU DO NOT HAVE TO PURCHASE THIS PRODUCT IN ORDER TO BUY OR LEASE THIS MOTOR VEHICLE. YOU ALSO HAVE A LIMITED RIGHT TO CANCEL.**

**Nebraska**: This **Addendum** is not insurance and is not regulated by the Nebraska Department of Insurance. The **Financial Institution/Lender** or Administrator cannot unilaterally modify the terms of the waiver unless the modification is favorable to the **Borrower** and is made without additional charge to the **Borrower**, or the **Borrower** is notified of the proposed modification and has the option to cancel the **Addendum** without penalty.

**Nevada**: IMPORTANT: A Guaranteed Asset Protection Waiver is not a policy of liability or casualty insurance and does not satisfy the requirement to maintain liability insurance pursuant to NRS 485.185. Failure to make a timely payment under the terms of the finance agreement may void the Guaranteed Asset Protection Waiver.

**South Carolina:** The cancellation fee is not applicable. This GAP **Addendum** cannot be sold if the amount financed, less the cost of the GAP **Addendum**, the cost of credit insurance, and the cost of service contracts is less than eighty percent (80%) of the Manufacturer's Suggested Retail Price (MSRP) for a new vehicle, or the National Automobile Dealers Association (NADA) average retail value for a used vehicle. THIS GAP WAIVER IS NOT REQUIRED TO OBTAIN CREDIT, NOR TO OBTAIN CERTAIN TERMS OF CREDIT OR TO PURCHASE THE RELATED MOTOR VEHICLE. THIS GAP WAIVER WILL NOT BE PROVIDED UNLESS **YOU** SIGN AND AGREE TO PAY THE ADDITIONAL COST.

**Tennessee:** The cost of the **Addendum** is not regulated and **You** have the responsibility to determine whether the cost of the **Addendum** is reasonable in relation to the coverage afforded by this **Addendum**. The effective date of any cancellation may be no earlier than ninety (90) days prior to the date such written notice is received by Program Administrator.

**Utah:** The **Addendum** is subject to limited regulation by the Utah Insurance Commissioner. Complaints regarding the GAP **Addendum** may be submitted to the offices of the Utah Insurance Commissioner.

**Vermont:** The Dealer/Creditor must assign, sell, or transfer, within fifteen (15) business days, the **Financing Contract** to a **Financial Institution/Lender** as defined in subdivision 1110(32) of Title 8 or a credit union or entity licensed under subdivision 2201(a)(1) or (3) of Title 8 or this **Addendum** is void and **You** will receive a full refund of the charges of the **Addendum**.

**Washington:** 1. Any refund of purchase price for an **Addendum** that was included in the financing of the **Collateral** may be applied by the creditor as a reduction of the overall amount owed under the **Financing Contract**, rather than applying the refund strictly to the purchase price of the **Addendum**. 2. The **Addendum** is not credit insurance, nor does it eliminate **Your** obligation to insure the **Collateral** as provided by laws of this state. Purchasing an **Addendum** does not eliminate **Your** rights and obligations under the vendor single-interest and collateral protection coverage laws of this state. 3. CONDITION 1 is amended to read: This **Addendum** shall be void if any material fact(s) have been intentionally concealed or misrepresented, or in the case of fraud. **You** may cancel this **Addendum** within thirty (30) days of the date of purchase and will be entitled to a full refund of the purchase price. so long as no benefits have been provided. **You** may cancel this **Addendum** after thirty (30) days from the date of purchase and at any time prior to the occurrence of a **Total Loss** by providing a written request to cancel to the Dealer/**Financial Institution** or Program Administrator within ninety (90) days of the event terminating the **Financing Contract**. The refund will be calculated using the Pro Rata refund method. If the cancellation of this **Addendum** occurs as a result of a default under the **Financing Contract** or the repossession of the vehicle associated with the **Financing Contract**, or any other termination of the **Financing Contract**, any refund due may be paid directly to the **Financial Institution** to be applied as a reduction of the amount owed unless **You** can show that the **Financing Contract** has been paid in full. This **Addendum** will not be reinstated after a cancellation has been processed. If **We** cancel, **We** will provide **You** and the **Financial Institution** a forty-five (45) day notice of cancellation (ten (10) days for non-payment of premium) which will include the effective date and reason for cancellation and calculate **Your** refund Pro Rata. Notice of cancellation will state the effective date of cancellation. The **Addendum** period will end on that date. This **Addendum** shall only be void if there has been any intentional withholding, concealment or misrepresentation of a material fact by **You** or someone acting on **Your** behalf, or in the event of fraud.

**Wisconsin:** This **Addendum** complies with the Wisconsin Consumer Act, Chapters 421-427 of the Wisconsin Statutes. This **Addendum** is between the **Borrower** and Seller, or if assigned, with the assignee, pursuant to the terms and conditions of this **Addendum**. This **Addendum** is applicable to **Installment Sales Contracts** and leases. This **Addendum** will also terminate upon payment in full of the **Installment Sales Contract**/Lease Agreement, or expiration of any redemption period following the repossession or surrender of the vehicle. **You** will not be charged for the cost of any appraisal requested by Program Administrator. To cancel this **Addendum**, contact the Program Administrator at P.O. Box 1268, Exton, PA 19341, (877) 902-8790. **You** are entitled to a refund of the unearned portion of the GAP charge following any termination of this **Addendum** for any reason and a refund will be calculated by the Pro Rata method and provided to **You** following any termination of this **Addendum**. The owner or Lessee of this vehicle is covered by this **Addendum**. If this **Addendum** is canceled during the first thirty (30) days, the refund will include the amount of any applicable finance charges. This **Addendum** will be deemed fully earned only when a GAP benefit has been or will be paid to **You** or if the term has expired.

# Workout Agreement



**AMAC**
ACE MOTOR
ACCEPTANCE CORPORATION

**Robin Milestone**
*Customer Service*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7163
f: 704-200-9221
e: rmilestone@myamac.com



EXHIBIT "D"

Robin Milestone <rmilestone@acemotoracceptance.com>

Tue 5/15/2018 1:08 PM

to: misty mccoy <mrmccoy@hotmail.com>; McCoy Motors <mccoymotorss@live.com>; Russ Algood <russ@acemotoracceptance.com>;

McCoy Motors-

RE: Recent GAP cancellation request by the dealership and follow up to meeting between McCoy Motors and AMAC.

AMAC has agreed to show a "Carryover Balance" on the Weekly statement in the amount of $50,000 while the two parties work towards a permanent agreement related to GAP cancellations on contracts purchased by AMAC and later repurchased by McCoy Motors. The last weekly statement as of 5/9/18 indicated McCoy Motors owed $108,676.93. It was stated in the meeting, this in not a credit from AMAC nor and admission of wrongdoing by either party. The credit will not be applied specifically to any outstanding amounts owed related to customer payments, floorplan or buybacks. In the event that any or all of the "carryover balance" were to be "credited" to McCoy Motors, AMAC would apply the credit first to buybacks processed related to Outstanding titles never received by AMAC.

AMAC and McCoy Motors have agreed to seek more information, follow through on outstanding GAP cancellations and continue to move forward with all other items owed per the Dealer Agreement including outstanding payments due, floorplan, buybacks to receive a title, etc.: McCoy Motors will keep current on other items owed.

Please acknowledge or inquire of any misunderstandings.

Thank you.

# Weekly Transaction Summary

From 05/09/2018 to 05/15/2018   Printed 5/16/2018 11:32:12 AM

## MCCOY MOTORS LLC - MCCOYMOTORS@LIVE.COM



ACE MOTOR
ACCEPTANCE CORPORATION

### Payments Due and Performance/Servicing Fees

| Date | Acct # Name | TODAYS $ | Amt Tendered | Proc Fee | Last Int Date | Pstrr | SL | Principal | Interest | Late Fee | Drwr # | P/S Fee | P/S % | Balance | Pmt Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/09/18 | 1006857 MCINTOSH, ERIC | $233.20 | $240.00 | $0.00 | 05/09/18 | COY1 | 8279 | $132.29 | $100.91 | $6.80 | 99 | $96.000 | 40.0 | $74,448.31 | ($240.00) |
| 05/09/18 | 1005335 KIDD, SHYQUELA | $237.01 | $237.01 | $0.00 | 05/09/18 | COY1 | 8280 | $130.92 | $106.09 | $0.00 | 95 | $106.655 | 40.0 | $11,872.33 | ($237.01) |
| 05/09/18 | 1004566 MCALLISTER, SANDY | $247.78 | $247.78 | $0.00 | 05/09/18 | COY1 | 8279 | $95.36 | $152.42 | $0.00 | 95 | $99.112 | 40.0 | $14,642.69 | ($247.78) |
| 05/09/18 | 1004604 POTTS, ROBYN | $228.87 | $228.87 | $0.00 | 05/09/18 | COY1 | 8279 | $110.67 | $118.20 | $0.00 | 40 | $91.548 | 40.0 | $11,352.69 | ($228.87) |
| 05/09/18 | 1002325 HUFF, PAUL | $395.25 | $395.25 | $0.00 | 05/09/18 | COY1 | 8279 | $208.62 | $186.63 | $0.00 | 99 | $158.100 | 40.0 | $3,139.44 | ($395.25) |
| 05/09/18 | 1002823 JOHNSON, DERORE | $208.70 | $217.80 | $0.00 | 05/09/18 | COY1 | 8279 | $53.80 | $154.90 | $9.19 | 99 | $87.156 | 40.0 | $10,970.95 | ($217.89) |
| 05/09/18 | 1004563 MACKEY, ANGELA | $237.28 | $237.28 | $0.00 | 05/08/18 | COY1 | 8279 | $88.19 | $149.09 | $0.00 | 95 | $94.912 | 40.0 | $13,404.88 | ($237.28) |
| 05/09/18 | 1005904 PERRY, SETERKA | $198.40 | $198.40 | $0.00 | 05/08/18 | COY1 | 8280 | $22.70 | $175.70 | $0.00 | 95 | $89.280 | 45.0 | $10,926.30 | ($198.40) |
| 05/09/18 | 1005232 HOPE, QUATARIUS | $188.76 | $188.76 | $0.00 | 05/06/18 | COY1 | 8280 | $18.72 | $170.04 | $0.00 | 95 | $84.942 | 45.0 | $12,756.87 | ($188.76) |
| 05/09/18 | 1005232 HOPE, QUATARIUS | $50.00 | $50.00 | $0.00 | 05/06/18 | COY1 | 8280 | $27.77 | $22.23 | $0.00 | 99 | $22.500 | 45.0 | | ($50.00) |
| 05/09/18 | 1018838 CLINTON, JOHN | $226.50 | $237.73 | $0.00 | 05/07/18 | COY1 | 8281 | $74.48 | $152.02 | $11.23 | 99 | $95.092 | 40.0 | $12,019.27 | ($237.73) |
| 05/09/18 | 1005476 HODGE, SHERITA | $259.34 | $259.34 | $0.00 | 05/07/18 | COY1 | 8281 | $123.21 | $135.13 | $0.00 | 45 | $116.253 | 45.0 | $12,977.26 | ($259.34) |
| 05/09/18 | 1005811 THOMPSON, | $197.69 | $197.69 | $0.00 | 05/07/18 | COY1 | 8280 | $57.25 | $140.44 | $0.00 | 99 | $88.961 | 45.0 | $9,022.08 | ($197.69) |
| 05/09/18 | 1002688 ANDREWS, DOMINIQUE | $86.80 | $86.80 | $0.00 | 05/07/18 | COY1 | 8279 | $58.06 | $28.74 | $0.00 | 99 | $34.720 | 45.0 | $9,657.52 | ($86.80) |
| 05/09/18 | 999430 DOBIE, CEDRIC | $160.00 | $160.00 | $0.00 | 05/10/18 | COY1 | 8279 | $42.10 | $117.90 | $0.00 | 99 | $64.000 | 40.0 | $9,197.41 | ($160.00) |
| 05/09/18 | 1005818 WEATHERS, SHERILE | $10.00 | $10.00 | $0.00 | 05/12/18 | COY1 | 8280 | $0.95 | $9.05 | $0.00 | 99 | $4.500 | 45.0 | $6,022.33 | ($10.00) |
| 05/09/18 | 1002822 SHIPP, KEEYONA | $188.34 | $188.34 | $0.00 | 05/09/18 | COY1 | 8279 | $16.26 | $172.08 | $0.00 | 99 | $75.336 | 40.0 | $12,862.53 | ($188.34) |
| 05/09/18 | 1002822 SHIPP, KEEYONA | $50.00 | $50.00 | $0.00 | 05/09/18 | COY1 | 8279 | $50.00 | $0.00 | $0.00 | 99 | $20.000 | 40.0 | $12,862.53 | ($50.00) |
| 05/09/18 | 2005512 BAEZA-MEDINA, JUAN | $15.11 | $25.00 | ($4.95) | 05/09/18 | COY1 | 8280 | $0.00 | $15.11 | $9.89 | 99 | $11.250 | 40.0 | $12,124.00 | ($25.00) |
| 05/09/18 | 1004811 MOBLEY, ANGELA | $439.00 | $443.95 | $0.00 | 05/09/18 | COY1 | 8279 | $193.81 | $245.19 | $0.00 | 4 | $175.600 | 40.0 | $11,650.65 | $0.00 |
| 05/09/18 | 1005331 ROYAL, JACQUELINE | $237.73 | $237.73 | $0.00 | 05/09/18 | COY1 | 8280 | $70.72 | $167.01 | $0.00 | 99 | $106.979 | 45.0 | $12,758.32 | ($237.73) |
| 05/09/18 | 1004273 BARBER, LAPRESHA | $238.77 | $250.00 | $0.00 | 05/09/18 | COY1 | 8281 | $72.84 | $165.93 | $11.23 | 99 | $100.000 | 40.0 | $10,655.08 | ($250.00) |
| 05/10/18 | 1002916 KELLY, JULIAN | $237.01 | $237.01 | $0.00 | 05/10/18 | COY1 | 8281 | $144.94 | $92.07 | $0.00 | 99 | $94.804 | 40.0 | $9,087.53 | ($237.61) |
| 05/10/18 | 1005765 ROSARIO, BRADLEY | $239.76 | $239.76 | $0.00 | 05/10/18 | COY1 | 8280 | $60.91 | $178.85 | $0.00 | 99 | $107.892 | 45.0 | $16,632.31 | ($239.76) |
| 05/10/18 | 999763 FAULKENBERRY, | $208.78 | $208.78 | $0.00 | 05/10/18 | COY1 | 8281 | $87.31 | $121.47 | $0.00 | 45 | $83.512 | 45.0 | $11,645.98 | ($208.78) |
| 05/10/18 | 1000833 MCGRIFF, DARINTTA | $206.99 | $217.88 | $0.00 | 05/10/18 | COY1 | 8281 | $108.67 | $98.32 | $10.89 | 99 | $87.152 | 40.0 | $9,996.25 | ($217.88) |
| 05/10/18 | 1005786 MARTINO, CECILIA | $249.55 | $249.55 | $0.00 | 05/10/18 | COY1 | 8280 | $42.64 | $206.91 | $0.00 | 99 | $112.298 | 45.0 | $14,008.82 | ($249.55) |
| 05/11/18 | 1004767 ROLLINS, ANTONIO | $237.60 | $237.60 | $0.00 | 05/10/18 | COY1 | 8279 | $146.51 | $91.09 | $0.00 | 99 | $95.040 | 40.0 | $9,367.38 | ($237.60) |

# Weekly Transaction Summary

From 05/09/2018 to 05/16/2018 - Printed: 5/16/2018 11:32:12 AM



**ACE MOTOR ACCEPTANCE CORPORATION**

| Date | Acct | Name | Amount | Amount | Amount | Date | Type | Code | Amount | Amount | N | Amount | N | Amount | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/11/18 | 1005544 | COLEMAN, IVY | $2.98 | $2.98 | $0.00 | 05/10/18 | CO Y1 | 8290 | $0.00 | $2.98 | 99 | $1,341 | 45.0 | $12,749.00 | ($42.98) |
| 05/11/18 | 999185 | COUSAR, JASMINE | $249.15 | $260.00 | $0.00 | 05/15/18 | CO Y1 | 8281 | $137.15 | $112.00 | 99 | $104,000 | 40.0 | $11,465.27 | ($260.00) |
| 05/11/18 | 999185 | COUSAR, JASMINE | $44.00 | $44.00 | $0.00 | 05/15/18 | CO Y1 | 8281 | $35.49 | $8.51 | 99 | $17,800 | 40.0 | $11,465.27 | ($44.00) |
| 05/11/18 | 999430 | DOBIE, CEDRIC | $160.00 | $160.00 | $0.00 | 05/10/18 | CO Y1 | 8279 | $139.29 | $20.71 | 99 | $64,000 | 40.0 | $5,197.41 | ($160.00) |
| 05/11/18 | 1057285 | BIVENS, JOHNNY | $238.42 | $238.42 | $0.00 | 05/10/18 | CO Y1 | 8281 | $27.08 | $211.34 | 99 | $107,285 | 40.0 | $13,321.92 | ($238.42) |
| 05/11/18 | 999754 | HAGGINS, ASHIA | $228.26 | $228.26 | $0.00 | 05/10/18 | CO Y1 | 8281 | $121.84 | $106.42 | 99 | $91,304 | 40.0 | $10,918.98 | ($228.26) |
| 05/11/18 | 1006833 | MCGRIFF, DARNITTA | $123.41 | $127.02 | $0.00 | 05/11/18 | CO Y1 | 8281 | $123.41 | $3.61 | 99 | $50,808 | 40.0 | $9,996.25 | ($127.02) |
| 05/11/18 | 1005004 | MOORE, BRITTANY | $237.97 | $237.97 | $0.00 | 05/10/18 | CO Y1 | 8279 | $58.95 | $179.02 | 99 | $95,188 | 40.0 | $13,163.84 | ($237.97) |
| 05/11/18 | 1005004 | MOORE, BRITTANY | $237.97 | $237.97 | $0.00 | 05/10/18 | CO Y1 | 8279 | $101.21 | $136.76 | 99 | $95,392 | 40.0 | $13,163.84 | ($237.97) |
| 05/11/18 | 1011925 | MOORE, ANTHONY | $238.48 | $238.48 | $0.00 | 05/10/18 | CO Y1 | 8279 | $123.61 | $114.87 | 99 | $95,024 | 40.0 | $10,508.78 | ($238.48) |
| 05/11/18 | 1011925 | MOORE, ANTHONY | $237.55 | $237.55 | $0.00 | 05/11/18 | CO Y1 | 8279 | $180.76 | $56.80 | 99 | $95,024 | 40.0 | $10,508.78 | ($237.56) |
| 05/11/18 | 1002268 | GREGORY, JOHN | $237.62 | $237.62 | $0.00 | 04/30/18 | CO Y1 | 8279 | $167.20 | $70.42 | 99 | $95,049 | 40.0 | $12,751.49 | ($237.62) |
| 05/11/18 | 1005911 | SHANTEAU-JACKSON | $100.00 | $100.00 | $0.00 | 05/04/18 | CO Y1 | 8280 | $0.00 | $100.00 | 99 | $45,000 | 45.0 | $8,065.95 | ($100.00) |
| 05/11/18 | 1003947 | VOELN, VOELITI | $238.88 | $238.88 | $0.00 | 05/04/18 | CO Y1 | 8281 | $96.54 | $142.34 | 99 | $95,552 | 40.0 | $12,178.06 | ($238.88) |
| 05/11/18 | 1005929 | BREEXZEALE, DURRICK | $238.04 | $238.04 | $0.00 | 05/04/18 | CO Y1 | 8280 | $0.00 | $238.04 | 99 | $107,118 | 45.0 | $12,399.00 | ($238.04) |
| 05/11/18 | 1004770 | EVANS, JESSICA | $237.53 | $237.53 | $0.00 | 05/11/18 | CO Y1 | 8279 | $127.19 | $110.34 | 99 | $95,012 | 40.0 | $10,444.04 | ($237.53) |
| 05/11/18 | 1004770 | EVANS, JESSICA | $237.67 | $237.67 | $0.00 | 05/11/18 | CO Y1 | 8279 | $29.45 | $208.22 | 99 | $106,952 | 40.0 | $10,444.04 | ($237.67) |
| 05/11/18 | 1005549 | SEARS, JENNIFER | $228.38 | $228.38 | $0.00 | 05/11/18 | CO Y1 | 8280 | $0.00 | $228.38 | 99 | $89,118 | 45.0 | $13,874.04 | ($228.38) |
| 05/11/18 | 1005550 | BEAVERS, KENDRICK/JS | $198.04 | $198.04 | $0.00 | 05/11/18 | CO Y1 | 8280 | $39.07 | $159.97 | 99 | $11,556.23 | 45.0 | $13,058.04 | ($198.04) |
| 05/11/18 | 1004755 | GILLISPIE, NATHANIEL | $236.11 | $236.11 | $0.00 | 05/11/18 | CO Y1 | 8279 | $145.91 | $90.20 | 99 | $94,444 | 40.0 | $8,600.26 | ($236.11) |
| 05/11/18 | 1003385 | GROLL, VICKIE | $238.37 | $238.37 | $0.00 | 05/11/18 | CO Y1 | 8279 | $121.68 | $105.69 | 99 | $91,348 | 40.0 | $10,184.52 | ($238.37) |
| 05/11/18 | 1011591 | GOMEZ, APRIL | $238.69 | $238.69 | $0.00 | 05/11/18 | CO Y1 | 8279 | $135.68 | $103.01 | 99 | $95,476 | 40.0 | $9,814.80 | ($238.69) |
| 05/11/18 | 1004752 | FERGUSON, | $237.93 | $237.93 | $0.00 | 05/11/18 | CO Y1 | 8279 | $173.02 | $64.91 | 99 | $95,172 | 40.0 | $10,843.84 | ($237.93) |
| 05/11/18 | 1004770 | EVANS, JESSICA | $237.53 | $237.53 | $0.00 | 05/11/18 | CO Y1 | 8279 | $128.30 | $109.03 | 99 | $95,012 | 40.0 | $10,444.04 | ($237.53) |
| 05/11/18 | 937794 | DIXON, LARRY | $103.79 | $103.79 | $0.00 | 05/11/18 | CO Y1 | 8279 | $93.22 | $10.47 | 99 | $41,516 | 40.0 | $2,638.48 | ($103.79) |
| 05/11/18 | 1005089 | THOMAS, LORI | $237.55 | $237.55 | $0.00 | 05/11/18 | CO Y1 | 8280 | $105.82 | $131.73 | 99 | $106,898 | 45.0 | $12,666.19 | ($237.55) |
| 05/11/18 | 1005477 | DAVIE, TRAMAINE | $198.50 | $198.50 | $0.00 | 05/11/18 | CO Y1 | 8282 | $69.51 | $128.99 | 99 | $89,325 | 45.0 | $11,504.49 | ($198.50) |
| 05/11/18 | 1005769 | CRUZADO, TENEKE | $248.02 | $248.02 | $0.00 | 05/11/18 | CO Y1 | 8280 | $39.03 | $131.23 | 99 | $111,609 | 45.0 | $13,444.69 | ($248.02) |
| 05/11/18 | 1003527 | GARCIA RUGERIO, | $248.84 | $248.84 | $0.00 | 05/11/18 | CO Y1 | 8279 | $113.37 | $135.47 | 99 | $99,536 | 40.0 | $12,972.94 | ($248.84) |
| 05/11/18 | 1005778 | SEAMON, NATASHA | $167.55 | $167.55 | $0.00 | 05/11/18 | CO Y1 | 8280 | $64.74 | $102.81 | 99 | $58,551.98 | 40.0 | $8,551.98 | ($167.55) |
| 05/11/18 | 999545 | SCHRADER, ANDREA | $202.58 | $202.58 | $0.00 | 05/11/18 | CO Y1 | 8281 | $87.41 | $115.17 | 99 | $81,032 | 40.0 | $11,037.01 | ($202.58) |
| 05/11/18 | 1005913 | PRINCE, ALEXIS | $175.26 | $175.26 | $0.00 | 05/11/18 | CO Y1 | 8280 | $0.00 | $175.26 | 99 | $78,867 | 45.0 | $11,797.72 | ($175.26) |
| 05/11/18 | 1005813 | CHERRY, TRUMALE | $219.41 | $219.41 | $0.00 | 05/11/18 | CO Y1 | 8280 | $65.72 | $153.69 | 99 | $98,735 | 45.0 | $13,053.28 | ($219.41) |
| 05/11/18 | 59259 | CHAMBERS, NATASHA | $227.52 | $227.52 | $0.00 | 05/11/18 | CO Y1 | 8281 | $130.56 | $96.96 | 99 | $9,235.38 | 40.0 | $9,235.38 | ($227.52) |
| 05/11/18 | 1005884 | CARR, JAMES | $298.20 | $298.20 | $0.00 | 05/11/18 | CO Y1 | 8280 | $101.80 | $196.40 | 99 | $134,190 | 45.0 | $15,497.20 | ($298.20) |

# Weekly Transaction Summary

From 05/09/2018 to 05/16/2018 : Printed: 5/16/2018 11:32:12 AM



ACE MOTOR ACCEPTANCE CORPORATION

| Date | Account / Name | Amt | Amt | | Date | Code | Ref | Amt | Amt | Ct | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/11/18 | 1003108 JACKSON, MEGAN | $238.39 | $238.39 | $0.00 | 05/11/18 | COY1 | 8279 | $141.16 | $0.00 | 99 | $95,356 | $9,251.28 | ($238.39) |
| 05/11/18 | 1000268 HALLEY, LARRY | $208.14 | $208.14 | $0.00 | 05/11/18 | COY1 | 8281 | $87.08 | $121.06 | 99 | $83,256 | $11,607.35 | ($208.14) |
| 05/11/18 | 1005474 HUNT, ERICA | $197.07 | $197.07 | $0.00 | 05/11/18 | COY1 | 8260 | $102.34 | $94.73 | 99 | $88,687 | $9,084.74 | ($197.07) |
| 05/11/18 | 1005779 BALEY, JALISA | $227.95 | $227.95 | $0.00 | 05/11/18 | COY1 | 8260 | $52.96 | $0.00 | 99 | $102,578 | $11,846.04 | ($227.95) |
| 05/11/18 | 1004622 HARMON, KEITH | $237.43 | $237.43 | $0.00 | 05/12/18 | COY1 | 8279 | $174.99 | $0.00 | 99 | $94,972 | $13,175.89 | ($237.43) |
| 05/11/18 | 1055337 RIVERS, KIERRA | $238.64 | $238.64 | $0.00 | 05/11/18 | COY1 | 8260 | $106.54 | $132.10 | 99 | $107,388 | $11,950.97 | ($238.64) |
| 05/11/18 | 1005815 SERBIES, REONTERRO | $237.87 | $237.87 | $0.00 | 05/11/18 | COY1 | 8280 | $97.17 | $140.70 | 99 | $107,043 | $13,547.26 | ($237.84) |
| 05/11/18 | 1004749 SINGLETON, ALICHA | $237.84 | $237.84 | $0.00 | 05/11/18 | COY1 | 8279 | $100.09 | $137.75 | 99 | $95,136 | $12,367.25 | ($237.84) |
| 05/11/18 | 1005234 FINWELL, LAKINA | $237.16 | $237.16 | $0.00 | 05/11/18 | COY1 | 8260 | $110.53 | $126.63 | 99 | $106,722 | $12,172.86 | ($237.16) |
| 05/11/18 | 1005861 WYNN, DETERIOUS | $188.60 | $188.60 | $0.00 | 05/11/18 | COY1 | 8260 | $102.86 | $85.74 | 99 | $94,870 | $9,446.29 | ($188.60) |
| 05/11/18 | 1001925 MOORE, ANTHONY | $238.48 | $238.48 | $0.00 | 05/11/18 | COY1 | 8279 | $182.62 | $55.86 | 99 | $95,392 | $10,508.78 | ($238.48) |
| 05/11/18 | 1005323 HEMPHILL, EBONI | $238.59 | $238.59 | $0.00 | 05/11/18 | COY1 | 8260 | $121.29 | $117.30 | 99 | $107,366 | $10,491.72 | ($238.59) |
| 05/11/18 | 1005817 FRANCOIS, SARAH | $25.00 | $25.00 | $0.00 | 05/11/18 | COY1 | 8280 | $0.00 | $25.00 | 99 | $11,250 | $8,499.00 | ($25.00) |
| 05/11/18 | 1004086 KELLY, JESSIE | $100.00 | $100.00 | $0.00 | 05/11/18 | COY1 | 8281 | $50.00 | $50.00 | 99 | $40,000 | $13,427.34 | ($100.00) |
| 05/11/18 | 1004086 KELLY, JESSIE | $50.00 | $50.00 | $0.00 | 05/11/18 | COY1 | 8281 | $0.51 | $49.49 | 99 | $20,000 | $13,427.34 | ($50.00) |
| 05/11/18 | 1004086 KELLY, JESSIE | $50.00 | $50.00 | $0.00 | 05/11/18 | COY1 | 8281 | $50.00 | $0.00 | 99 | $20,000 | $13,427.34 | ($50.00) |
| 05/11/18 | 1005478 KIRKWOOD, TABITHA | $240.00 | $240.00 | $0.00 | 05/11/18 | COY1 | 8260 | $0.00 | $240.00 | 99 | $108,000 | $12,899.60 | ($240.00) |
| 05/11/18 | 1004720 HICKS, LATONYA | $236.83 | $236.83 | $0.00 | 05/11/18 | COY1 | 8279 | $61.50 | $175.33 | 99 | $94,732 | $11,277.50 | ($236.83) |
| 05/11/18 | 1003032 LOGAR, RICHARD | $197.64 | $197.64 | $0.00 | 05/12/18 | COY1 | 8279 | $77.39 | $83.82 | 99 | $79,056 | $12,811.75 | ($197.64) |
| 05/11/18 | 1004562 BALEY, PATRICK | $237.62 | $250.00 | $0.00 | 05/11/18 | COY1 | 8279 | $0.00 | $237.62 | 99 | $100,000 | $11,794.86 | ($250.00) |
| 05/11/18 | 1003387 ROBERTSON, AUSTIN | $200.00 | $200.00 | $0.00 | 05/11/18 | COY1 | 8279 | $102.63 | $97.37 | 99 | $80,000 | $9,302.75 | ($200.00) |
| 05/12/18 | 1003740 WALTON, SIERRA | $50.00 | $50.00 | $0.00 | 05/12/18 | COY1 | 8279 | $0.00 | $50.00 | 99 | $20,000 | $14,036.84 | ($50.00) |
| 05/12/18 | 1004679 AVILES, GEORGE | $120.00 | $120.00 | $0.00 | 05/12/18 | COY1 | 8279 | $66.65 | $53.35 | 99 | $48,000 | $10,280.05 | ($120.00) |
| 05/12/18 | 1006689 MCDUFFIE, KEVIN | $238.35 | $238.35 | $0.00 | 05/12/18 | COY1 | 8279 | $172.36 | $65.99 | 99 | $95,340 | $11,001.78 | ($238.35) |
| 05/12/18 | 1003740 WALTON, SIERRA | $25.00 | $25.00 | $0.00 | 05/12/18 | COY1 | 8279 | $0.00 | $25.00 | 99 | $10,000 | $14,036.84 | ($25.00) |
| 05/12/18 | 1005818 WEATHERS, SHERRIE | $100.00 | $100.00 | $0.00 | 05/12/18 | COY1 | 8280 | $77.39 | $22.61 | 99 | $45,000 | $6,022.33 | ($100.00) |
| 05/14/18 | 1055000 SANDERS, WANDA | $238.00 | $238.00 | $0.00 | 05/14/18 | 279 | 8279 | $183.28 | $54.72 | 6 | $95,200 | $7,247.21 | $0.00 |
| 05/15/18 | 1005909 VAUGHN, SHERRY | $158.33 | $158.33 | $0.00 | 05/15/18 | COY1 | 8280 | $0.00 | $158.33 | 99 | $71,249 | $9,399.00 | ($158.33) |
| 05/15/18 | 1005104 DAVIS, BRIAN | $236.27 | $236.27 | $0.00 | 05/15/18 | COY1 | 8280 | $128.66 | $107.61 | 99 | $106,322 | $59,638.46 | ($236.27) |
| 05/15/18 | 1003745 TAYLOR, NATALIE | $238.38 | $238.38 | $0.00 | 05/15/18 | COY1 | 8279 | $110.32 | $128.06 | 99 | $95,752 | $12,259.97 | ($238.38) |
| 05/15/18 | 1005185 COUSAR, JASMINE | $25.00 | $25.00 | $0.00 | 05/15/18 | COY1 | 8281 | $0.00 | $25.00 | 99 | $10,000 | $11,465.27 | ($25.00) |
| 05/15/18 | 1005185 COUSAR, JASMINE | $21.95 | $21.95 | $0.00 | 05/15/18 | COY1 | 8281 | $13.00 | $8.95 | 99 | $8,780 | $11,465.27 | ($21.95) |
| | | $18,538.59 | | | | | | $7,770.54 | $10,677.72 | $8.67 | 99 | $7,763.59 | $1,071,110.19 | ($17,857.03) |

# Weekly Transaction Summary

From 05/09/2018 to 05/16/2018 - Printed 5/16/2018 11:32:12 AM



**ACE MOTOR ACCEPTANCE CORPORATION**

## Buybacks

| Drw Date | Account # | Name | VIN | Vehicle | Reserve Notes | Buyback |
|---|---|---|---|---|---|---|
| 5-15-2018 | 0001002066 | SANDERS, KIANNA | 2FMDK3BC0BBA77534 | 2008 FORD EDGE | $165.00 B8K TO DLR | ($6,030.69) |
| 5-10-2018 | 0001005777 | SMITH, TASHA | 1FADP3K22EL2554-66 | 2014 FORD FOCUS | $0.00 B8K TO DLR | ($6,351.28) |
| 5-15-2018 | 0001001204 | THREATT, JOHN | 1ZVHT80N065239712 | 2006 FORD MUSTANG | $0.00 B8K TO DLR | ($4,912.03) |

**Subtotal Buybacks** ($17,343.00)

## FLOORPLAN - Funding

| Funding Date | Account # | Name | VIN | Vehicle | Type Last Paid Balance | Reserve | Addtl Fees | Dealer Check |
|---|---|---|---|---|---|---|---|---|

**Subtotal Funding**

## FLOORPLAN - Transactions

| Issued | Advance # | Type | VIN | Vehicle | Days Old | Advanced | Principal | Fees | Reserve Notes | Total Payoff |
|---|---|---|---|---|---|---|---|---|---|---|
| 5-11-2018 | 0001005113 | Curtailment | 1FADP3F25DL315054 | 2013 FORD FOCUS | 96 | $3,370.00 | $337.01 | $74.30 | $0.00 90 DAY CURT | ($411.31) |
| 5-11-2018 | 0001094773 | Payoff | JNKCV54E07M908774 | 2007 INFINITI G35 | 123 | $4,750.00 | $3,800.00 | $74.48 | $100.00 120 FORCED FINAL | ($3,974.48) |
| 5-11-2018 | 0001005831 | Curtailment | 1HNE1G82AD624050 | 2010 JEEP PATRIOT | 67 | $3,110.00 | $311.00 | $143.68 | $0.00 60 DAY CURT | ($454.68) |
| 5-11-2018 | 0001004793 | Payoff | 1FAFP3N5N7W117728 | 2007 FORD FOCUS | 122 | $1,660.00 | $1,352.00 | $26.50 | $100.00 120 FORCED FINAL | ($1,478.50) |

**Subtotal** | | | | | | $5,800.00 | $5,800.01 | $318.96 | $200.00 | ($6,318.97)

# Weekly Transaction Summary

From 05/09/2018 to 05/16/2018 - Printed: 5/16/2018 11:32:12 AM



ACE MOTOR
ACCEPTANCE CORPORATION

| Issued | Type | Description | Amount |
|---|---|---|---|
| **OVERAGES / SHORTAGES / MISC. /OTHER** | | | |
| | 5-9-2018 Remaining Balance | #53594 - FROM 05-09-2018 STMT | ($108,676.93) |
| | 5-15-2018 Carryover Balance | #53701 - CARRYOVER AMOUNT PENDING GAP CANCELLATION RESEARCH | $50,000.00 |
| **Subtotal Fees** | | | **($55,676.93)** |

| TOTALS | Amount |
|---|---|
| **PAYMENTS DUE** | |
| PERFORMANCE/SERVICING FEES | ($17,857.03) |
| BUYBACKS | $7,763.89 |
| FUNDING | ($17,344.00) |
| FLOORPLAN | |
| FLOORPLAN - Transactions | ($6,318.97) |
| OFFSET - Other | ($58,676.93) |
| **DEALER IN WORKOUT - AMOUNT OWED AMAC - WIRE / CERTIFIED FUNDS REQUIRED** | **($992,433.04)** |



* A NEGATIVE ACH INDICATES A TRANSFER FROM THE DEALER TO AMAC, A POSITIVE ACH INDICATES A TRANSFER FROM AMAC TO THE DEALER

# Weekly Transaction Summary

## MCCOY MOTORS LLC – MCCOYMOTORS@LIVE.COM

From 05/09/2018 to 05/13/2018 - Printed 5/16/2019 4:37:46 AM

### Payments Due and Performance/Servicing Fees

| Date | Drwr Acct # Name | TODAYS $ Tendered | Amt Tendered | Proc Fee | Proc Fee Date | Last Int | Postri | SL | Principal | Interest | Late Fee | Dwr # | P/S Fee | P/S % | Balance | Pmt Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/09/18 | 1000837 MCINTOSH, ERIC | $233.20 | $240.00 | $0.00 | 05/09/18 | COY1 | 8279 | | $132.29 | $100.91 | $6.80 | 99 | $96.000 | 40.0 | $7,468.31 | ($240.00) |
| 05/09/18 | 1005335 KIDD, SHYQUELLA | $237.01 | $237.01 | $0.00 | 05/09/18 | COY1 | 8280 | | $130.92 | $106.09 | $0.00 | 99 | $106.655 | 45.0 | $11,876.23 | ($237.01) |
| 05/09/18 | 1004566 MCALLISTER, SANDY | $247.78 | $247.78 | $0.00 | 05/09/18 | COY1 | 8279 | | $95.36 | $152.42 | $0.00 | 40 | $59.112 | 40.0 | $14,647.69 | ($247.78) |
| 05/09/18 | 1004504 POTTS, ROBYN | $228.87 | $228.87 | $0.00 | 05/09/18 | COY1 | 8279 | | $110.67 | $118.20 | $0.00 | 40 | $91.548 | 40.0 | $11,352.69 | ($228.87) |
| 05/09/18 | 1002325 HUFF, PAUL | $395.25 | $395.25 | $0.00 | 05/09/18 | COY1 | 8279 | | $208.62 | $186.63 | $0.00 | 40 | $158.100 | 40.0 | $9,139.44 | ($395.25) |
| 05/09/18 | 1002823 JOHNSON, DEIRDRE | $208.70 | $217.89 | $0.00 | 05/09/18 | COY1 | 8279 | | $53.80 | $154.90 | $19.19 | 99 | $87.156 | 40.0 | $10,970.95 | ($217.89) |
| 05/09/18 | 1004563 MACKEY, ANGELA | $237.28 | $237.28 | $0.00 | 05/08/18 | COY1 | 8279 | | $88.19 | $149.09 | $0.00 | 99 | $94.912 | 40.0 | $13,404.88 | ($237.28) |
| 05/09/18 | 1005904 PERRY, SETERRIA | $198.40 | $198.40 | $0.00 | 05/08/18 | COY1 | 8280 | | $22.70 | $175.70 | $0.00 | 45 | $89.280 | 45.0 | $10,926.30 | ($198.40) |
| 05/09/18 | 1005232 HOPE, QUATARUS | $188.76 | $188.76 | $0.00 | 05/08/18 | COY1 | 8280 | | $18.72 | $170.04 | $0.00 | 45 | $84.942 | 45.0 | $12,756.87 | ($188.76) |
| 05/09/18 | 1005232 HOPE, QUATARUS | $50.00 | $50.00 | $0.00 | 05/08/18 | COY1 | 8280 | | $50.00 | $0.00 | $0.00 | 99 | $22.500 | 45.0 | $12,756.87 | ($50.00) |
| 05/09/18 | 1003838 CLINTON, JOHN | $226.50 | $237.73 | $0.00 | 05/07/18 | COY1 | 8281 | | $74.48 | $152.02 | $11.23 | 99 | $95.092 | 40.0 | $12,219.27 | ($237.73) |
| 05/09/18 | 1005476 HODGE, SHERITA | $258.34 | $258.34 | $0.00 | 05/07/18 | COY1 | 8280 | | $123.21 | $135.13 | $0.00 | 45 | $116.253 | 45.0 | $12,977.26 | ($258.34) |
| 05/09/18 | 1005811 THOMPSON, | $197.69 | $197.69 | $0.00 | 05/07/18 | COY1 | 8280 | | $57.25 | $140.44 | $0.00 | 45 | $88.961 | 45.0 | $9,232.08 | ($197.69) |
| 05/09/18 | 1002868 ANDREWS, DOMINIQUE | $86.80 | $86.80 | $0.00 | 05/07/18 | COY1 | 8279 | | $58.06 | $28.74 | $0.00 | 40 | $34.720 | 40.0 | $9,657.52 | ($86.80) |
| 05/09/18 | 999440 DOBIE, CEDRIC | $160.00 | $160.00 | $0.00 | 05/11/18 | COY1 | 8279 | | $42.10 | $117.90 | $0.00 | 40 | $64.000 | 40.0 | $19,197.41 | ($160.00) |
| 05/09/18 | 1005818 WEATHERS, SHERRIE | $10.00 | $10.00 | $0.00 | 05/12/18 | COY1 | 8280 | | $0.95 | $9.05 | $0.00 | 45 | $4.500 | 45.0 | $6,022.33 | ($10.00) |
| 05/09/18 | 1002822 SHIPP, KEEYONA | $188.34 | $188.34 | $0.00 | 05/09/18 | COY1 | 8279 | | $16.26 | $172.08 | $0.00 | 40 | $75.336 | 40.0 | $12,862.53 | ($188.34) |
| 05/09/18 | 1002822 SHIPP, KEEYONA | $50.00 | $50.00 | $0.00 | 05/09/18 | COY1 | 8279 | | $50.00 | $0.00 | $0.00 | 40 | $20.000 | 40.0 | $12,862.53 | ($50.00) |
| 05/09/18 | 1005512 BAIZA-MEDINA, JUAN | $15.11 | $25.00 | $0.00 | 05/09/18 | COY1 | 8280 | | $0.00 | $15.11 | $9.89 | 99 | $11.250 | 45.0 | $12,124.00 | ($25.00) |
| 05/09/18 | 1004811 MOBLEY, ANGELA | $439.00 | $443.95 | ($4.95) | 05/09/18 | 274 | 8279 | | $193.81 | $246.19 | $0.00 | 4 | $175.600 | 40.0 | $11,658.65 | $0.00 |
| 05/09/18 | 1005331 ROYAL, JACQUELINE | $237.73 | $237.73 | $0.00 | 05/09/18 | COY1 | 8280 | | $70.72 | $167.01 | $0.00 | 45 | $106.979 | 45.0 | $12,758.32 | ($237.73) |
| 05/09/18 | 1004273 BARBER, LAPRESHA | $238.77 | $250.00 | $0.00 | 05/09/18 | COY1 | 8281 | | $72.94 | $165.93 | $11.23 | 99 | $100.600 | 40.0 | $10,655.08 | ($250.00) |
| 05/10/18 | 1002916 KELLY, JULIAN | $237.01 | $237.01 | $0.00 | 05/10/18 | COY1 | 8281 | | $144.94 | $92.07 | $0.00 | 40 | $94.804 | 40.0 | $9,087.53 | ($237.01) |
| 05/10/18 | 1005755 ROSARIO, BRADLEY | $239.76 | $239.76 | $0.00 | 05/10/18 | COY1 | 8280 | | $60.91 | $178.85 | $0.00 | 45 | $107.892 | 45.0 | $16,632.31 | ($239.76) |
| 05/10/18 | 999763 FAULKENBERRY, | $208.78 | $208.78 | $0.00 | 05/10/18 | COY1 | 8281 | | $87.31 | $121.47 | $0.00 | 40 | $83.512 | 40.0 | $11,645.98 | ($208.78) |
| 05/10/18 | 1000833 MCGRUFF, DARNITIA | $206.99 | $217.88 | $0.00 | 05/10/18 | COY1 | 8281 | | $108.67 | $98.32 | $10.89 | 99 | $87.152 | 40.0 | $9,996.25 | ($217.88) |
| 05/10/18 | 1005786 MARTINO, CECILIA | $249.55 | $249.55 | $0.00 | 05/10/18 | COY1 | 8280 | | $42.64 | $206.91 | $0.00 | 45 | $112.298 | 45.0 | $14,008.82 | ($249.55) |
| 05/11/18 | 1004757 ROLLINS, ANTONIO | $237.60 | $237.60 | $0.00 | 05/10/18 | COY1 | 8279 | | $146.51 | $91.09 | $0.00 | 99 | $95.040 | 40.0 | $9,367.38 | ($237.60) |



ACE MOTOR
ACCEPTANCE CORPORATION

# Weekly Transaction Summary

From 05/09/2018 to 05/16/2018 - Printed: 5/16/2018 4:37:46 AM

ACE MOTOR ACCEPTANCE CORPORATION

| Date | Account / Name | Amount | Amount | Date | Co | Ref | Amount | Amount | Code | Amount | Amount | Adj |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/11/18 | 1005564 COLEMAN, IVY | $2.98 | $2.98 | 05/10/18 | COY1 | 8280 | $0.00 | $2.98 | 99 | $1,341 | $12,749.00 | ($2.98) |
| 05/11/18 | 999185 COUSAR, JASMINE | $249.15 | $260.00 | 05/15/18 | COY1 | 8281 | $137.15 | $112.20 | 99 | $104,000 | $111,465.27 | ($260.00) |
| 05/11/18 | 999185 COUSAR, JASMINE | $44.00 | $44.00 | 05/15/18 | COY1 | 8281 | $35.49 | $8.51 | 99 | $17,600 | $11,465.27 | ($44.00) |
| 05/11/18 | 999430 DOBIE, CEDRIC | $160.00 | $160.00 | 05/10/18 | COY1 | 8279 | $139.29 | $20.71 | 99 | $54,000 | $160.00 | ($160.00) |
| 05/11/18 | 1005785 BIVENS, JOHNNY | $238.42 | $238.42 | 05/10/18 | COY1 | 8280 | $27.08 | $211.34 | 99 | $107,289 | $13,211.92 | ($238.42) |
| 05/11/18 | 999754 HAGGINS, ASHIA | $228.26 | $228.26 | 05/10/18 | COY1 | 8281 | $121.84 | $106.42 | 99 | $91,304 | $10,948.98 | ($228.26) |
| 05/11/18 | 1000833 MCGRIFF, DARNITTA | $123.41 | $123.41 | 05/10/18 | COY1 | 8281 | $123.41 | $0.00 | 99 | $3.61 | $9,996.25 | ($123.41) |
| 05/11/18 | 1005004 MOORE, BRITTANY | $127.02 | $127.02 | 05/10/18 | COY1 | 8281 | $0.00 | $127.02 | 99 | $50,808 | $9,996.25 | ($127.02) |
| 05/11/18 | 1005004 MOORE, BRITTANY | $237.97 | $237.97 | 05/10/18 | COY1 | 8279 | $58.95 | $179.02 | 99 | $35,188 | $103,884 | ($237.97) |
| 05/11/18 | 1001925 MOORE, ANTHONY | $237.97 | $237.97 | 05/10/18 | COY1 | 8279 | $101.21 | $136.76 | 99 | $35,188 | $103,163.84 | ($237.97) |
| 05/11/18 | 1001925 MOORE, ANTHONY | $238.48 | $238.48 | 05/10/18 | COY1 | 8279 | $123.61 | $114.87 | 99 | $814.87 | $14,163.84 | ($238.48) |
| 05/11/18 | 1001925 MOORE, ANTHONY | $237.62 | $237.62 | 05/10/18 | COY1 | 8279 | $180.76 | $56.80 | 99 | $95,392 | $10,608.78 | ($237.62) |
| 05/11/18 | 1003268 GREGORY, JOHN | $100.00 | $100.00 | 04/30/18 | COY1 | 8279 | $167.20 | $70.42 | 99 | $55,043 | $10,508.78 | ($237.56) |
| 05/11/18 | 1003266 GREGORY, JOHN | $238.88 | $238.88 | 05/04/18 | COY1 | 8279 | $0.00 | $142.34 | 99 | $95,043 | $12,751.49 | ($237.62) |
| 05/11/18 | 1005911 SHANTEAU-JACKSON, | $100.00 | $100.00 | 05/04/18 | COY1 | 8280 | $95.54 | $96.00 | 99 | $45,000 | $8,005.95 | ($100.00) |
| 05/11/18 | 1002947 VOELIN, VOELITH | $238.88 | $238.88 | 05/04/18 | COY1 | 8279 | $0.00 | $142.34 | 99 | $55,552 | $12,178.04 | ($238.88) |
| 05/11/18 | 1005929 BREAZEALE, DERRICK | $238.04 | $238.04 | 05/04/18 | COY1 | 8280 | $95.54 | $238.04 | 99 | $45,000 | $12,599.00 | ($238.04) |
| 05/11/18 | 1054770 EVANS, JESSICA | $237.53 | $237.53 | 05/11/18 | COY1 | 8279 | $177.19 | $110.34 | 99 | $35,012 | $10,444.04 | ($237.53) |
| 05/11/18 | 1005231 WILLIAMS, RAHEEMAH | $237.53 | $237.53 | 05/11/18 | COY1 | 8279 | $25.45 | $208.22 | 99 | $126,952 | $13,719.55 | ($237.53) |
| 05/11/18 | 1005549 SEARS, JENNIFER | $237.67 | $237.67 | 05/11/18 | COY1 | 8280 | $0.00 | $228.38 | 99 | $102,771 | $13,874.00 | ($228.38) |
| 05/11/18 | 1005550 BEAVERS, KENDARIOUS | $228.38 | $228.38 | 05/11/18 | COY1 | 8280 | $78.07 | $119.97 | 99 | $89,118 | $11,556.23 | ($228.38) |
| 05/11/18 | 1004755 GILLISPIE, NATHANIEL | $193.04 | $193.04 | 05/11/18 | COY1 | 8279 | $90.20 | $90.20 | 99 | $94,444 | $89,118 | ($193.04) |
| 05/11/18 | 1003385 GROLL, VICKIE | $236.11 | $236.11 | 05/11/18 | COY1 | 8279 | $145.91 | $90.20 | 99 | $90,204 | $8,602.26 | ($236.11) |
| 05/11/18 | 1011591 GOMEZ, APRIL | $238.37 | $238.37 | 05/11/18 | COY1 | 8279 | $121.68 | $106.69 | 99 | $106,699 | $91,348 | ($238.37) |
| 05/11/18 | 1005752 FERGUSON | $238.69 | $238.69 | 05/11/18 | COY1 | 8279 | $135.66 | $103.01 | 99 | $95,476 | $9,814.80 | ($238.69) |
| 05/11/18 | 1004770 EVANS, JESSICA | $237.93 | $237.93 | 05/11/18 | COY1 | 8280 | $173.02 | $64.91 | 99 | $95,172 | $10,843.84 | ($237.93) |
| 05/11/18 | 997794 DIXON, LARRY | $237.53 | $237.53 | 05/11/18 | COY1 | 8279 | $128.50 | $109.03 | 99 | $95,012 | $10,444.04 | ($237.53) |
| 05/11/18 | 1005089 THOMAS, LORI | $103.79 | $103.79 | 05/11/18 | COY1 | 8279 | $93.32 | $10.47 | 99 | $41,516 | $62,638.48 | ($103.79) |
| 05/11/18 | 1005477 DAVIE, TRAMAINE | $237.55 | $237.55 | 05/11/18 | COY1 | 8280 | $10.47 | $131.73 | 99 | $106,898 | $12,666.19 | ($237.55) |
| 05/11/18 | 1005769 CRUZADO, TENEKE | $199.50 | $199.50 | 05/11/18 | COY1 | 8282 | $59.51 | $128.99 | 99 | $89,325 | $11,504.49 | ($199.50) |
| 05/11/18 | 1005477 DAVIE, TRAMAINE | $195.50 | $195.50 | 05/11/18 | COY1 | 8280 | $39.03 | $208.99 | 99 | $111,609 | $13,244.69 | ($195.50) |
| 05/11/18 | 1003527 GARCIA, RUGERIO | $248.02 | $248.02 | 05/11/18 | COY1 | 8279 | $113.37 | $135.47 | 40 | $99,336 | $12,972.94 | ($248.02) |
| 05/11/18 | 1005278 SEAMON, NATASHA | $248.84 | $248.84 | 05/11/18 | COY1 | 8280 | $64.74 | $102.81 | 45 | $81,032 | $8,551.93 | ($248.84) |
| 05/11/18 | 999545 SCHRADER, ANDREA | $167.55 | $167.55 | 05/11/18 | COY1 | 8280 | $87.41 | $115.17 | 45 | $81,037.01 | $11,037.01 | ($167.55) |
| 05/11/18 | 1005913 PRINCE, ALEXIS | $202.58 | $202.58 | 05/11/18 | COY1 | 8281 | $0.00 | $175.26 | 45 | $78,867 | $11,797.72 | ($202.58) |
| 05/11/18 | 1005813 CHERRY, TRUIMALL | $175.26 | $175.26 | 05/11/18 | COY1 | 8280 | $65.72 | $175.69 | 45 | $78,735 | $13,053.28 | ($175.26) |
| 05/11/18 | 59259 CHAMBERS, NATASHA | $219.41 | $219.41 | 05/11/18 | COY1 | 8281 | $130.56 | $96.96 | 40 | $98,235 | $9,235.38 | ($219.41) |
| 05/11/18 | 1005884 CARR, JAMES | $227.52 | $298.20 | 05/10/18 | COY1 | 8280 | $101.80 | $196.40 | 45 | $91,008 | $15,497.20 | ($298.20) |

# Weekly Transaction Summary

From 05/09/2018 to 05/16/2018 - Printed: 5/16/2018 4:37:46 AM

**ACE MOTOR ACCEPTANCE CORPORATION**

| Account | Name | Amt | Amt | | Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1003108 | JACKSON, MEGAN | $238.39 | $238.39 | $0.00 | 05/11/18 | COY1 | 8279 | $141.16 | $97.23 | $0.00 | 99 | $95,356 | $9,251.28 | ($238.39) |
| 1000268 | HALLEY, LARRY | $208.14 | $208.14 | $0.00 | 05/11/18 | COY1 | 8281 | $87.08 | $121.06 | $0.00 | 99 | $83,256 | $11,607.35 | ($208.14) |
| 1005474 | HUNT, ERICA | $197.07 | $197.07 | $0.00 | 05/11/18 | COY1 | 8281 | $102.34 | $94.73 | $0.00 | 99 | $88,682 | $9,394.74 | ($197.07) |
| 1005779 | BAILEY, JALISA | $227.95 | $227.95 | $0.00 | 05/11/18 | COY1 | 8280 | $52.96 | $174.99 | $0.00 | 99 | $102,578 | $11,846.04 | ($227.95) |
| 1004622 | HARMON, KEITH | $237.43 | $237.43 | $0.00 | 05/11/18 | COY1 | 8279 | $100.54 | $136.89 | $0.00 | 99 | $113,176.89 | $13,175.89 | ($237.43) |
| 1005337 | RIVERS, KIERRA | $238.64 | $238.64 | $0.00 | 05/11/18 | COY1 | 8280 | $106.54 | $132.10 | $0.00 | 45 | $107,388 | $11,850.97 | ($238.64) |
| 1003815 | SERBLES, REONTERIO | $237.87 | $237.87 | $0.00 | 05/11/18 | COY1 | 8280 | $97.17 | $140.70 | $0.00 | 45 | $107,042 | $13,547.36 | ($237.87) |
| 1047749 | SINGLETON, ALICHA | $237.84 | $237.84 | $0.00 | 05/11/18 | COY1 | 8279 | $100.05 | $137.75 | $0.00 | 45 | $95,118 | $12,362.25 | ($237.84) |
| 1005234 | FENWELL, LAKIMA | $237.16 | $237.16 | $0.00 | 05/11/18 | COY1 | 8280 | $110.53 | $126.63 | $0.00 | 45 | $106,722 | $12,172.86 | ($237.16) |
| 1005881 | WYNN, DETERRIOUS | $188.60 | $188.60 | $0.00 | 05/11/18 | COY1 | 8280 | $102.86 | $85.74 | $0.00 | 45 | $94,870 | $9,446.29 | ($188.60) |
| 1001925 | MOORE, ANTHONY | $238.48 | $238.48 | $0.00 | 05/11/18 | COY1 | 8279 | $182.62 | $55.86 | $0.00 | 45 | $93,392 | $10,608.78 | ($238.48) |
| 1005523 | HEMPHILL, EBONI | $238.59 | $238.59 | $0.00 | 05/11/18 | COY1 | 8280 | $121.29 | $117.30 | $0.00 | 45 | $107,366 | $10,491.72 | ($238.59) |
| 1005817 | FRANCOIS, SARAH | $25.00 | $25.00 | $0.00 | 05/11/18 | COY1 | 8280 | $0.00 | $25.00 | $0.00 | 45 | $11,250 | $8,499.00 | ($25.00) |
| 1004086 | KELLY, JESSIE | $100.00 | $100.00 | $0.00 | 05/11/18 | COY1 | 8281 | $0.00 | $100.00 | $0.00 | 45 | $40,000 | $13,427.34 | ($100.00) |
| 1004086 | KELLY, JESSIE | $50.00 | $50.00 | $0.00 | 05/11/18 | COY1 | 8281 | $0.51 | $49.49 | $0.00 | 40 | $20,000 | $13,427.34 | ($50.00) |
| 1004086 | KELLY, JESSIE | $50.00 | $50.00 | $0.00 | 05/11/18 | COY1 | 8281 | $50.00 | $0.00 | $0.00 | 40 | $20,000 | $13,427.34 | ($50.00) |
| 1005478 | KIRKWOOD, TABITHA | $240.00 | $240.00 | $0.00 | 05/11/18 | COY1 | 8280 | $0.00 | $240.00 | $0.00 | 45 | $108,000 | $12,895.60 | ($240.00) |
| 1004720 | HICKS, LATONYA | $236.83 | $236.83 | $0.00 | 05/11/18 | COY1 | 8279 | $61.50 | $175.33 | $0.00 | 40 | $94,732 | $11,277.50 | ($236.83) |
| 1003032 | LOGAN, RICHARD | $197.64 | $197.64 | $0.00 | 05/11/18 | COY1 | 8279 | $113.82 | $83.82 | $0.00 | 40 | $79,056 | $12,811.75 | ($197.64) |
| 1004552 | BAILEY, PATRICK | $237.62 | $237.62 | $0.00 | 05/11/18 | COY1 | 8279 | $0.00 | $237.62 | $112.38 | 99 | $100,000 | $11,794.86 | ($250.00) |
| 1003387 | ROBERTSON, AUSTIN | $200.00 | $200.00 | $0.00 | 05/11/18 | COY1 | 8279 | $102.63 | $97.37 | $0.00 | 99 | $80,000 | $9,302.75 | ($200.00) |
| 1003740 | WALTON, SIERRA | $50.00 | $50.00 | $0.00 | 05/12/18 | COY1 | 8279 | $0.00 | $50.00 | $0.00 | 40 | $20,000 | $14,036.84 | ($50.00) |
| 1004679 | AVILES, GEORGE | $120.00 | $120.00 | $0.00 | 05/12/18 | COY1 | 8279 | $66.65 | $53.35 | $0.00 | 40 | $48,000 | $10,289.05 | ($120.00) |
| 1006689 | MCDUFFIE, KEVIN | $238.35 | $238.35 | $0.00 | 05/12/18 | COY1 | 8279 | $172.36 | $65.99 | $0.00 | 99 | $95,340 | $11,001.78 | ($238.35) |
| 1003740 | WALTON, SIERRA | $25.00 | $25.00 | $0.00 | 05/12/18 | COY1 | 8279 | $0.00 | $25.00 | $0.00 | 99 | $10,000 | $14,036.84 | ($25.00) |
| 1005818 | WEATHERS, SHERGIE | $100.00 | $100.00 | $0.00 | 05/12/18 | COY1 | 8280 | $77.39 | $22.61 | $0.00 | 45 | $45,000 | $6,022.33 | ($100.00) |
| 1005000 | SANDERS, WANDA | $238.00 | $238.00 | $0.00 | 05/14/18 | 279 | 8279 | $183.28 | $54.72 | $0.00 | 40 | $95,200 | $7,247.31 | $0.00 |
| 1005909 | VAUGHN, SHERRY | $158.33 | $158.33 | $0.00 | 05/15/18 | COY1 | 8280 | $0.00 | $158.33 | $0.00 | 45 | $71,249 | $9,349.00 | ($158.33) |
| 1005104 | DAVIS, BRIAN | $236.27 | $236.27 | $0.00 | 05/15/18 | COY1 | 8280 | $128.66 | $107.61 | $0.00 | 45 | $106,322 | $9,638.46 | ($236.27) |
| 1003745 | TAYLOR, NATALIE | $238.38 | $238.38 | $0.00 | 05/15/18 | COY1 | 8279 | $110.32 | $128.06 | $0.00 | 45 | $93,352 | $12,259.97 | ($238.38) |
| 999185 | COUSAR, JASMINE | $25.00 | $25.00 | $0.00 | 05/15/18 | COY1 | 8281 | $0.00 | $25.00 | $0.00 | 40 | $10,000 | $11,465.27 | ($25.00) |
| 999185 | COUSAR, JASMINE | $21.95 | $21.95 | $0.00 | 05/15/18 | COY1 | 8281 | $13.00 | $8.95 | $0.00 | 40 | $9,780 | $11,465.27 | ($21.95) |
| | | $13,528.50 | | | | | | $7,710.54 | $10,677.42 | $88,007 | | $7,763.39 | $1,071,519.15 | ($17,857.03) |

# Weekly Transaction Summary

From 05/09/2018 to 05/15/2018 - Printed 5/16/2018 4:37:48 AM



**ACE MOTOR ACCEPTANCE CORPORATION**

## Buybacks

| Drwr Date | Account # | Name | VIN | Vehicle | Reserve Notes | Buyback |
|---|---|---|---|---|---|---|
| 5-15-2018 | 0001002066 | SANDERS, KIANNA | 2FMDK3BD3BA77534 | 2008 FORD EDGE | $165.00 BBK TO DLR | ($6,080.69) |
| 5-10-2018 | 0001005777 | SMITH, TASHA | 1FA0P3K2E2355466 | 2014 FORD FOCUS | $0.00 BBK TO DLR | ($6,351.28) |
| 5-15-2018 | 0001001204 | THREATT, JOHN | 1ZVHT88N065256712 | 2006 FORD MUSTANG | $0.00 BBK TO DLR | ($4,912.03) |
| **Subtotal Buybacks** | | | | | | **($17,344.00)** |

## FLOORPLAN - Funding

| Funding Date | Account # | Name | VIN | Vehicle | Type | Last Paid Balance | Reserve | Reserve Notes | Total Floorplan |
|---|---|---|---|---|---|---|---|---|---|
| **Subtotal Funding** | | | | | | | | | |

## FLOORPLAN - Transactions

| Issued | Advance # | Type | VIN | Vehicle | Days Old | Advanced | Principal | Fees | Addtl Fees Reserve Notes | Total Payoff |
|---|---|---|---|---|---|---|---|---|---|---|
| 5-11-2018 | 0001005113 | Curtailment | 1FADP3F25DL315054 | 2013 FORD FOCUS | 96 | $3,370.00 | $337.01 | $74.30 | $0.00 90 DAY CURT | ($411.31) |
| 5-11-2018 | 0001004773 | Payoff | JNKCV54E07M906774 | 2007 INFINITI G35 | 123 | $4,750.00 | $3,800.00 | $74.48 | $100.00 120 FORCED FINAL | ($3,974.48) |
| 5-11-2018 | 0001005831 | Curtailment | L3HNF1GS2A0G24050 | 2010 JEEP PATRIOT | 67 | $3,110.00 | $311.00 | $143.68 | $0.00 60 DAY CURT | ($454.68) |
| 5-11-2018 | 0001004793 | Payoff | 1FAFP34N57W117728 | 2007 FORD FOCUS | 122 | $1,690.00 | $1,352.00 | $26.50 | $100.00 120 FORCED FINAL | ($1,478.50) |
| **Subtotal** | | | | | | | $5,800.01 | $318.96 | $200.00 | ($5,318.97) |

# Weekly Transaction Summary

From 05/09/2018 to 05/16/2018 - Printed 5/19/2018 4:37:46 AM



**ACE MOTOR ACCEPTANCE CORPORATION**

| | Type | Description | Amount |
|---|---|---|---|
| OVERAGES / SHORTAGES / MISC. / OTHER | | | |
| Issued | 5-9-2018 Remaining Balance | #53594 - FROM 05-09-2018 STMT | ($108,676.93) |
| **Subtotal Fees** | | | **($108,676.93)** |
| **TOTALS** | | | |
| PAYMENTS DUE | | | |
| PERFORMANCE/SERVICING FEES | | | ($17,857.03) |
| BUYBACKS | | | $7,763.89 |
| FUNDING | | | ($17,344.00) |
| FLOORPLAN | | | |
| FLOORPLAN - Transactions | | | ($6,318.97) |
| OFFSET - Other | | | ($108,676.93) |
| DEALER IN WORKOUT - AMOUNT OWED AMAC - WIRE / CERTIFIED FUNDS REQUIRED | | | ($142,433.04) |

\* A NEGATIVE ACH INDICATES A TRANSFER FROM THE DEALER TO AMAC, A POSITIVE ACH INDICATES A TRANSFER FROM AMAC TO THE DEALER

# Re: Notice of Demand and Default

McCoy Motors

Wed 5/16/2018 7:01 PM

Sent Items

To: Eric Cogswell <ecogswell@acemotoracceptance.com>; Robin Milestone <rmilestone@acemotoracceptance.com>;

Cc: Russ Algood <russ@acemotoracceptance.com>; davebadger@badgerlawnc.com <davebadger@badgerlawnc.com>; henderson@title11.com <henderson@title11.com>;

ⓐ 7 attachments (2 MB)

5.15.ace email.docx; 5.16.wkly.statement.pdf; revised.5.16.pdf; McCoy Motors Default and Demand 5-16-2018.pdf; MCCOY MOTORS LLC (8251)-2018-05-16-REV1.pdf; McCoy Motors Accelerated Floorplan 5-16-2018.pdf; McCoy Outstanding Titles.pdf;

Russ asked that last time I pointed out Robin's legal mistraps (after Robin told me I was wrong in an email, then I explained the situation to Russ & the employee was fired) that discussions should be between us. So since he wasn't copied in the last email I thought he should be made aware of what Robin is doing & likely to cause Russ & Ace even more headaches. Notice I finally got an email at least talking about the $50K for the GAP Waiver/Insurance mess (which I think could not only be a civil problem but also a criminal problem). I got that email at 12:08 pm on 5/15/18.

Then today I received my weekly statement which also acknowledged the $50k for the Gap mess. My wife called shortly after that to ask if we could bring over a check to payoff a car (Robin decided to get an attitude). But obviously had to agree, within 20 minutes of that phone call I got a "revised weekly statement" taking away the $50k credit, shortly after that I got a notice of default.

I have said before if I am right on the Gap & 20 years experience tells me I am along with many other industry experts. It is likely criminal and civil. I estimate in the last 3 years Ace has not credited millions of dollars to consumers accounts. Which I believe under Federal UCC they had a fiduciary duty to do. If the Judge puts those Gap claims in front of Hamilton it will likely convert to a Chapter 7 and I doubt Hamilton will even come close to being paid in full. Which my guess is then they will look at the guarantors.

Maybe I've been to nice to this point, but I'm not sure why Robin seemed to take the $50K credit back after acknowledging it twice in email and verbally last week. At this point I sincerely hope Russ can put the Reins on him before he causes more trouble. We work in one of the most regulated industries in the country and for 20 years this is all I've done. So I ask everyone use common sense and talk.

Sincerely,
Rob McCoy
803-577-9779 cell



This email was sent by Robin Milestone at 12:08pm on 5/15

McCoy Motors-

RE: Recent GAP cancellation request by the dealership and follow up to meeting between McCoy Motors and AMAC.

AMAC has agreed to show a "Carryover Balance" on the Weekly statement in the amount of $50,000 while the two parties work towards a permanent agreement related to GAP cancellations on contracts purchased by AMAC and later repurchased by McCoy Motors. The last weekly statement as of 5/9/18 indicated McCoy Motors owed $108,676.93. It was stated in the meeting, this in not a credit from AMAC nor and admission of wrongdoing by either party. The credit will not be applied specifically to any outstanding amounts owed related to customer payments, floorplan or buybacks. In the event that any or all of the "carryover balance" were to be "credited" to McCoy Motors, AMAC would apply the credit first to buybacks processed related to Outstanding titles never received by AMAC.

AMAC and McCoy Motors have agreed to seek more information, follow through on outstanding GAP cancellations and continue to move forward with all other items owed per the Dealer Agreement including outstanding payments due, floorplan, buybacks to receive a title, etc.; McCoy Motors will keep current on other items owed.

Please acknowledge or inquire of any misunderstandings.

Thank you,

**Robin Milestone**
*Customer Service*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7163
f: 704-200-9221
e: rmilestone@myamac.com

**From:** Eric Cogswell <ecogswell@acemotoracceptance.com>
**Sent:** Wednesday, May 16, 2018 3:08 PM
**To:** Mccoy Motors; Robin Milestone
**Subject:** Notice of Demand and Default

Please read the attached Notice and contact Robin Milestone when you are finished.

**Eric Cogswell**
*Risk Manager*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7146
f: 704-625-7542
e: ecogswell@myamac.com

# Re: Notice of Demand and default

Russ Algood <russ@acemotoracceptance.com>

Thu 5/17/2018 10:24 AM

To: Mccoy Motors <mccoymotors@live.com>;

Cc: Eric Cogswell <ecogswell@acemotoracceptance.com> Robin Milestone <rmilestone@acemotoracceptance.com> davebadger@badgerlawnc.com
<davebadger@badgerlawnc.com> henderson@title11.com <henderson@title11.com>;

Look forward to seeing you later today

Sent from my iPhone

On May 16, 2018, at 7:01 PM, Mccoy Motors <mccoymotors@live.com> wrote:

> Robb,
> ........... I will be happy to meet with you this afternoon. Let me know what time you will be at Ace and how money you will bring

Russ asked that last time I pointed out Robin's legal mishaps (after Robin told me I was wrong in an email, then I explained the situation to Russ & the employee was fired) that discussions should be between us. So since he wasn't copied in the last email I thought he should be made aware of what Robin is doing & likely to cause Russ & Ace even more headaches. Notice I finally got an email at least talking about the $50K for the GAP Waiver/insurance mess (which I think could not only be a civil problem but also a criminal problem). I got that email at 12:08 pm on 5/15/18.

Then today I received my weekly statement which also acknowledged the $50k for the Gap mess. My wife called shortly after that to ask if we could bring over a check to payoff a car ( Robin decided to get an attitude). But obviously had to agree, within 20 minutes of that phone call I got a "revised weekly statement" taking away the $50K credit, shortly after that I got a notice of default.

I have said before if I am right on the Gap & 20 years experience tells me I am along with many other industry experts. It is likely criminal and civil, I estimate in the last 3 years Ace has not credited millions of dollars to consumers accounts. Which I believe under Federal UCC they had a fiduciary duty to do. If the Judge puts those Gap claims in front of Hamilton it will likely convert to a Chapter 7 and I doubt Hamilton will even come close to being paid in full. Which my guess is then they will look at the guarantors.

Maybe I've been to nice to this point, but I'm not sure why Robin seemed to take the $50K credit back after acknowledging it twice in email and verbally last week. At this point I sincerely hope Russ can put the Reins on him before he causes more trouble. We work in one of the most regulated industries in the country and for 20 years this is all I've done. So I ask everyone use common sense and talk.

Sincerely,

Rob McCoy

803-577-9779 cell

This email was sent by Robin Milestone at 12:08pm on 5/15

McCoy Motors-

RE: Recent GAP cancellation request by the dealership and follow up to meeting between McCoy Motors and AMAC.

AMAC has agreed to show a "Carryover Balance" on the Weekly statement in the amount of $50,000 while the two parties work towards a permanent agreement related to GAP cancellations on contracts purchased by AMAC and later repurchased by McCoy Motors. The last weekly statement as of 5/9/18 indicated McCoy Motors owed $108,676.93. It was stated in the meeting, this in not a credit from AMAC nor and admission of wrongdoing by either party. The credit will not be applied specifically to any outstanding amounts owed related to customer payments, floorplan or buybacks. In the event that any or all of the "carryover balance" were to be "credited" to McCoy Motors, AMAC would apply the credit first to buybacks processed related to Outstanding titles never received by AMAC.

AMAC and McCoy Motors have agreed to seek more information, follow through on outstanding GAP cancellations and continue to move forward with all other items owed per the Dealer Agreement including outstanding payments due, floorplan, buybacks to receive a title, etc.. McCoy Motors will keep current

on other items owed.

Please acknowledge or inquire of any misunderstandings.

Thank you,

**Robin Milestone**
*Customer Service*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext.7163
f: 704-200-9221
e: rmilestone@myamac.com

**From:** Eric Cogswell <ecogswell@acemotoracceptance.com>
**Sent:** Wednesday, May 16, 2018 3:08 PM

**To:** Mccoy Motors; Robin Milestone
**Subject:** Notice of Demand and Default

Please read the attached Notice and contact Robin Milestone when you are finished.

**Eric Cogswell**
*Risk Manager*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7146
f: 704-625-7542
e: ecogswell@myanac.com

<5.15.ace.email.docx>

<5.16.webly.statement.pdf>

<revised.5.16.pdf>

<McCoy Motors Default and Demand 5-16-2018.pdf>

<MCCOY MOTORS LLC (825i)-2018-05-16-REV1.pdf>

<Mccoy Motors Accelerated Floorplan 5-16-2018.pdf>

<McCoy Outstanding Titles.pdf>

# Re: Notice of Demand and default

Mccoy Motors

Thu 5/17/2018 10:35 AM

Sent Items

To: Russ Algood <russ@acemotoracceptance.com>;

Cc: Eric Cogswell <ecogswell1@acemotoracceptance.com>; Robin Milestone <rmilestone@acemotoracceptance.com>; davebadger@badgerlawnc.com <davebadger@badgerlawnc.com>; henderson@title11.com <henderson@title11.com>;

We've met before and you lied about the gap claim credit.

When will you honor your word? Which since you lied obviously means nothing

I already went to Ace and you lied and wasted both of our time because you're acting like a 2 year old. It is my intention to get a trustee appointment so I can at least deal with someone honest.

Unless you wanna bring me a certified check for the $50k then we can talk.

Those 2 emails and verbal agreement you sent I believe constitutes a contract, which you violated yesterday.

Rob

Sent from my iPhone

On May 17, 2018, at 10:24 AM, Russ Algood <russ@acemotoracceptance.com> wrote:

    Rob,

    I will be happy to meet with you this afternoon. Let me know what time you will be at Ace and how money you will bring.

    Look forward to seeing you later today

    Sent from my iPhone

    On May 16, 2018, at 7:01 PM, Mccoy Motors <mccoymotors@live.com> wrote:

        Russ asked that last time I pointed out Robin's legal mishaps (after Robin told me I was wrong in an email, then I explained the situation to Russ & the employee was fired) that discussions should be between us. So since he wasn't copied in the last email I thought he should be made aware of

what Robin is doing & likely to cause Russ & Ace even more headaches. Notice I finally got an email at least talking about the $50K for the GAP Waiver/Insurance mess (which I think could not only be a civil problem but also a criminal problem). I got that email at 12:08 pm on 5/15/18.

Then today I received my weekly statement which also acknowledged the $50K for the Gap mess. My wife called shortly after that to ask if we could bring over a check to payoff a car (Robin decided to get an attitude). But obviously had to agree, within 20 minutes of that phone call I got a "revised weekly statement" taking away the $50k credit, shortly after that I got a notice of default.

I have said before if I am right on the Gap & 20 years experience tells me I am along with many other industry experts. It is likely criminal and civil. I estimate in the last 3 years Ace has not credited millions of dollars to consumers accounts. Which I believe under Federal UCC they had a fiduciary duty to do. If the Judge puts those Gap claims in front of Hamilton it will likely convert to a Chapter 7 and I doubt Hamilton will even come close to being paid in full. Which my guess is then they will look at the guarantors.

Maybe I've been to nice to this point, but I'm not sure why Robin seemed to take the $50K credit back after acknowledging it twice in email and verbally last week. At this point I sincerely hope Russ can put the Reins on him before he causes more trouble. We work in one of the most regulated industries in the country and for 20 years this is all I've done. So I ask everyone use common sense and talk.

Sincerely,

Rob McCoy

803-577-9779 cell

This email was sent by Robin Milestone at 12:08pm on 5/15

McCoy Motors-

RE: Recent GAP cancellation request by the dealership and follow up to meeting between McCoy Motors and AMAC.

AMAC has agreed to show a "Carryover Balance" on the Weekly statement in the amount of $50,000 while the two parties work towards a permanent agreement related to GAP cancellations on contracts purchased by AMAC and later repurchased by McCoy Motors. The last weekly statement as of 5/9/16 indicated McCoy Motors owed $108,676.93. It was stated in the meeting, this in not a credit from AMAC nor and admission of wrongdoing by either party. The credit will not be applied specifically to any outstanding amounts owed related to customer payments, floorplan or buybacks. In the event that any or all of the "carryover balance" were to be "credited" to McCoy Motors, AMAC would apply the credit first to buybacks processed related to Outstanding titles never received by AMAC.

AMAC and McCoy Motors have agreed to seek more information, follow through on outstanding GAP cancellations and continue to move forward with all other items owed per the Dealer Agreement including outstanding payments due, floorplan, buybacks to receive a title, etc.; McCoy Motors will keep current on other items owed.

Please acknowledge or inquire of any misunderstandings.

Thank you,

**Robin Milestone**
*Customer Service*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7163
f: 704-200-9221
e: rmilestone@myamac.com

**From:** Eric Cogswell <ecogswell@acemotoracceptance.com>
**Sent:** Wednesday, May 16, 2018 3:08 PM
**To:** Mccoy Motors; Robin Milestone
**Subject:** Notice of Demand and Default

Please read the attached Notice and contact Robin Milestone when you are finished.

**Eric Cogswell**
*Risk Manager*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7146
f: 704-625-7542
e: ecogswell@myamac.com

<5.15.ace email.docx>

<5.16.wekly.statement.pdf>

<revised 5.16.pdf>

<McCoy Motors Default and Demand 5-16-2018.pdf>

<MCCOY MOTORS LLC (8251)-2018-05-16-REV1.pdf>

<Mccoy Motors Accelerated Floorplan 5-16-2018.pdf>

<McCoy Outstanding Titles.pdf>

# Re: Notice of Demand and default

**Russ Algood <russ@acemotoracceptance.com>**

Thu 5/17/2018 1:15 PM

To Mccoy Motors <mccoymotors@live.com>;

Cc Eric Cogswell <ecogswell@acemotoracceptance.com>; Robin Milestone <rmilestone@acemotoracceptance.com>; davebadge @badgerlawnc.com <davebadger@badgerlawnc.com>; henderson@titlett.com <rhenderson@titlett.com>;

McCoy Workout Summary 4.27.18 (1).pdf; MCCOY MOTORS LLC (825) 2018-04-25 (1).pdf; MCCOY MOTORS LLC (825) 2018-05-02 (2).pdf; MCCOY MOTORS LLC (825) 2018-05-09.pdf; MCCOY MOTORS LLC (825) 2018-05-16-REV1.pdf; McCoy Email.pdf.

6 attachments (1 MB)

Rob,

Our agreement was that any GAP refund was in dispute and that you would pay any amounts owed over and above the disputed amount while we worked to resolve how much, if anything, could be credited related to a GAP refund. We honored what we told you. However you did not pay the balance still due. We attempted to discuss this with Misty McCoy but she refused to discuss anything other than the 1 title she wanted to pick up which we had already agreed to. I offered to discuss it with you today, which you have refused. In addition you have not paid any amounts related to customer payments collected by McCoy Motors on accounts owned by AMAC, amounts owed for buybacks, since May 1st, amounts owed on floor plan etc. Even with a reduction of what is due today of $50,000 related to the disputed GAP amount, McCoy Motors still owes $92,433.04.

Original Proposed Workout:
Dealer would cover all payments, floorplan transactions, missing title buybacks and buybacks AMAC possessed titles:
Friday, 4/27/18 Summary totaled $70,797.43
McCoy Motors did not provide payment until 5/01/18 and only paid $29,814.19, shorting workout plan by $40,983.24
McCoy Motors paid nothing additional until yesterday, May 16th, and only paid $3,974.48 to payoff 1 floor planned vehicle.

Attached Statements:
4/25/18- $74,025.37
5/02/18- $96,951.66 ($16,079.67 collected in customer payments on AMAC accounts by McCoy Motors)
5/09/18- $108,676.93 ($15,811.50 collected in customer payments on AMAC accounts by McCoy Motors)
5/16/18- $142,433.04 ($17,857.03 collected in customer payments on AMAC accounts by McCoy Motors)
**Total collected in customer payments on AMAC accounts by McCoy Motors between 4/26/18- 5/15/18= $49,748.20**

On Thu, May 17, 2018 at 10:35 AM, McCoy Motors <mccoymotors@live.com> wrote:
We've met before and you lied about the gap claim credit.

When will you honor your word? Which since you lied obviously means nothing

I already went to Ace and you lied and wasted both of our time because you're acting like a 2 year old. It is my intention to get a trustee appointment so I can at least deal with someone honest.

Unless you wanna bring me a certified check for the $50k then we can talk.

Those 2 emails and verbal agreement you sent I believe constitutes a contract, which you violated yesterday.

Rob

Sent from my iPhone

On May 17, 2018, at 10:24 AM, Russ Algood <russ@acremotorsacceptance.com> wrote:

Rob,

I will be happy to meet with you this afternoon. Let me know what time you will be at Ace and how money you will bring.

Look forward to seeing you later today

Sent from my iPhone

On May 16, 2018, at 7:01 PM, Mccoy Motors <mccoymotors@live.com> wrote:

Russ asked that last time I pointed out Robin's legal mishaps (after Robin told me I was wrong in an email, then I explained the situation to Russ & the employee was fired) that discussions should be between us. So since he wasn't copied in the last email I thought he should be made aware of what Robin is doing & likely to cause Russ & Ace even more headaches. Notice I finally got an email at least talking about the $50k for the GAP Waiver/insurance mess (which I think could not only be a civil problem but also a criminal problem). I got that email at 12:08 pm on 5/15/18.

Then today I received my weekly statement which also acknowledged the $50k for the Gap mess. My wife called shortly after that to ask if we could bring over a check to payoff a car (Robin decided to get an attitude). But obviously had to agree, within 20 minutes of that phone call I got a "revised weekly statement" taking away the $50k credit, shortly after that I got a notice of default.

I have said before if I am right on the Gap & 20 years experience tells me I am along with many other industry experts. It is likely criminal and civil. I estimate in the last 3 years Ace has not credited millions of dollars to consumers accounts. Which I believe under Federal UCC they had a fiduciary duty to do. If the Judge puts those Gap claims in front of Hamilton it will likely convert to a Chapter 7 and I doubt Hamilton will even come close to being paid in full. Which my guess is then they will look at the guarantors.

Maybe I've been to nice to this point, but I'm not sure why Robin seemed to take the $50K credit back after acknowledging it twice in email and verbally last week. At this point I sincerely hope Russ can put the Reins on him before he causes more trouble. We work in one of the most regulated industries in the country and for 20 years this is all I've done. So I ask everyone use common sense and talk

Sincerely,

Rob McCoy

803-577-9779 cell

This email was sent by Robin Milestone at 12:08pm on 5/15

McCoy Motors-

RE: Recent GAP cancellation request by the dealership and follow up to meeting between McCoy Motors and AMAC.

AMAC has agreed to show a "Carryover Balance" on the Weekly statement in the amount of $50,000 while the two parties work towards a permanent agreement related to GAP cancellations on contracts purchased by AMAC and later repurchased by McCoy Motors. The last weekly statement as of 5/9/18 indicated McCoy Motors owed $108,676.93. It was stated in the meeting, this in not a credit from AMAC nor and admission of wrongdoing by either party. The credit will not be applied specifically to any outstanding amounts owed related to customer payments, floorplan or buybacks. In the event that any or all of the "carryover balance" were to be "credited" to McCoy Motors, AMAC would apply the credit first to buybacks processed related to Outstanding titles never received by AMAC.

AMAC and McCoy Motors have agreed to seek more information, follow through on outstanding GAP cancellations and continue to move forward with all other items owed per the Dealer Agreement including outstanding payments due, floorplan, buybacks to receive a title,

etc.; McCoy Motors will keep current on other items owed.

Please acknowledge or inquire of any misunderstandings.

Thank you,

**Robin Milestone**
*Customer Service*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7163
f: 704-200-9221
e: milestone@myamac.com

**From:** Eric Cogswell <cogswell@acemotoracceptance.com>
**Sent:** Wednesday, May 16, 2018 3:08 PM

To: Mccoy Motors; Robin Milestone
Subject: Notice of Demand and Default

Please read the attached Notice and contact Robin Milestone when you are finished.

Eric Cogswell
Risk Manager
Ace Motor Acceptance Corporation

p: 704-882-7100 ext.7146
f:  704-625-7542
e:  ecogswell@myamac.com

<515.ace.email.docx>

<5.16.wkly.statement.pdf>

<revised 5.16.pdf>

<McCoy Motors Default and Demand 5-16-2018.pdf>

<MCCOY MOTORS LLC (825)-2018-05-16-REV1.pdf>

<Mccoy Motors Accelerated Floorplan 5-16-2018.pdf>

<McCoy Outstanding Titles.pdf>

Russ Algood
Chief Executive Officer
Ace Motor Acceptance Corporation

p: 704-882-7165
m: 704-904-5829
f:  704-882-5847
e:  russ@myamac.com

# Re: Notice of Demand and default

## Mccoy Motors

Thu 5/17/2018 2:40 PM

Sent Items

To: Russ Algood <russ@acmotoracceptance.com>;

Rob

At the time of our discussion the amount owed to you was $108 minus the $50k would of left $58k. I had NextGear setup to send you $48k for titles. So a $10k check dropped off would of cleared everything up. However, it took you a week to send the email confirming the Gap issue in writing. Then in less than 24 hours later you took it back. I'm not sure I can even trust you to release those titles to NextGear at this time, considering your behavior.

Mainly what you're owed money for is titles which you know, I can easily turn titles into cash, but you want to fight on everything.

So once you stop sending emails giving credits then taking them away, we can talk.

But right now I feel your in violation of the Gap agreement, which has been due to me a lot longer than your weekly statements. I'm done with this childish behavior.

When you give me credit for those Gap contracts as required by the contract & law, I'll be happy to continue this conversation. But no "temporary credit", I want it in writing and signed.

Rob

Sent from my iPhone

On May 17, 2018, at 1:15 PM, Russ Algood <russ@acmotoracceptance.com> wrote:

Rob,

Our agreement was that any GAP refund was in dispute and that you would pay any amounts owed over and above the disputed amount while we worked to resolve how much, if anything, could be credited related to a GAP refund. We honored what we told you. However you did not pay the balance still due. We attempted to discuss this with Misty McCoy but she refused to discuss anything other than the 1 title she wanted to pick up which we had already agreed to. I offered to discuss it with you today, which you have refused. In addition you have not paid any amounts related to customer payments collected by McCoy Motors on accounts owned by AMAC, amounts owed for buybacks, since May 1st, amounts owed on floor plan etc. Even with a reduction of what is due today of $50,000 related to the disputed GAP amount, McCoy Motors still owes $92,433.04.

**Original Proposed Workout:**
Dealer would cover all payments, floorplan transactions, missing title buybacks and buybacks AMAC possessed titles:
Friday, 4/27/18 Summary totaled $70,797.43
McCoy Motors did not provide payment until 5/01/18 and only paid $29,814.19, shorting workout plan by $40,983.24
McCoy Motors paid nothing additional until yesterday, May 16th, and only paid $3,974.48 to payoff 1 floor planned vehicle.

Attached Statements:
4/25/18- $74,025.37
5/02/18- $86,951.66 ($16,079.67 collected in customer payments on AMAC accounts by McCoy Motors)
5/09/18- $108,676.93 ($15,811.50 collected in customer payments on AMAC accounts by McCoy Motors)
5/16/18- $142,433.04 ($17,857.03 collected in customer payments on AMAC accounts by McCoy Motors)
**Total collected in customer payments on AMAC accounts by McCoy Motors between 4/26/18- 5/15/18= $49,748.20**

On Thu, May 17, 2018 at 10:35 AM, Mccoy Motors <mccoymotors@live.com> wrote:

We've met before and you lied about the gap claim credit.

When will you honor your word? Which since you lied obviously means nothing.

I already went to Ace and you lied and wasted both of our time because you're acting like a 2 year old. It is my intention to get a trustee appointment so I can at least deal with someone honest.

Unless you wanna bring me a certified check for the $50k then we can talk.

Those 2 emails and verbal agreement you sent I believe constitutes a contract, which you violated yesterday.

Rob

Sent from my iPhone

On May 17, 2018, at 10:24 AM, Russ Algood <russ@acemotoracceptance.com> wrote:

Rob,

I will be happy to meet with you this afternoon. Let me know what time you will be at Ace and how money you will bring.

Look forward to seeing you later today.

Sent from my iPhone

On May 16, 2018, at 7:01 PM, Mccoy Motors <mccoymotors@live.com> wrote:

Russ asked that last time I pointed out Robin's legal mishaps (after Robin told me I was wrong in an email, then I explained the situation to Russ & the employee was fired) that discussions should be between us. So since he wasn't copied in the last email I thought he should be made aware of what Robin is doing & likely to cause Russ & Ace even more headaches. Notice I finally got an email at least talking about the $50K for the GAP Waiver/Insurance mess (which I think could not only be a civil problem but also a criminal problem). I got that email at 12:08 pm on 5/15/18.

Then today I received my weekly statement which also acknowledged the $50k for the Gap mess. My wife called shortly after that to ask if we could bring over a check to payoff a car (Robin decided to get an attitude). But obviously had to agree, within 20 minutes of that phone call I got a "revised weekly statement" taking away the $50K credit, shortly after that I got a notice of default.

I have said before if I am right on the Gap & 20 years experience tells me I am along with many other industry experts. It is likely criminal and civil. I estimate in the last 3 years Ace has not credited millions of dollars to consumers accounts. Which I believe under Federal UCC they had a fiduciary duty to do. If the Judge puts those Gap claims in front of Hamilton it will likely convert to a Chapter 7 and I doubt Hamilton will even come close to being paid in full. Which my guess is then they will look at the guarantors.

Maybe I've been to nice to this point, but I'm not sure why Robin seemed to take the $50K credit back after acknowledging it twice in email and verbally last week. At this point I sincerely hope Russ can put the Reins on him before he causes more trouble. We work in one of the most regulated industries in the country and for 20 years this is all I've done. So I ask everyone use common sense and talk.

Sincerely,

Rob McCoy

803-577-9779 cell

This email was sent by Robin Milestone at 12:08pm on 5/15

McCoy Motors-

RE: Recent GAP cancellation request by the dealership and follow up to meeting between McCoy Motors and AMAC.

AMAC has agreed to show a "Carryover Balance" on the Weekly statement in the amount of $50,000 while the two parties work towards a permanent agreement related to GAP cancellations on contracts purchased by AMAC and later repurchased by McCoy Motors. The last weekly statement as of 5/9/18 indicated McCoy Motors owed $108,676.93. It was stated in the meeting, this in not a credit from AMAC nor and admission of wrongdoing by either party. The credit will not be applied specifically to any outstanding amounts owed related to customer payments, floorplan or buybacks. In the event that any or all of the "carryover balance" were to be "credited" to McCoy Motors, AMAC would apply the credit first to buybacks processed related to Outstanding titles never received by AMAC.

AMAC and McCoy Motors have agreed to seek more information, follow through on outstanding GAP cancellations and continue to move forward with all other items owed per the Dealer Agreement including outstanding payments due, floorplan, buybacks to receive a title, etc.; McCoy Motors will keep current on other items owed.

Please acknowledge or inquire of any misunderstandings.

Thank you,

**Robin Milestone**
*Customer Service*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7163
f: 704-200-9221
e: rmilestone@myamac.com

**From:** Eric Cogswell <ecogswell@acemotoracceptance.com>
**Sent:** Wednesday, May 16, 2018 3:08 PM
**To:** Mccoy Motors; Robin Milestone
**Subject:** Notice of Demand and Default

Please read the attached Notice and contact Robin Milestone when you are finished.

**Eric Cogswell**
*Risk Manager*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7146
f: 704-625-7542
e: ecogswell@myamac.com

<5.15.ace email.docx>

<5.16.weklystatement.pdf>

<revised.5.16.pdf>

<McCoy Motors Default and Demand 5-16-2018.pdf>

<MCCOY MOTORS LLC (825) 2018-05-16-REV1.pdf>

<Mccoy Motors Accelerated Floorplan 5-16-2018.pdf>

<McCoy Outstanding Titles.pdf>

**Russ Allgood**
*Chief Executive Officer*
**Ace Motor Acceptance Corporation**

p: 704-882-7165
m: 704-904-5829
f: 704-882-5847
e: russ@myamac.com

<McCoy Workout Summary 4.27.18 (1).pdf>

<MCCOY MOTORS LLC (8251)-2018-04 25 (1).pdf>

<MCCOY MOTORS LLC (8251)-2018-05-02 (2).pdf>

<MCCOY MOTORS LLC (8251)-2018-05-09.pdf>

<MCCOY MOTORS LLC (8251)-2018-05-16-REV1.pdf>

<McCoy Email.pdf>

# Re: Notice of Demand and default

Russ Algood <russ@acemotoracceptance.com>

Thu 5/17/2018 4:15 PM

To: Mccoy Motors <mccoymotors@live.com>; Jim Henderson <henderson@tintell.com>; davebadger <davebadger@badgerlawinc.com>;

Rob,

We believe that the vast majority if not all were McCoy's responsibility / right to cancel. In no instance did we get any request from the customer to cancel. In no case did we receive a request from McCoy Motors to cancel the GAP prior to their repurchase of the contract or any time until prior to last week. We would not cancel GAP protection without such a request as this could leave to customer who purchased the GAP without protection. Once the Dealer (McCoy) repurchased the Contract any right to cancel the GAP would be McCoy's and they would receive the GAP refund from the GAP company based on the % of the GAP cost earned. Upon your request last week for cancellations, AMAC has begun to research the cancellations and feels the disputed amount will not be close to $50,000. Included in the request was duplicate accounts, accounts which were sold to Spartan (which GAP would remain with the contract) and others that AMAC was not notified of a repo nor provided a repo letter from McCoy as requested last week. Additionally, the majority of the contracts repurchased were done so prior to allowing the customer 10 days to redeem the vehicle.

While AMAC would prefer to adhere strictly to the dealer agreement, we would make a concession and supply a guarantee of title to NextGear for buyback and floorplan titles if McCoy Motors agrees to cover any shortages in advance. This would be collective of the group of titles, not individually in the event NextGear is willing for advance an amount over a buyback for example, on a singular unit.

---------- Forwarded message ----------
From: Mccoy Motors <mccoymotors@live.com>
Date: Thu, May 17, 2018 at 2:40 PM
Subject: Re: Notice of Demand and default
To: Russ Algood <russ@acemotoracceptance.com>

At the time of our discussion the amount owed to you was $108 minus the $50k would of left $58k. I had NextGear setup to send you $49k for titles. So a $10k check dropped off would of cleared everything up. However, it took you a week to send the email confirming the Gap issue in writing. Then in less than 24 hours later you took it back. I'm not sure I can even trust you to release those titles to NextGear at this time, considering your behavior.

Mainly what you're owed money for is titles which you know, I can easily turn titles into cash, but you want to fight on everything.

So once you stop sending emails giving credits then taking them away, we can talk.

But right now I feel your in violation of the Gap agreement, which has been due to me a lot longer than your weekly statements. I'm done with this childish behavior.

When you give me credit for those Gap contracts as required by the contract & law, I'll be happy to continue this conversation. But no "temporary credit." I want it in writing and signed.

Rob

Sent from my iPhone

On May 17, 2018, at 1:15 PM, Russ Algood <russ@acemotoracceptance.com> wrote:

Rob,

Our agreement was that any GAP refund was in dispute and that you would pay any amounts owed over and above the disputed amount while we worked to resolve how much, if anything, could be credited related to a GAP refund. We honored what we told you. However you did not pay the balance still due. We attempted to discuss this with Misty McCoy but she refused to discuss anything other than the 1 title she wanted to pick up which we had already agreed to. I offered to discuss it with you today, which you have refused. In addition you have not paid any amounts related to customer payments collected by McCoy Motors on accounts owned by AMAC, amounts owed for buybacks since May 1st, amounts owed on floor plan etc. Even with a reduction of what is due today of $50,000 related to the disputed GAP amount, McCoy Motors still owes $92,433.04.

Original Proposed Workout:
Dealer would cover all payments, floorplan transactions, missing title buybacks and buybacks AMAC possessed titles:
Friday, 4/27/18 Summary totaled $70,797.43
McCoy Motors did not provide payment until 5/01/18 and only paid $29,814.19, shorting workout plan by $40,983.24
McCoy Motors paid nothing additional until yesterday, May 16th, and only paid $3,974.48 to payoff 1 floor planned vehicle.

Attached Statements:
4/25/18- $74,025.37
5/02/18- $86,951.66 ($16,079.67 collected in customer payments on AMAC accounts by McCoy Motors)
5/09/18- $108,876.93 ($15,811.50 collected in customer payments on AMAC accounts by McCoy Motors)
5/16/18- $142,433.04 ($17,857.03 collected in customer payments on AMAC accounts by McCoy Motors)
**Total collected in customer payments on AMAC accounts by McCoy Motors between 4/26/18- 5/15/18= $49,748.20**

On Thu, May 17, 2018 at 10:35 AM, McCoy Motor's <mccoymotors@live.com> wrote:
We've met before and you lied about the gap claim credit.

When will you honor your word? Which since you lied obviously means nothing.

I already went to Ace and you lied and wasted both of our time because you're acting like a 2 year old. It is my intention to get a trustee appointment so I can at least deal with someone honest.

Unless you wanna bring me a certified check for the $50k then we can talk.

Those 2 emails and verbal agreement you sent I believe constitutes a contract, which you violated yesterday.

Rob

Sent from my iPhone

On May 17, 2018, at 10:24 AM, Russ Asgood <russ@aceignoranceacceptance.com> wrote:

Rob,

I will be happy to meet with you this afternoon. Let me know what time you will be at Ace and how money you will bring.

Look forward to seeing you later today

Sent from my iPhone

On May 16, 2018, at 7:01 PM, Mccoy Motors <mccoymotors@live.com> wrote:

Russ asked that last time. I pointed out Robin's legal mishaps (after Robin told me I was wrong in an email, then I explained the situation to Russ & the employee was fired) that discussions should be between us. So since she wasn't copied in the last email I thought he should be made aware of what Robin is doing & likely to cause Russ & Ace even more headaches. Notice I finally got an email at least talking about the $50K for the GAP Waiver/Insurance mess (which I think could not only be a civil problem but also a criminal problem). I got that email at 12:08 pm on 5/15/18.

Then today I received my weekly statement which also acknowledged the $50K for the Gap mess. My wife called shortly after that to ask if we could bring over a check to payoff a car (Robin decided to get an attitude). But obviously had to agree, within 20 minutes of that phone call I got a "revised weekly statement" taking away the $50k credit, shortly after that I got a notice of default.

I have said before if I am right on the Gap & 20 years experience tells me I am along with many other industry experts. It is likely criminal and civil. I estimate in the last 3 years Ace has not credited millions of dollars to consumers accounts. Which I believe under Federal UCC they had a fiduciary duty to do. If the Judge puts those Gap claims in front of Hamilton it will likely convert to a Chapter 7 and I doubt Hamilton will even come close to being paid in full. Which my guess is then they will look at the guarantors.

Maybe I've been to nice to this point, but I'm not sure why Robin seemed to take the $50K credit back after acknowledging it twice in email and verbally last week. At this point I sincerely hope Russ can put the Reins on him before he causes more trouble. We work in one of the most regulated industries in the country and for 20 years this is all I've done. So I ask everyone use common sense and talk.

Sincerely,

Rob McCoy

803-577-9779 cell

This email was sent by Robin Milestone at 12:08pm on 5/15

McCoy Motors-

RE: Recent GAP cancellation request by the dealership and follow up to meeting between McCoy Motors and AMAC.

AMAC has agreed to show a "Carryover Balance" on the Weekly statement in the amount of $50,000 while the two parties work towards a permanent agreement related to GAP cancellations on contracts purchased by AMAC and later repurchased by McCoy Motors.  The last weekly statement as of 5/9/18 indicated McCoy Motors owed $108,676.83.  It was stated in the meeting, this in not a credit from AMAC nor and admission of wrongdoing by either party.  The credit will not be applied specifically to any outstanding amounts owed related to customer payments, floorplan or buybacks.  In the event that any or all of the "carryover balance" were to be "credited" to McCoy Motors, AMAC would apply the credit first to buybacks processed related to Outstanding titles never received by AMAC.

AMAC and McCoy Motors have agreed to seek more information, follow through on outstanding GAP cancellations and continue to move forward with all other items owed per the Dealer Agreement including outstanding payments due, floorplan, buybacks to receive a title, etc.; McCoy Motors will keep current on other items owed.

Please acknowledge or inquire of any misunderstandings.

Thank you,

**Robin Milestone**
*Customer Service*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7163
f: 704-200-9221
e: rmilestone@myamac.com

**From:** Eric Cogswell <ecogswell@acemotoracceptance.com>
**Sent:** Wednesday, May 16, 2018 3:08 PM
**To:** Mccoy Motors; Robin Milestone
**Subject:** Notice of Demand and Default

Please read the attached Notice and contact Robin Milestone when you are finished.

**Eric Cogswell**
*Risk Manager*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7146
f: 704-625-7542
e: ecogswell@myamac.com

<5.15.ace.email.docx>
<5.16.weklystatement.pdf>
<revised 5.16.pdf>
<McCoy Motors Default and Demand 5-16-2018.pdf>
<MCCOY MOTORS LLC (8251)-2018-05-16-REV1.pdf>
<Mccoy Motors Accelerated Floorplan 5-16-2018.pdf>
<McCoy Outstanding Titles.pdf>

**Russ Algood**
*Chief Executive Officer*
**Ace Motor Acceptance Corporation**

p: 704-882-7165
m: 704-904-5829
f: 704-882-5847
e: russ@myamac.com

<McCoy Workout Summary 4.27.18 (1).pdf>
<MCCOY MOTORS LLC (8251)-2018-04-25 (1).pdf>
<MCCOY MOTORS LLC (8251)-2018-05-02 (2).pdf>
<MCCOY MOTORS LLC (8251)-2018-05-09.pdf>
<MCCOY MOTORS LLC (8251)-2018-05-09.pdf>
<MCCOY MOTORS LLC (8251)-2018-05-16-REV1.pdf>
<McCoy Email.pdf>

**Russ Algood**
*Chief Executive Officer*
**Ace Motor Acceptance Corporation**

p: 704-882-7165
m: 704-904-5829
f: 704-882-5847
e: russ@myamac.com

Re: Notice of Demand and default

Mccoy Motors

Thu 5/17/2018 6:19 PM

Sent Items

To: Russ Allgood <russ@acemotoracceptance.com>; Jim Henderson <jhenderson@net1.com>; dave.badger <dave.badger@badgerawnc.com>;

The following email was sent out on 5/30/17 by Ace:

Also on page 2 under Your Right to cancel; In the event of cancellation, the financial institution/lender will be named as payee on all refunds and sole payee on a repossession refund.

I've provided you with an excel spreadsheet based on pro-rata, all you've provided me with is generalities. Page 2 of the contract says Termination of Addendum, line 3) expiration of any redemption period following the repossession or surrender of the Collateral. (in SC the redemption period by law requires full payoff within 10 days, which would also mean the customer no longer needs Gap.)

To all,
As of June 5th AMAC will no longer be accepting Ownerguard GAP due to a substantial rate increase in combination with them changing the LTV restriction. Ownerguard will continue to honor their commitment on any GAP you have already sold.

CARco GAP will be AMAC's new provider. Please find the CARco GAP forms attached to this email. We have already sent these forms out to several of the DMS companies so please check with your provider to see if they have it programmed already. If it is not programmed feel free to send them the form as you can print these directly out of your DMS. Please remember to change the name in your DMS system to CARco so it prints out properly on the retail installment contract and keep the price at the $399. Please call your sales representative for any additional questions you may have.

CARco
CARco GAPCARco GAP2

You can't have it both ways, on one hand you say the deals belong to Ace and in this email you call is AMAC's Gap Provider (even though you charged the dealer 100% of the premium).

Either it's you contract or it's not & either it's your Gap or it's not.

Currently you made me pay 100% of the premium and gave me $0 credit for the pro-rata amount due back. That's just plain theft in my opinion.

But again, I'd be more than happy to let a trustee decide.

Rob

**From:** Russ Algood <russ@acemotoracceptance.com>
**Sent:** Thursday, May 17, 2018 4:15:35 PM
**To:** Mccoy Motors; Jim Henderson; davebadger
**Subject:** Re: Notice of Demand and default

Rob,

We believe that the vast majority if not all were McCoy's responsibility / right to cancel. In no instance did we get any request from the customer to cancel. In no case did we receive a request from McCoy Motors to cancel the GAP prior to their repurchase of the contract or any time until prior to last week. We would not cancel GAP protection without such a request; as this could leave to customer who purchased the GAP without protection. Once the Dealer (McCoy) repurchased the Contract any right to cancel the GAP would be McCoy's and they would receive the GAP refund from the GAP company based on the % of the GAP cost earned. Upon your request last week for cancellations, AMAC has begun to research the cancellations and feels the disputed amount will not be close to $50,000. Included in the request was duplicate accounts, accounts which were sold to Spartan (which GAP would remain with the contract) and others that AMAC was not notified of a repo nor provided a repo letter from McCoy as requested last week. Additionally the majority of the contracts repurchased were done so prior to allowing the customer 10 days to redeem the vehicle.

While AMAC would prefer to adhere strictly to the dealer agreement. we would make a concession and supply a guarantee of title to NextGear for buyback and floorplan titles if McCoy Motors agrees to cover any shortages in advance. This would be the collective of the group of titles, not individually in the event NextGear is willing for advance an amount over a buyback, for example, on a singular unit.

-------- Forwarded message ---------
From: Mccoy Motors <mccoymotors@live.com>
Date: Thu, May 17, 2018 at 2:40 PM
Subject: Re: Notice of Demand and default
To: Russ Algood <russ@acemotoracceptance.com>

At the time of our discussion the amount owed to you was $10B minus the $50k would of left $58k, I had NextGear setup to send you $48k for titles. So a $10K check dropped off would of cleared everything up. However, it took you a week to send the email confirming the Gap issue in writing. Then in less than 24 hours later you took it back, I'm not sure I can even trust you to release those titles to NextGear at this time, considering your behavior.

Mainly what you're owed money for is titles which you know, I can easily turn titles into cash, but you want to fight on everything

So once you stop sending emails giving credits then taking them away, we can talk.

But right now I feel your in violation of the Gap agreement, which has been due to me a lot longer than your weekly statements. I'm done with this childish behavior.

When you give me credit for those Gap contracts as required by the contract & law, I'll be happy to continue this conversation. But no "temporary credit". I want it in writing and signed.

Rob

Sent from my iPhone

On May 17, 2018, at 1:15 PM, Russ Algood <russ@acemotoracceptance.com> wrote:

Rob,

Our agreement was that any GAP refund was in dispute and that you would pay any amounts owed over and above the disputed amount while we worked to resolve how much, if anything, could be credited related to a GAP refund. We honored what we told you. However you did not pay the balance still due. We attempted to discuss this with Misty McCoy but she refused to discuss anything other than the 1 title she wanted to pick up which we had already agreed to. I offered to discuss it with you today, which you have refused. In addition you have not paid any amounts related to customer payments collected by McCoy Motors on accounts owned by AMAC, amounts owed for buybacks, since May 1st, amounts owed on floor plan etc. Even with a reduction of what is due today of $50,000 related to the disputed GAP amount, McCoy Motors still owes $92,433.04.

Original Proposed Workout:
Dealer would cover all payments, floorplan transactions, missing title buybacks and buybacks AMAC possessed titles:
Friday, 4/27/18 Summary totaled $70,797.43
McCoy Motors did not provide payment until 5/01/18 and only paid $29,814.19, shorting workout plan by $40,983.24
McCoy Motors paid nothing additional until yesterday, May 16th, and only paid $3,974.48 to payoff 1 floor planned vehicle.

Attached Statements:
4/25/18- $74,025.37
5/02/18- $66,951.66 ($16,079.67 collected in customer payments on AMAC accounts by McCoy Motors)
5/09/18- $108,876.93 ($15,811.50 collected in customer payments on AMAC accounts by McCoy Motors)
5/16/18- $142,433.04 ($17,857.03 collected in customer payments on AMAC accounts by McCoy Motors)
Total collected in customer payments on AMAC accounts by McCoy Motors between 4/26/18- 5/16/18= $49,748.20

On Thu, May 17, 2018 at 10:35 AM, McCoy Motors <mccoymotors@live.com> wrote:
We've met before and you lied about the gap claim credit.

When will you honor your word? Which since you lied obviously means nothing.

I already went to Ace and you lied and wasted both of our time because you're acting like a 2 year old. It is my intention to get a trustee appointment so I can at least deal with someone honest.

Unless you wanna bring me a certified check for the $50k then we can talk.

Those 2 emails and verbal agreement you sent I believe constitutes a contract, which you violated yesterday.

Rob

Sent from my iPhone

On May 17, 2018, at 10:24 AM, Russ Algood < russ@acemotoracceptance.com> wrote:

Rob,

I will be happy to meet with you this afternoon. Let me know what time you will be at Ace and how money you will bring.

Look forward to seeing you later today

Sent from my iPhone

On May 16, 2018, at 7:01 PM, Mccoy Motors <mccoymotors@live.com> wrote:

Russ asked that last time I pointed out Robin's legal mishaps (after Robin told me I was wrong in an email, then I explained the situation to Russ & the employee was fired) that discussions should be between us. So since he wasn't copied in the last email I thought he should be made aware of what Robin is doing & likely to cause Russ & Ace even more headaches. Notice I finally got an email at least talking about the $50K for the GAP Waiver/Insurance mess (which I think could not only be a civil problem but also a criminal problem). I got that email at 12:08 pm on 5/15/18.

Then today I received my weekly statement which also acknowledged the $50k for the Gap mess. My wife called shortly after that to ask if we could bring over a check to payoff a car (Robin decided to get an attitude). But obviously had to agree, within 20 minutes of that phone call I got a "revised weekly statement" taking away the $50k credit, shortly after that I got a notice of default.

I have said before if I am right on the Gap & 20 years experience tells me I am along with many other industry experts. It is likely criminal and civil. I estimate in the last 3 years Ace has not credited millions of dollars to consumers accounts. Which I believe under Federal UCC they had a fiduciary duty to do. If the Judge puts those Gap claims in front of Hamilton it will likely convert to a Chapter 7 and I doubt Hamilton will even come close to being paid in full. Which my guess is then they will look at the guarantors.

Maybe I've been to nice to this point, but I'm not sure why Robin seemed to take the $50K credit back after acknowledging it twice in email and verbally last week. At this point I sincerely hope Russ can put the Reins on him before he causes more trouble. We work in one of the most regulated industries in the country and for 20 years this is all I've done. So I ask everyone use common sense and talk.

Sincerely,
Rob McCoy
803-577-9779 cell

This email was sent by Robin Milestone at 12:08pm on 5/15

McCoy Motors-

RE: Recent GAP cancellation request by the dealership and follow up to meeting between McCoy Motors and AMAC.

AMAC has agreed to show a "Carryover Balance" on the Weekly statement in the amount of $50,000 while the two parties work towards a permanent agreement related to GAP cancellations on contracts purchased by AMAC and later repurchased by McCoy Motors. The last weekly statement as of 5/9/18 indicated McCoy Motors owed $108,676.93. It was stated in the meeting, this in not a credit from AMAC nor and admission of wrongdoing by either party. The credit will not be applied specifically to any outstanding amounts owed related to customer payments, floorplan or buybacks. In the event that any or all of the "carryover balance" were to be "credited" to McCoy Motors, AMAC would apply the credit first to buybacks processed related to Outstanding titles never received by AMAC.

AMAC and McCoy Motors have agreed to seek more information, follow through on outstanding GAP cancellations and continue to move forward with all other items owed per the Dealer Agreement including outstanding payments due, floorplan, buybacks to receive a title, etc.; McCoy Motors will keep current on other items owed.

Please acknowledge or inquire of any misunderstandings.

Thank you,

**Robin Milestone**
*Customer Service*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext 7163

f: 704-200-9221
e: rmilestone@myamac.com

**From:** Eric Cogswell <ecogswell@acemotoracceptance.com>
**Sent:** Wednesday, May 16, 2018 3:08 PM
**To:** Mccoy Motors; Robin Milestone
**Subject:** Notice of Demand and Default

Please read the attached Notice and contact Robin Milestone when you are finished.

**Eric Cogswell**
*Risk Manager*
**Ace Motor Acceptance Corporation**

p: 704-882-7100 ext.7146
f: 704-625-7542
e: ecogswell@myamac.com

<5.15 ace.email.docx>

<5.16.weekly.statement.pdf>

<revised 5.16.pdf>

<McCoy Motors Default and Demand 5-16-2018.pdf>

<MCCOY MOTORS LLC (8251)-2018-05-16-REV1.pdf>

<Mccoy Motors Accelerated Floorplan 5-16-2018.pdf>

<McCoy Outstanding Titles.pdf>

**Russ Algood**
*Chief Executive Officer*



Ace Motor Acceptance Corporation

p: 704-882-7165
m: 704-904-5829
f: 704-882-5847
e: russ@myamac.com

<McCoy Workout Summary 4 27 18 (1).pdf>

<MCCOY MOTORS LLC (8251)-2018-04-25 (1).pdf>

<MCCOY MOTORS LLC (8251)-2018-05-02 (2).pdf>

<MCCOY MOTORS LLC (8251)-2018-05-09.pdf>

<MCCOY MOTORS LLC (8251)-2018-05-16-REV1.pdf>

<McCoy Email.pdf>

**Russ Algood**
*Chief Executive Officer*
**Ace Motor Acceptance Corporation**

p: 704-882-7165
m: 704-904-5829
f: 704-882-5847
e: russ@myamac.com





EXHIBIT "F"

# BHPH IN A BOX™ PROGRAM

AMAC'S BHPH in a Box™ Program is great for both qualified new and seasoned BHPH Dealers looking to increase cash flow and retain control of their business

## Basic Outline/Benefits:
- ✓ Access to capital from $250k-$3MM
- ✓ Advance Rates: 40-60% of Principal Amount Financed
- ✓ Funding for both Receivables and Inventory
- ✓ Collections: You collect or we collect
- ✓ Approve your own loans
- ✓ Great for point of sale and existing loans
- ✓ Cash flow from every payment
- ✓ Don't need to leverage entire portfolio
- ✓ Reports Package to help run your business
- ✓ Insurance tracking free of charge
- ✓ No lien on your property
- ✓ Qualify for large tax advantage using AMAC as your Related Finance Company***

*** See a qualified CPA to determine if you would qualify

   704-882-7100 EXT 7509   **Ace Motor Acceptance Corporation**
111 Cupped Oak Drive, STE F
Matthews, NC 28104   ACEMOTORACCEPTANCE.COM   















520328 (MODIFIED)



**STATE OF SOUTH CAROLINA**
## CERTIFICATE OF TITLE
### OF A VEHICLE

VEHICLE ID NUMBER
2C3KA55616N281889

YEAR MAKE
2006 CHRY

MODEL
500

NEW/USED
USED

BODY STYLE
SD

DATE ISSUED
05-28-2017

ODOMETER

WEIGHT
3651

TITLE NUMBER
7709603275351

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)

CUSTOMER NUMBER:

FIRST LIENHOLDER
ANAL
111 CUPPED OAK DR STE F
MATTHEWS NC 281046823
DATE OF LIEN
03/17/20

1ST LIEN RELEASED  4-23-18
BY _____ (DATE)
AUTHORIZED AGENT

SECOND LIENHOLDER
MCCOY MOTORS LLC
5606 HIGHWAY 51 N
FORT MILL SC 297150351
DATE OF LIEN
03/17/2017

2ND LIEN RELEASED  4-23-18
BY _____ (DATE)
AUTHORIZED AGENT

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO
EXECUTIVE DIRECTOR

HENRY McMASTER
GOVERNOR

049195838

EXHIBIT
"H"





EXHIBIT "I"



IN A BOX

Ace Motor Acceptance Corp. (AMAC) specializes in providing capital to BHPH dealers. We understand what it takes to grow your business. Our BHPH in a Box™ program not only provides funding for contracts it also has a floorplan line of credit to purchase inventory. BHPH in a Box™ was designed to create positive cash flow and allow you to retain control of the sales process. This allows you to keep your customer relationship after the sale to increase repeat and referral business. Instead of selling off your portfolio or doing an expensive payment stream, AMAC has a better alternative that allows you to retain the equity in your business. We approve the dealer not your retail customer.

## How it works:



### Sell the car

- ☑ You approve the customer
- ☑ You structure the loan
- ☑ You choose the deals you want to send to AMAC
- ☑ Send Document and Stips to AMAC for Funding



### Upfront Cashflow

- ☑ AMAC advance designed to get you out of the inventory cost upfront
- ☑ Cash for both seasoned and point of sale loans



### Backend Cashflow

- ☑ Cashflow from every payment
- ☑ You collect or we collect-either way customer can make payments at the lot



### Additional Services Included

- ☑ Floorplan Line of Credit
- ☑ Reports Package to help run your business
- ☑ Insurance Tracking with Verifcato

**Acemotoracceptance.com**
**704-882-7100 ext. 7509**

f  🐦  g⁺   CALL US: **704-882-7100 (tel:704-882-7100)**

(https://www.facebook.com/acemotoracceptance/13124435)



ACE MOTOR
ACCEPTANCE CORPORATION

## (https://acemotoracceptance.com/)

HOME (HTTPS://ACEMOTORACCEPTANCE.COM)  ▸  VISITING DEALERS

Make a
Payment (https://acemotoracceptance.com/make-a-payment/)

VISITING DEALERS

## The BHPH in a Box™ Program

Our BHPH in a Box™ program not only provides funding for contracts, it also has floorplan lines of credit to purchase inventory. BHPH in a Box™ was designed to create positive cash flow and allow you to retain control of the sales process. This allows you to keep your customer relationship after the sale to increase repeat and referral business, instead of selling off your portfolio or doing an expensive payment stream. AMAC has a better alternative that allows you to retain the equity in your business. We approve the dealer not your retail customer.

AMAC: BHPH in a Box™





Ace Motor Acceptance Corp. (AMAC) specializes
in providing capital to BHPH dealers.
**We understand what it takes to grow your business.**

### HOW IT WORKS:






**Sell the car**    **Upfront Cashflow**    **Backend Cashflow**    **Additional Services Included**





# How does our BHPH in a Box™ Program compare to other financing options?



# To find out more information about our BHPH in a Box™ program, contact us below.

Please call 704-882-7100 ext.7509 - Or fill out the form below to get a call back.

Please complete the entire form before submitting

**DEALERSHIP NAME**

Enter your Dealership Name

**FIRST NAME**

Enter your first name

**LAST NAME**

Enter your last name

**EMAIL**

Type your email address

**CELL PHONE**

Type your cell phone number

**BUSINESS PHONE**

Type your business phone number

**ADDRESS**

Street address here

**CITY**

City

**STATE**

State

**ZIP CODE**

Zip Code

**HOW DID YOU HEAR ABOUT US?**

Select One...

**OTHER...**

We would love to know how you found us!

**SUBJECT**

Enter a subject for your message

**MESSAGE**

Write your message

**Send message**



(http://www.alabamaiada.org/)



(http://www.theciada.com/)



(http://www.fiada.com/)



(https://giada.org/)



(https://msiada.org/)



(http://www.niada.com/)



(http://www.bhphinfo.com/)



(http://www.tniada.com/)



(http://www.txiada.org/)



*Symbol of Quality*
(http://www.viada.org/)



LIKE OUR PAGE

FOLLOW US

HOME (https://acemotoracceptance.com)

CONSUMER F.A.Q.
(https://acemotoracceptance.com/consumer-faq/)

MAKE A PAYMENT
(https://acemotoracceptance.com/make-a-payment/)

CONTACT US
(https://acemotoracceptance.com/contact-us/)

ABOUT US (https://acemotoracceptance.com/about-us/)

VISITING DEALERS
(https://acemotoracceptance.com/visiting-dealers/)

NEWS (https://acemotoracceptance.com/news/)

EXISTING DEALERS
(https://acemotoracceptance.com/existing-dealers/)

PRIVACY POLICY
(https://acemotoracceptance.com/privacy-policy/)
DEALER F.A.Q.
(https://acemotoracceptance.com/dealer-f-a-q/)

GET IN TOUCH

**T (704) 882-7100**
Email: info@myamac.com (mailto:info@myamac.com?Subject=Amac Site)

Ace Motor Acceptance Corporation
111 Cupped Oak Dr #F, Matthews, NC 28104, US

Open in Google Maps
(https://www.google.com/maps/place/Ace+Motor+Acceptance+Corp/@35.0954927,-80.6689065,15z/data=!
4m5!3m4!1s0x0:0x8bb5e5af1b5ec46!8m2!3d35.0954927!4d-80.6689065)

GET SOCIAL       g+
(https://plus.google.com/102184131538413124435)

(https://acemotoracceptance.com)
© 2016 All rights reserved. Ace Motor Acceptance Corporation

## Search Results



EXHIBIT

"J"

**Records Found:** 36 **Search Type:** Starting   **Search Criteria:** Amac
**Search Time:** 7/8/2018 12:17 PM   Search Again

| Entity Name | | | |
| --- | --- | --- | --- |
| Sos Id | Date Formed | Status | Type |
| Amac, Inc. | | | |
| 0498141 | 6/24/1999 | Admin. Dissolved | Business Corporation |
| Amaca, Inc. | | | |
| 0003333 | 9/5/1979 | Auto Dissolve | Business Corporation |
| AM Academy | | | |
| 1084141 | 2/13/2009 | Current - Active | Non - Profit Corporation |
| AMACAR Cayman, Inc. | | | |
| 0649005 | 10/11/2002 | Current - Active | Business Corporation |
| AMACAR CPO, Inc. | | | |
| 0578813 | 1/26/2001 | Withdrawn | Business Corporation |
| AMACAR EF, Inc. | | | |
| 0587686 | 4/11/2001 | Current - Active | Business Corporation |
| AMACAR EQUITY INVESTMENTS, INC. | | | |
| 0520897 | 2/18/2000 | Withdrawn | Business Corporation |
| Amacar Exchange Corp. | | | |
| 0613194 | 12/13/2001 | Withdrawn | Business Corporation |
| AMACAR GP, Inc. | | | |
| 0548031 | 5/9/2000 | Current - Active | Business Corporation |
| AMACAR GROUP, L.L.C. | | | |
| 0369141 | 5/5/1995 | Current - Active | Limited Liability Company |
| Amacar Holding Corp. | | | |
| 0613221 | 12/13/2001 | Withdrawn | Business Corporation |
| AMACAR INVESTMENTS, LLC | | | |
| 0380313 | 10/18/1995 | Current - Active | Limited Liability Company |
| AMACAR Northwest, Inc. | | | |
| 0677363 | 6/2/2003 | Withdrawn | Business Corporation |

| Entity Name | | | |
|---|---|---|---|
| Sos Id | Date Formed | Status | Type |
| Belladonna`s, Inc. | | | |
| **PREV LEGAL NAME(S)** A. M. a. Carolina Corporation | | | |
| 0022613 | 12/27/1978 | Multiple | Business Corporation |
| AMACAR PACIFIC CORP. | | | |
| 0470913 | 9/17/1998 | Current - Active | Business Corporation |
| AMA Carrier Inc. | | | |
| **PREV LEGAL NAME(S)** AMA Hauling & Trucking Inc. | | | |
| 1640127 | 11/28/2017 | Current - Active | Business Corporation |
| A. MacArthur LLC | | | |
| 1696157 | 4/26/2018 | Current - Active | Limited Liability Company |
| AMAC Broker Services, Inc. | | | |
| 1517310 | 5/16/2016 | Current - Active | Business Corporation |
| A Maccherone LLC | | | |
| 1465419 | 8/24/2015 | Admin. Dissolved | Limited Liability Company |
| AMACCO, L.L.C. | | | |
| 0498142 | 6/24/1999 | Admin. Dissolved | Limited Liability Company |
| A & M ACCOUNTING, INC. | | | |
| 0706950 | 1/15/2004 | Multiple | Business Corporation |
| AMACG LLC | | | |
| 0826211 | 2/3/2006 | Dissolved | Limited Liability Company |
| AMACHER BROS. CONSTRUCTION CO. | | | |
| 0436645 | 9/4/1997 | Revoked | Business Corporation |
| Amac I Hunters Point, LLC | | | |
| 1315390 | 4/30/2013 | Withdrawn | Limited Liability Company |
| AMAC INSURANCE SERVICES, INC. | | | |
| 0376292 | 8/24/1995 | Multiple | Business Corporation |
| AMACK Construction, LLC | | | |
| 1498444 | 2/17/2016 | Current - Active | Limited Liability Company |
| A MACK REALTY, INC. | | | |

| Entity Name | | | |
|---|---|---|---|
| Sos Id | Date Formed | Status | Type |
| 0343191 | 4/21/1994 | Multiple | Business Corporation |
| AMA Coin Shop LLC | | | |
| 1311719 | 4/9/2013 | Admin. Dissolved | Limited Liability Company |
| Ama Controls, Inc. | | | |
| 0171212 | 7/25/1985 | Admin. Dissolved | Business Corporation |
| Amacon Underground Replacements Inc | | | |
| 1437691 | 4/6/2015 | Current - Active | Business Corporation |
| AMA Cox & Associates Inc. | | | |
| 0863914 | 8/29/2006 | Current - Active | Business Corporation |
| AMAC Properties, LLC | | | |
| 0717648 | 3/23/2004 | Admin. Dissolved | Limited Liability Company |
| AMAC Property's Inc.<br><br>**PREV LEGAL NAME (S)**<br>AMAC Property's LLC | | | |
| 0707157 | 8/26/2005 | Current - Active | Business Corporation |
| AMAC Property's Inc.<br><br>**PREV LEGAL NAME (S)**<br>AMAC Property's LLC | | | |
| C707157 | 1/16/2004 | Converted | Limited Liability Company |
| A.M. Acquisition Corp. | | | |
| 0228260 | 5/13/1988 | Merged | Business Corporation |
| AMACS, INC. | | | |
| 0377825 | 9/14/1995 | Multiple | Business Corporation |
| A-mac Services LLC | | | |
| 1417109 | 12/16/2014 | Admin. Dissolved | Limited Liability Company |

**Assumed Business Name**
*Search Results*

**Records Found:** 5 **Search Criteria:** Amac
**Search Time:** 7/8/2018 09:40 AM   Search Again


Camacho's Renewal & Construction     SosID: 1694761

CHICAMACOMICO RENTALS     SosID: 1689845

GLAM-O-RAMA CLEANERS & LAUNDRYMAT     SosID: 1656812

Signarama Charlotte     SosID: 1655662

Tacos Mama Chava     SosID: 1706290