## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Case No. 18-30426 |
| ACE MOTOR ACCEPTANCE | ) | Chapter 11 |
| CORPORATION, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ACE MOTOR ACCEPTANCE | ) | |
| CORPORATION, | ) | |
| | ) | Adversary Proceeding No. 18-3036 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MCCOY MOTORS, LLC, MCCOY | ) | |
| MOTORS, LLC d/b/a RIDE FAST; | ) | |
| ROBERT MCCOY, JR., MISTY MCCOY, | ) | |
| FLASH AUTOS, LLC and ROBERT | ) | |
| MCCOY III | ) | |
| | ) | |
| Defendants. | | |

## SECOND AMENDED COMPLAINT

ACE MOTOR ACCEPTANCE CORPORATION (the "Debtor"), the Plaintiff and Debtor herein, pursuant to Bankruptcy Rules 7015 and 7020 and Rules 15 and 20 of the Federal Rules of Civil Procedure, files this Second Amendment to Verified Complaint.

## NATURE OF RELIEF SOUGHT

This is an action for damages arising out of the breach of contract by McCoy Motors, LLC ("McCoy Motors"), Robert McCoy, Jr. ("McCoy") and Misty McCoy (collectively the "Original Defendants"). Since the filing of the Complaint, in violation of orders of this Court and federal criminal statutes, the Original Defendants together with McCoy's son Robert McCoy III ("McCoy III") and Flash Autos LLC ("Flash") have conspired to transfer all of the assets and operations of McCoy Motors to Flash. Flash is nominally owned by McCoy III and controlled by McCoy. As the Original Defendants have "utterly failed to comply"[1] with this Court's prior Orders, this Second Amended Complaint seeks to add McCoy III and Flash as additional defendants, and it further seeks the appointment of a receiver for McCoy Motors and Flash as well as other injunctive relief and damages not pled in the Original Complaint.

---

[1] Paragraph 17, October 19, 2018 Order Finding Certain Defendants in Civil Contempt and Continuing Pretrial Conference.

## ADDITIONAL PARTIES

335.    Defendant Flash is a limited liability company organized under the laws of the State of South Carolina, which is doing business in the State of South Carolina.

336.    Defendant McCoy III is a citizen and resident of Charlotte, North Carolina, the Manager and Registered Agent of Flash, and the son of McCoy.

## JURISDICTION AND VENUE

337.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and pursuant to the Order entered by the Judges of the United States District Court for the Western District of North Carolina on July 30, 1984 (the Referral Order), which Order was entered in accordance with the Bankruptcy Amendments and Federal Judgeship Act of 1984.

338.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

339.    Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409.

340.    The statutory predicates for relief are 11 U.S.C. §§ 105, 362, 365, 541, 542, and 1115 of Title 11, 18 U.S.C. Sections 152 and 157; Rules 7001, 7064, 7065, 9013, 9014 and 9020 of the Rules of Bankruptcy Procedure; North Carolina General Statute Sections 14-114 and 1-440.3; and Rules 9013-1 of the Local Rules of Practice for the United States Bankruptcy Court for the Western District of North Carolina.

341.    The predicates for the appointment of a Receiver in this adversary proceeding include federal common law, 28 U.S.C. Sections 754 and 959[2] , and  N.C.G.S. Sections 1-502[3], 39-

---

[2] 28 USC 959 provides:

    (a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

    (b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

[3]G.S. 1-502(1); *see, e.g., York v. Cole*, 251 N.C. 344, 344–45 (1959) (receivership appropriate where plaintiff's affidavit showed apparent right to property and likely loss of rents and profits if property remained in defendant's hands); *People's National Bank v. Waggoner*, 185 N.C. 297 (1923) (receivership appropriate to preserve money obtained from plaintiff bank by fraudulent means);

23.7[4] and 75-1.1[5]

## ADDITIONAL FACTUAL ALLEGATIONS

342.    This adversary proceeding was commenced with the filing of a Verified Complaint on June 18, 2018 (the "Complaint") [Doc. 1].

343.    On July 10, 2018, the Debtor filed its First Amendment to Verified Complaint (the "First Amended Complaint") [Doc. 11].

344.    The Debtor incorporates by reference all of the Factual Allegations contained in Paragraphs 9 through 325 of the Complaint and Paragraphs 327-334 of the First Amended Complaint.

*A    Prior Court Orders and Proceedings*

345.    On June 25, 2018, the Court entered its Order Concerning Interim Servicing of Accounts of Vehicle Buyers; and Order Setting Hearing on Preliminary Injunction (the "Interim Order").

346.    On July 30, 2018, because the Defendants were not complying with the terms of the Interim Order, the Debtor filed a Motion for Order Finding Defendants in Contempt of June 25, 2018 Order Concerning Interim Servicing of Accounts of Vehicle Buyers (the "First Contempt Motion [Doc. 25].

347.    On August 1, 2018, the Court entered an Order Granting Motions for Preliminary Injunction and Other Emergency Relief (the "Preliminary Injunction") [Doc. 26] which found in

---

*State ex rel. Eure v. Lawrence*, 93 N.C. App. 446, 447–48 (1989) (receiver appointed to preserve defendant's assets pending outcome of action by State for securities violations); *Blue Ridge Pediatric & Adolescent Medicine, Inc.*, 2012 NCBC 51 (unpub'd) (denying motion to dismiss plaintiff's request for receiver to collect rents and preserve defendants' assets after plaintiff alleged a right to a share of rents); *see generally Sinclair v. Moore Central Railroad Co.*, 228 N.C. 389, 395 (1947)(noting that receiverships may be used "to preserve, pendent lite, specific property which is the subject of litigation."). Note that receiverships of this type are not permanent receiverships, but are designed only to last for the duration of the litigation or whatever shorter time the court deems necessary. *Couch v. ADC Realty Corp.*, 48 N.C. App. 108, 112 (1980).

[4]Uniform Fraudulent Transfers Act. G.S. 39-23.7. In connection with a creditor's action for relief against a debtor's transaction under this Act, the court may provide a number of provisional remedies, including "appointment of a receiver to take charge of the asset transferred or of other property of the transferee."

[5]Chapter 75 violations. G.S. 1-502(5). A receiver may be appointed in cases in which restitution is sought for violations of G.S. 75-1.1 (unfair or deceptive trade practices).The procedure set forth in G.S. 1-501 to 1-505 and, where applicable, 1-507.1 to 1-507.11, apply to these receiverships.

part that:

> *Apart from the payment defaults, the Defendants have evidenced a disregard for the parties' agreements and undertakings. Their previous actions suggest that they intend to do whatever necessary to prevail in this dispute with Ace. Robert McCoy terminated his prior lawyer when Robert McCoy decided that attorney was not acting as aggressively as he deemed appropriate. Robert McCoy filed a proof of claim under oath against Ace representing that McCoy LLC was owed a $1.4 million secured debt by Ace, although the evidence at hearing shows no colorable basis for such a large debt, and absolutely no basis for a secured claim against the Debtor's estate. Further, when Ace declared a default, and exercised its UCC self-help repossession remedies, Robert McCoy attempted to have Ace's officers arrested on criminal charges and caused McCoy LLC to sue Ace's repossession agency in state court. He also published potentially defamatory remarks about Ace employees on the internet. When Ace filed this action, Robert McCoy responded with a bar grievance against Ace's counsel—because in his mind, counsel violated the Fair Debt Collection Practices Act. Now after agreeing to an Interim Order designed to maintain the status quo until this hearing could be held, Robert McCoy and the other Defendants have failed to comply with its terms. The evidence presented suggests that since default was declared in March, the Defendants have continued to collect the assigned accounts, and have failed (as required by the Interim Order) to account for these monies. It is clear that absent an injunction, these monies and Ace's other collateral will be dissipated long before any trial can be held.*

348.    The Preliminary Injunction ordered the Original Defendants to, among other things,

> *immediately...*
>
> (i) *stop collecting any payments from Ace's customers/Vehicle Buyers with regard to the motors vehicles and Contract that constitute collateral under the Agreements...;*
>
> (iii) *turn over any cash or other monies to Ace, including but not limited to payment received from Ace's customers or third parties that are in any way subject to the terms of the Contracts or Agreements;*
>
> (iv) *turn over any vehicles to Ace (including those that have been repossessed) that constitute collateral under the Agreements or related to the Contracts (including all motor vehicles in Defendants' inventory), as well as all titles, accounting records, payment records of Vehicle Buyers, or other documentation associated with each vehicle; ...*
>
> (vii) *turn over any refunds for GAP protection premiums paid in connection with the Contracts, which have been received or which are received in the future;...*

*(ix) cease transferring, dissipating, concealing, moving, secreting or otherwise disposing of any assets of Ace or the Defendants, or assets which are collateral of Ace, including the sale of any motor vehicle in Defendants' inventory or possession, or the transfer of any funds or cash by any of the Defendants, pending further Order of the Court; ...*

*(xii) disclose the location of all of Ace's property or collateral of Ace, including all assets of the Defendants; ....*

349.    On August 31, 2018, because the Original Defendants were also not complying with the Preliminary Injunction, the Debtor filed a Supplemental Motion for Order Finding Defendants in Contempt of June 25, 2018 Order Concerning Interim Servicing of Accounts of Vehicle Buyers; Motion for Order Finding Defendants in Contempt of August 1, 2018 Order Granting Motions for Preliminary Injunction and Other Emergency Relief (the "Second Contempt Motion" [Doc. 32].

350.    On October 19, 2018, the Court entered its Order Finding Certain Defendants in Civil Contempt and Continuing Pretrial Conference (the "Contempt Order") [Doc. 47].

B.    *The Successor in Interest Relationship Between McCoy Motors and Flash*

351.    On August 14, 2018, less than two weeks after the entry of Preliminary Injunction, McCoy and McCoy III caused Flash to be incorporated.

352.    McCoy III is the Registered Agent for and the nominal owner of Flash.

353.    At a hearing in this proceeding on September 26, 2018, the Court heard testimony from McCoy and Misty McCoy.

354.    Misty McCoy falsely testified about numerous matters, including testimony that she knew nothing about Flash and that she didn't have anything to do with setting up Flash's alleged business.

355.    McCoy falsely testified about numerous matters, including testimony that the Defendant McCoy Motors had ceased business operations, he knew nothing about Flash and that he didn't have anything to do with setting up Flash's alleged business.

356.    The Contempt Order finds in part (in Paragraph 17) that:

*Having heard all of the evidence presented in these several hearings, and despite their active participation in this proceeding and consistent representations of a willingness to comply with these two orders, it is clear that Defendants have utterly failed to comply. In fact, they have actively attempted to thwart these orders. Defendants McCoy and McCoy Motors (which McCoy owns and controls), have made collateral attacks upon Ace and its employees, and through subterfuge, and likely perjured testimony, have attempted to secret assets and records of McCoy Motors in an attempt to show the business to be defunct, even while intending to resume its business under a new entity.*

357.    The Contempt Order further finds in part (in Paragraph 28) that:

*...according to the Defendants, McCoy's son is in the process of opening a new business, 'Flash,' in one of the locations that McCoy Motors 'previously' occupied. There is in fact a 'Flash' sign in the window. McCoy and Misty McCoy allege that their son received no help from McCoy in starting 'Flash' or acquiring McCoy Motor's prior premises (that still holds approximately 100 vehicles). However, their son is a 20-year old college student, who the two McCoys say has no source of income and no experience running a business. Furthermore, McCoy and Misty McCoy claim to know absolutely nothing about 'Flash,' other than it will be a used car dealership, not unlike McCoy Motors. McCoy and Misty McCoy claim ignorance of their son's business activities, despite the fact that their son continues to live with them approximately five days a week. Their accounts are not credible. It appears McCoy is preparing to operate McCoy Motors through a successor business.*

358.    In the Contempt Order the Court "...concludes that McCoy and McCoy LLC are in civil contempt for their failure to comply with the specific and definite provisions of the June 25 Order and the August 1 Order."

359.    At the November 6, 2018 hearing concerning whether or not Defendants McCoy and McCoy Motors had purged their contempt, McCoy again denied knowing anything about Flash. McCoy, on his own behalf and for McCoy Motors, falsely testified that the Defendants had complied with the court orders. Misty McCoy falsely represented (although not under oath) that she had complied with the court orders.

360.    The Defendants herein have brazenly and repeatedly committed perjury during this proceeding.

361.    Misty McCoy was and is much more involved with McCoy Motors and Flash than she has led the Court to believe. Misty McCoy in fact worked at McCoy Motors nearly every day and she was very much involved with McCoy Motors. Misty McCoy was in charge of the office, signing checks, collecting money, and generally managing the business. Misty McCoy would also buy cars for McCoy Motors inventory.

362.    Misty McCoy's role with Flash is much the same as it was with McCoy Motors.

363.    In August, 2018, McCoy told Austin Robertson ("Robertson"), a former employee of both McCoy Motors and Flash, that McCoy Motors was going to change its name. McCoy also instructed Robertson to move all of the cars in inventory into a fenced area at the Fort Mill location.

364.    McCoy instructed Robertson to block access to the Fort Mill lot so that McCoy Motors inventory could not get repossessed by creditors. The inventory is Ace's collateral and property of the bankruptcy estate.

365.    In or around early September, 2018, McCoy instructed Robertson to paint the

outside of the Fort Mill location red.

366.    Misty McCoy gave Robertson a Lowe's credit card and cash so that he could buy the paint and other materials that McCoy said were needed in connection with changing the business name. Misty McCoy went with Robertson to Lowes to buy the red paint.

367.    In or around early September, 2018, Robertson painted the outside of the McCoy Motors building red, and he hung a new "Flash Autos LLC" sign on the front of the building, all at McCoy's instruction.

368.    McCoy confided to Robertson that, after the name change to "Flash", "everything is going to be the same" with the business. Changing the business name from McCoy Motors to Flash was completely McCoy's idea, as part of a scheme to escape McCoy Motors' creditors.

369.    After McCoy Motors began operating as Flash, Robertson was not asked to fill out any paperwork (such as an I-9 or a W-4) that a new employer would normally require of a new employee.

370.    While Robertson was employed by McCoy Motors, McCoy Motors would directly deposit Robertson's  wages into his personal bank account. After McCoy Motors began operating as Flash, McCoy gave Robertson checks with Robertson as payee, had Robertson sign the checks, then paid Robertson in cash.

371.    McCoy uses a new phone number for Flash, but the fax number is the same as the one that was used by McCoy Motors. All of the furniture and computers and everything inside the Fort Mill building is the same as it was before the name change. Flash is using all the same property that McCoy Motors was using.

372.    The furniture, fixtures and equipment being used by Flash is collateral for Ace's debt and is property of the bankruptcy estate.

373.    McCoy and Misty McCoy continue to be at the business nearly every day. McCoy sits at the same desk in the same office, and he still runs the business and makes decisions for Flash. McCoy buys cars for Flash's inventory as he did for McCoy Motors, and McCoy has reviewed proposed customer deals before Flash sells an automobile.

374.    After McCoy Motors began operating as Flash, Robertson heard McCoy yell at McCoy III about proposed customer "deals"and that McCoy III would not be allowed to make a proposed deal with a customer.

375.    McCoy is telling McCoy Motors customers that Flash is "taking over" payments that are supposed to be made to McCoy Motors, that they need to make their car payments in person at Flash, and that they have to bring cash or a money order. McCoy is still taking cash and money order payments from McCoy Motors customers so there's no paper trail for the customer's payments.

376.    The payments from Vehicle Buyers are Ace's collateral and property of the bankruptcy estate.

377.    At McCoy's instruction, Robertson has repossessed McCoy Motors automobiles which are now for sale on the Flash lot.

378.    The repossessed automobiles are Ace's collateral and property of the bankruptcy estate.

379.    McCoy has removed parts from automobiles (such as rims, tires and electronics) which are a part of Ace's collateral and property of the bankruptcy estate, Flash is in possession of the parts for the purpose of installing them on automobiles to be sold, as needed.

380.    The automobiles which McCoy is dismantling are Ace's collateral and property of the bankruptcy estate.

381.    In August, 2018, after McCoy Motors began operating as Flash, McCoy started buying a lot of things...all within about 30 days...including the BMW he's driving, a GMC, an all black Chevy Tahoe, and an all black Chevy Camaro that Misty McCoy drives. McCoy also bought a four door Toyota 4-Runner, two motorcycles, and a $70,000.00 boat. McCoy told Robertson that "I'm trying to use up McCoy's money".

382.    The assets that McCoy has acquired with the proceeds of Ace's collateral are also Ace's collateral and property of the bankruptcy estate.

383.    In August, 2018, McCoy paid Robertson cash to do a lot of work on his personal residence in Charlotte. Robertson painted the inside of the house and the exterior trim, and installed a gate and lattice work for the porch.

384.    McCoy keeps a significant amount of cash at his house, and large portion of which is, upon information and belief, the proceeds of collateral which belongs to the Debtor.

385.    The funds paid by McCoy for improvements to his personal residence are Debtor's collateral and property of the bankruptcy estate.

386.    Flash is using a tow truck that's owned by McCoy Motors. McCoy just paid the property taxes that were owed on it.

387.    The tow truck is Debtor's collateral and property of the bankruptcy estate.

388.    McCoy asked Robertson if Robertson would  park and hide 50 cars at Robertson's house in Lancaster, so that the automobiles could not be repossessed by creditors of McCoy Motors. Robertson declined to hide the cars for McCoy. McCoy has hidden 20 or 30 automobiles on property located off of Flint Hill Road, which is within a few miles of the McCoy Motors/Flash business location.

389.    The automobiles being hidden by McCoy are the Debtor's collateral and property of the bankruptcy estate.

390.    This shall serve as written notice to all Defendants of the Debtor's intent to offer the recordings of telephone calls between the Debtor's employees and Robertson as evidence in any

hearing of the issues set forth herein, and that the same are available for inspection. Pursuant to Rule 807(b) of the Federal Rules of Evidence, Robertson's address is 315 Doster Road, Lancaster, S.C., 29720.

C.     *McCoy as the Alter Ego of McCoy Motors and Flash*

391.     McCoy caused most if not all of the assets of McCoy Motors to be transferred to Flash.

392.     At the time of the transfers, McCoy Motors was insolvent.

393.     McCoy has rendered McCoy Motors incapable of paying the amounts it owes the Debtor by misappropriating substantially all of the revenues and assets of McCoy Motors to Flash in violation of his duties to the company and for purposes of defrauding creditors.

394.     McCoy is the alter ego of McCoy Motors and Flash. Alternatively, McCoy III is acting as nominee for McCoy in the operation of Flash.

395.     Flash is the de facto successor of McCoy Motors and is merely a continuation of McCoy Motors business.

396.     Flash was established by McCoy, Misty McCoy and McCoy III for the fraudulent purpose of escaping McCoy Motors' debts and liabilities to creditors.

D.     *Violation of Criminal Statues by McCoy, Misty McCoy and McCoy III*

397.     McCoy, Misty McCoy and McCoy III are knowingly and fraudulently concealing from the Debtor property of the bankruptcy estate, in violation of 18 U.S.C. §152.

398.     Flash is part of a scheme devised by  McCoy, Misty McCoy and McCoy III the defraud the Debtor's bankruptcy estate in violation of 18 U.S.C. §157.

399.     McCoy, Misty McCoy and McCoy III are engaged in a conspiracy to defraud the Debtor and the Debtor's bankruptcy estate.

E.     *Pleadings and documents filed in this proceeding by McCoy in violation of Bankruptcy Rule 9011*

400.     McCoy had filed the following pleadings and documents in this proceeding:

a.     Secured Proof of claim in the amount of $1,431,867.32 executed by McCoy on May 10, 2018 on behalf of McCoy Motors and filed with the Court on May 24, 2018;

b.     Pro Se Response to First Amendment [Doc. 15];

c.     Answer to Complaint Filed by Robert McCoy Jr. [Doc. 46];

d.     Defendants Response to Order Finding Certain Defendants in Civil

Contempt & Response for Denial of Plaintiff Attorney Fees. Evidence that Defendants have Complied with June 25, 2018 and August 1, 2018 Orders. [Doc. 57,58,59,75, 76, 77, 89, 90 and 91]];

       e.      Defense Exhibit 1 - Report emailed 8/1/2018 to Robing [sic] Milestone on Debtor/McCoy Customers Payments with addresses filed by Robert McCoy Jr. [Doc. 60]. To the extent Exhibit purports to be list of all payments made by Vehicle Buyers to McCoy Motors, it is false;

       f.      Defense Exhibit 3 - Report emailed 6/27/2018 to Robing [sic] Milestone on Debtor/McCoy Customers Payments with addresses filed by Robert McCoy Jr. [Doc 61]. To the extent Exhibit purports to be list of all payments made by Vehicle Buyers to McCoy Motors, it is false;

       g.      Defense Exhibit 4 filed by Robert McCoy Jr. [Doc. 62];

       h.      Defense Exhibit 2 - Report emailed 8/7/2018 to Robin Milestone on Debtor/McCoy Customers Payments with addresses filed by Robert McCoy Jr. [Doc. 78];

       i.      Defense Exhibit 6 filed by Robert McCoy Jr. [Doc. 80] To the extent Exhibit purports to be list of all payments made by Vehicle Buyers to McCoy Motors, it is false;

       401.      The foregoing documents and pleading filed by McCoy in this proceeding contain false and fraudulent representations and claims in violation of 18 U.S.C. §§ 152, 157 and 3571 and Bankruptcy Rule 9011.

       402.      The filing of the foregoing documents and pleadings by McCoy in this proceeding, as well as his testimony under oath, is part of a scheme devised by McCoy, Misty McCoy and McCoy III the defraud the Debtor's bankruptcy estate in violation of 11 U.S.C. § 362 and 18 U.S.C. §§ 152 and 157.

## FIRST CLAIM FOR RELIEF
*(Emergency Motion for Appointment of a Receiver as to McCoy Motors and Flash)*

       403.      The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

       404.      In granting injunctive relief against the Original Defendants, the Court has determined that: i) the Debtor is a secured creditor of the Original Defendants (Preliminary Injunction, paragraph 41) having a lien on all of the assets of McCoy Motors; ii) there is a substantial likelihood of success on the merits of Debtor's claims (Preliminary Injunction, paragraph 73); iii) the Debtor and the bankruptcy estate will be irreparably harmed if the Court fails to issue an injunction (Preliminary Injunction, paragraph 74); iv) the injury to the Debtor and the bankruptcy estate outweighs whatever damage the proposed injunction may cause the Defendants (Preliminary Injunction, paragraph 76; and v) if issued, the injunction would not be adverse to the public interest (Preliminary Injunction, paragraph 77).

       405.      The Agreements between the Debtor and the Original Defendants provide that the Agreements are enforceable in accordance with North Carolina law.

406.     North Carolina courts recognize that receivership is a "harsh" remedy and "should be utilized only with 'attendant caution and circumspection.'" *Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 577 (1981), *modified in part on other grounds*, 309 N.C. 596 (1983). Appointment of a receiver is within the sound discretion of the trial court, *Barnes v. Kochhar*, 178 N.C. App. 489, 500 (2006), and a receivership is appropriate "only where there is no other safe or expedient remedy." *Murphy v. Murphy*, 261 N.C. 95, 101 (1964).

407.     A receiver may be appointed to liquidate a corporation when the plaintiff establishes "fraud or imminent danger of the property being lost, injured, diminished in value, destroyed, squandered, wasted, or removed from the jurisdiction... [or] fraud or gross misconduct in the management of the corporation, where there is incapacity or neglect on the part of those operating it, [and] where there is evidence of diversion of corporate funds." *Lowder*, at 577.

408.     The facts of this case show that McCoy, Misty McCoy and McCoy III have engaged in fraud and gross misconduct in the management of McCoy Motors and Flash. They planned to breach their fiduciary duties to Plaintiff for their personal benefit. Such conduct constitutes constructive fraud. *Keener Lumber Co.*, 149 N.C. App. at 30.

409.     The facts of this case also show that the Defendants' assets will be wasted if a receiver is not appointed to promptly liquidate those assets. The Defendants have incurred sizeable debts for years. All indications are that the Defendants will continue to incur debts that they cannot pay. Such additional debts reduce the value and the pro rata distribution to the Defendants' creditors. This will destroy the value of the assets for the Defendants' creditors and constitutes waste. *See Royall v. Carr Lumber Co.*, 248 N.C. 735, 737 (1958).

410.     Further, the value of the Defendants' assets have a finite shelf life. Federal courts have long recognized that the appointment of a receiver may be necessary to promptly liquidate assets when the assets are "liable to deteriorate in price and value." COLLIER ON BANKRUPTCY ¶ 2001.02[2] (*quoting Hill v. Douglass*, 78 F.2d 851, 854 (9th Cir. 1935)). If the Defendants' assets are not promptly liquidated, they will continue to diminish in value.

411.     The appointment of a receiver is also appropriate when the officers and directors of a corporation refuse to honor their fiduciary duties "and [their] duties to prudently manage the business of" the company they serve. *Lowder* at 574. McCoy and McCoy III have shown that they are not able to honor their fiduciary duties. Their actions show that their goal is to benefit themselves personally, at the expense of creditors. Moreover, McCoy is refusing to comply with orders of the Court which require that the Debtor be given access to all of its collateral.

412.     McCoy must "accept the full mantle of responsibilities that attend to the post" as a liquidator for the benefit of creditors. *See Piedmont Venture Partners, L.P. v. Deloitte & Touche, L.P.P.*, 2007 NCBC 6 ¶ 63 (J. Diaz 2007). McCoy has refused to do so, and because he is refusing to prudently wind up the McCoy Motors for the benefit of creditors, a receiver should be appointed to wind up the business affairs. *Id.* at ¶ 68.

413.     Leaving McCoy or McCoy III in control of the corporate defendants would subject the Debtor to irreparable injury caused by fraud, criminal actions, gross mismanagement, waste, and breaches of fiduciary duty. Moreover, greater injury would likely be inflicted upon the Debtor by the denial of the appointment of a receiver than will be inflicted upon Defendants by the granting of

such relief.

414.    There is clear evidence that Flash is the successor to McCoy Motors, and that Flash and Flash's nominal owner McCoy III are engaged in a conspiracy to defraud the Debtor as well as other creditors.

415.    The Affidavit of Robin Milestone, attached hereto as Exhibit A, as well as the sworn testimony of Austin Robertson at the December 18, 2018 hearing herein, support the facts set forth herein.

416.    Although § 105(b) provides that "a court may not appoint a receiver in a case under this title," the precise language of that provision and case law make clear that it applies only to the administrative bankruptcy "case," not to an adversary proceeding. A "case" is when is commenced by the filing of a petition, *e.g.*, § 301, whereas a "proceeding" is commenced by a summons and complaint, Bankruptcy Rules 7001 & 7004. The provision was added simply because the Code "has ample provision for the appointment of a trustee when needed." S.Rep. No. 989, 95th Cong.2d Sess. 29 (1978). Consequently § 105(b) "does not prohibit the appointment of a receiver in a related adversary proceeding if otherwise authorized and appropriate." 2 Lawrence P. King, Collier on Bankruptcy ¶ 105.06, at 105-84.7 (15th Ed.2004). *Accord, Craig v. McCarty Ranch Trust (In re Cassidy Land and Cattle Co.*), 836 F.2d 1130, 1133 (8th Cir.1988); *In re Memorial Estates, Inc.*, 797 F.2d 516, 520 (7th Cir.1986)("The power cut off by section 105(b) of the Bankruptcy Code is the power to appoint a receiver for the bankrupt estate, that is, a receiver in lieu of a trustee."). *See In re Ehmann*, 319 B.R. 200, 206 n. 10 (Bankr. D. Ariz. 2005).

417.    In *In re Teknek, LLC*, 343 B.R. 850, 867 (Bankr. N.D. Ill. 2006), the Court held that

...the Bankruptcy Code provides that 'a court may not appoint a receiver in a case under this title.' 11 U.S.C. § 105(b) (emphasis added). However, in certain civil proceedings within a bankruptcy case wherein the defendant is not the debtor or the trustee, Federal Rule of Bankruptcy Procedure 7064 and 11 U.S.C. § 105(a) permit a bankruptcy court to award a plaintiff whatever prejudgment remedies are available in the relevant state. *See* 10 Collier on Bankruptcy 7064.01, at 7064-1 to -3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005); *see also In re Memorial. Estates*, 797 F.2d 516, 519-20 (7th Cir.1986); *cf. In re Schlein*, 178 B.R. 82, (Bankr.E.D.Pa.1995) (using only § 105(a)).

In re Teknek, LLC, 343 B.R. 850, 867 (Bankr. N.D. Ill. 2006)

418.    A bankruptcy court "... may rely on federal equitable law outside the bankruptcy scheme when those equitable principles are applicable to the general conduct of receivers. [citation omitted]. Conversely, although federal district courts presiding over federal equity receiverships...may look for guidance from bankruptcy law, they are not restricted by the dictates of bankruptcy law. *Quilling v. Trade Partners, Inc.*, 2007 WL 107669 (W.D. Mich. 2007) (*citing SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 332 (5 Cir. 2001)) [footnotes omitted].

419.    A Receivership of McCoy Motors and Flash is necessary because the Debtor's loan is in default and its collateral is being hidden, disassembled, and sold, all of which represents fraudulent and criminal conduct on the part of the Defendants. There is imminent danger of loss to,

and diminution in value of, the Debtor's collateral which is property of the bankruptcy estate.

420.    Wherefore, the Debtor requests that an Order be entered providing that a receiver be appointed for McCoy Motors and Flash (collectively "the Parties") as follows:

a.    Pursuant to 28 USC §754 the Receiver be vested with complete jurisdiction and control of property with the right to take possession thereof, to take immediate exclusive possession and control of the Parties' assets wherever they may be found and to immediately take whatever steps as reasonably necessary to secure, maintain and protect the assets with full power and authority as Receiver to take the same into his possession and to incur expenses as may be necessary or advisable in connection therewith; to enter into any of the Defendant's premises or where any of the Parties' assets may be, and search for, take possession of, remove, keep and store any of the assets until the same will be sold or otherwise disposed of;

b.    Pursuant to  28 U.S.C. §754 the Receiver shall, within ten days after the entry of his order of appointment, file copies of this complaint and such order of appointment in the district court for each district in which property is located;

c.    That the Receiver have full control and exercise managerial rights over the collection of accounts and accounts receivable, termination of employees, the determination of lien rights, orderly liquidation of all assets wherever located at a public or private sale, review of books and records, determine causes of action, prepare and file tax returns;

d.    That the Receiver may request, if there are liens securing debt exceeding the value of a particular asset, that the asset be sold free and clear of such liens and that the proceeds be escrowed;

e.    To sue and defend in his own name as Receiver in this Court or any Court in this state;

f.    To exercise all of the powers, through or in place of the members or managing members, to the extent necessary to manage the affairs in the best interests of the members and creditors;

g.    To operate, manage, maintain, lease, sell, convey or transfer the Parties' assets in whole or in part as may be in the best interest of the receivership estate provided that such sale, conveyance or transfer if any is approved and confirmed by this court after notice to all parties;

h.    To issue subpoenas as may be deemed necessary by the Receiver;

i.    To control the attorney-client privilege for the Parties;

j.    To act immediately to secure and collect the profits, income, revenue, fees, proceeds and all other funds generated by the Parties assets;

k.    To take immediate possession of all original records, books, bank and other financial accounts, leases, deposits, ledgers, and other materials relating to the operation of the Parties' business and the ownership of its assets;

l.      To prepare immediately a list of all of the Parties' lien and general creditors and promptly notify the creditors of his appointment as Receiver;

m.      To employ, discharge, and fix the compensation and conditions for such agents, contractors and employees as are necessary as are necessary to assist in managing, securing and liquidating the Parties' assets and performing his duties as Receiver;

n.      To enforce any existing contracts and to take such action with respect to such contracts as may be necessary or appropriate to assure the orderly and efficient management of the Parties' assets. However, nothing herein requires the Receiver to assume any leases or contracts of the Parties or to perform the obligations arising thereunder, and nothing herein requires the Receiver to pay existing obligations of the Parties (except as otherwise provided herein);

o.      To negotiate, extend, modify, re-negotiate, ratify or enter into such contracts or other agreements affecting or relating to any part or all of the Parties' assets;

p.      To establish and maintain bank accounts in the name of the Receiver for the deposit of monies and funds collected and received in connection with the Receiver's administration of the Parties' assets, and to write checks and make withdrawals on such accounts;

q.      To execute and prepare all documents and perform all acts in the name of the Parties which are necessary or incidental to preserving, protecting, managing and controlling the Parties' assets or which are necessary or incidental to carrying out the powers granted herein and shall institute any and all necessary ancillary proceedings in the Court or the State of North Carolina which are necessary to preserve and protect the Parties' assets;

r.      To keep the Parties' assets insured to the extent necessary or appropriate including, but not by way of limitations, fire and extended coverage and general liability insurance;

s.      To hire and retain and otherwise obtain the advice and assistance of such legal counsel and accounting and other professionals as may be necessary to the proper discharge of the Receiver's duties, with all reasonable expenses incurred in connection therewith deemed to be expenses of the receivership without the permission of the court (and to pay  such professionals from the rents, revenues, and proceeds of the Parties' assets without further application to or order of the court);

t.      To defend all actions at law or in equity which may be brought against it or against the Parties;

u.      To exercise all of the Parties' rights and remedies with respect to proceedings brought to collect any amounts due, including but not limited to, Defendants' Counterclaims in this Action;

v.      To notify any parties obligated on any of the accounts of the Parties to make payment directly to the Receiver of any amounts due or to become due thereunder;

w.      To surrender, release or exchange all or any part of any accounts of the Parties, or compromise or extend or renew for any period (whether or not longer than the original

period) any indebtedness thereunder;

x.      To have continuing access to mail or other correspondence to and from the Parties concerning the Eastern Parties' assets;

y.      To perform ordinary and necessary repairs and maintenance on any of the Parties' assets;

z.      To account to this court for all sums received and expenditures made;

aa.      With respect to any operation or activity that is now conducted with the Parties' assets or is customarily conducted with similar property, and that may lawfully be conducted only under governmental license or permit, to continue such operation or activity under the license or permits issued to the entity subject to compliance with the terms thereof;

bb.      To pay prior obligations incurred by the Parties, its agents and employees, or any other person or entity charged with the responsibility of maintaining and operating the Parties' assets, if such obligations are deemed by the Receiver to be necessary or advisable for the liquidation of the Parties;

cc.      To notify any and all insurers under insurance policies affecting the Parties' assets of the pendency of these proceedings and that, subject to the prior rights of any party holding a lien encumbering the Parties' assets, any proceeds paid under any insurance policies shall be paid to the Receiver until such time as the said insurance carriers are advised to the contrary by this court or until they receive evidence of the dismissal of this action;

dd.      To bring all actions at law or in equity, or, as the case may be, such other proceedings as may be necessary and proper to administer and liquidate the Parties' assets;

ee.      That the Receiver shall have all the powers and authority usually held by receivers appointed by state courts in North Carolina and reasonably necessary to liquidate the assets of the Parties and to accomplish the purposes of the Receivership, including but not limited to the powers set forth in the order and N.C.G.S. § 1-501 et. seq., which may be exercised without further order of the court;

ff.      Generally to do such other lawful acts as the Receiver reasonably deems necessary to the liquidation of the Parties' assets, and to perform such other functions and duties as may from time to time be required and authorized by this court, by the laws of the State of North Carolina or by the laws of the United States of America;

gg.      No Defendants shall, directly or indirectly, cause or allow any expenditure or disbursement of any money, proceeds or assets of the Parties pending further order of the court;

hh.      All financial and business records for the Parties shall be gathered, preserved and made available to the Receiver immediately. Any records received at any time in the future are to be immediately delivered to the Receiver;

ii.      The location of all assets of the Defendants and the Parties shall be provided

to the Receiver immediately. Any assets of the Defendants and the Parties received at any time in the future are to be immediately delivered to the Receiver;

    jj. No party, directly or indirectly, shall take any action designed to, or negligently causing or allowing the waste, disposal, theft or disposition of any asset of the Parties;

    kk. The Receiver shall be deemed to be, and shall have the duties and powers of, a trustee in an assignment for benefit of creditors in G.S. § 23-3 to recover property conveyed fraudulently or in preference and the recording of this Order shall constitute and be deemed the registration of a deed of assignment as provided therein and pursuant to G.S. § 23-1;

    ll. The Receiver shall file with this court within forty-five (45) days from the date hereof, or such other time as the court may order, an itemized and detailed list of all property owned by the Parties and identifying so far as it can determine, all debts and obligations of the Parties or encumbrances related to the property in its possession;

    mm. The Receiver shall be paid in accordance with G.S. § 1-507.9, after approval by the court;

    nn. The Receiver may serve without bond or, alternatively, the Receiver shall be entitled to pay all premiums for the bond required of the Receiver, premiums on any insurance policies required to protect the Defendant or its assets, any taxes, and all other expenses and charges incurred in the ordinary course of liquidation, or by authorization of the court, which he considers to be reasonable and appropriate in the exercise of his duties during the receivership, to the extent revenues and proceeds from the liquidation of the Defendant's assets are available to do so. The cost of discharging any other obligations or liabilities with respect to the Defendant, including the Receiver's fees, commissions and attorney's fees, shall not be paid without the notice and further orders of the court. The aforementioned bond shall be in an amount of $10,000.00. The Order, however, shall be immediately effective. The Receiver shall have until 5:00 p.m. on November _____, 2018 to post the Receiver's bond;

    nn. The Parties and their members, employees, representatives, agents and all persons acting in concert with the Parties, for it and on its behalf, are directed to cooperate with the Receiver to the fullest extent possible and are enjoined from interfering with the Receiver's actions pursuant to this court's Order. Upon request or when deemed necessary, the Parties or their agents shall explain the operation, maintenance and management of the Parties and the Parties' assets, and provide any passwords necessary.

    oo. Nothing shall preclude the Receiver from serving as a Chapter 7 trustee for the Parties in the event a subsequent voluntary or involuntary bankruptcy proceeding is filed for or against the Parties;

    pp. Other than Plaintiff's continuance of this lawsuit, all creditors of the Parties are hereby enjoined and restrained from in any way interfering with or disturbing the property and assets of the Parties, subject to further order of this court after written motion filed and served on the Receiver and counsel for the parties.

qq.     All agents, members and employees of the Parties and all other persons interested in the Parties or their businesses or assets, except as directed or consented to by the Receiver, are enjoined and prohibited from (a) interfering with, transferring, selling, or disposing of any of the property, income or assets of the Parties, (b) from taking possession of or levying upon or attempting to sell or dispose of in any manner any part of the property of the Parties, (c) from involving themselves in the possession, operation or management of the Parties' business, or (d) in any way from interfering with the duties or performance of the Receiver except as expressly permitted by the Receiver.

rr.     The Receiver shall be authorized, empowered and directed to apply to this court, with notice to the parties, for issuance of such other orders as may be necessary and appropriate in order to carry out the mandate of this court.

ss.     For purposes of the Order, "assets" mean any legal or equitable interest in, right to, or claim to, any real or personal property, tangible or intangible, whether individually or jointly, directly or indirectly controlled, and wherever located, including, but not limited to: patents, licenses, intellectual property, chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at financial institutions), credits, receivables, lines of credit, contracts, insurance policies, and all cash, wherever located.

tt.     The Order shall be effective immediately and shall be in effect for the duration of this litigation or until otherwise ordered by the Court.

uu.     The Order shall direct the cooperation of the Sheriff of York County, South Carolina, Kevin R. Tolson with the Receiver.

vv.     The Order shall direct the South Carolina Department of Motor Vehicles to freeze the further processing of any documents pertaining to McCoy Motors and Flash to the extent such documents are not executed by the appointed Receiver.

## SECOND CLAIM FOR RELIEF
*(Alternatively, Preliminary Injunction as to McCoy III and Flash)*

421.    The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

422.    The Debtor is entitled to preliminary and permanent injunctive relief as to Defendants McCoy III and Flash.

423.    The Debtor asks this Court to freeze the assets if Flash and enter an order as to Defendants Flash and McCoy III which reflects the findings made and relief granted with respect to the Original Defendants.

## THIRD CLAIM FOR RELIEF
*(Conspiracy to Defraud and/or Aiding and Abetting Fraudulent Transfers as to McCoy, Misty McCoy and McCoy III)*

424.     The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

425.     As demonstrated by the actions set forth herein, the Defendants McCoy, Misty McCoy and McCoy III are engaged in a conspiracy to defraud the Debtor's creditors by creating Flash to take over McCoy's Motors business and shield its remaining assets from the Debtor's creditors.

426.     The Defendants McCoy, Misty McCoy and McCoy III conspired together and intentionally participated in this course of action.

### FOURTH CLAIM FOR RELIEF
### (Fraudulent Conveyance of Assets of McCoy Motors to Flash)

427.     The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

428.     McCoy transferred his ownership of McCoy Motors together with its assets, including accounts receivable, business equipment owned, leased premises, business goodwill, ongoing operations, all tangible and intangible assets, business fax number, customer base, business relations, sales methods, and skilled business employees without receiving reasonably equivalent value in exchange for the transfer.

429.     McCoy made such transfer to Flash with the intent to hinder, delay, or defraud creditors of McCoy Motors.

430.     McCoy made the transfer to Flash without receiving reasonably equivalent value in exchange for such transfer and McCoy, through McCoy Motors, was engaged in or about to be engaged in a business transaction for which remaining assets of McCoy Motors were unreasonably small in relation to the business or transactions in which McCoy Motors was or would be involved; or with intent to incur or believe McCoy Motors would incur debts beyond the ability of McCoy Motors to pay as those debts became due (N.C. Gen. Stat. §39-23.4).

431.     McCoy and McCoy Motors made such transfer without receiving reasonably equivalent value in exchange for such transfer and McCoy Motors was insolvent at the time of the transfer.

432.     The transfers made by McCoy and McCoy Motors are voidable under N.C. Gen. Stat. § 39-23.5 as to the Debtor's claims, which arose before the transfer.

433.     The Debtor has liens on any assets which were transferred to Flash, and the validity of such liens is not affected by the transfer of the assets.

434.     The Defendants engaged in acts constituting badges of fraud in that they engaged in a fraudulent conveyance of McCoy Motors assets for little to no current consideration

435.     Such conduct is in violation of the Uniform Fraudulent Transfer Act of the N.C. Gen. Stat. § 39-23.1 et sec.

436.    The Debtor, as a creditor, has been damaged by McCoy's fraudulent conveyances and conduct to defraud creditors in violation of N.C. Gen. Stat. § 39-23.1 et. sec and the Debtor, as a creditor, is entitled to exemplary damages in the amount to be determined by this Court.

## FIFTH CLAIM FOR RELIEF
*(Piercing the Corporate Veil of Flash)*

437.    The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

438.    The transfers of assets and revenues to Flash as set forth herein, as well as the fraudulent intent of such transfers, entitle the Debtor to "pierce the corporate" veil as to Flash and to recover from McCoy III damages as determined by the Court.

## SIXTH CLAIM FOR RELIEF
*(Unfair and Deceptive Trade Practices of McCoy III and Flash)*

439.    The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

440.    At all relevant times, particularly during the course of the activities described in this Second Amended Complaint, McCoy III and Flash were engaged in commerce within the meaning of N.C. Gen. Stat. § 75.1.1.

441.    McCoy III and Flash engaged in unfair or deceptive acts or practices within the meaning of N.C. Gen. Stat. § 75.1.1 as set forth herein.

442.    As a direct and proximate result of the Defendants' unfair and deceptive trade acts or practices, the Plaintiff has suffered damages in an amount to be determined at trial.

443.    As a further result of the Defendants' unfair and deceptive trade acts or practices, the Plaintiff is entitled to recover treble damages and its attorney's fees pursuant to N.C. Gen. Stat. § 75-16.

## SEVENTH CLAIM FOR RELIEF
*(Successor Liability as to Flash)*

444.    The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

445.    McCoy has repeatedly misrepresented to the Court that McCoy Motors has ceased all business operations.

446.    Despite these representations, Flash has continued the business operations of McCoy Motors, and Flash is using and profiting from McCoy Motors assets which are the collateral of the Debtor and property of the bankruptcy estate.

447.    Flash is the de factor successor of McCoy Motors.

448.    Flash is liable to the Debtor to the same extent as McCoy Motors.

## EIGHTH CLAIM FOR RELIEF
*(Conversion as to Flash and McCoy III)*

449.    The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

450.    The assets which are the subject of this Complaint are property of the Debtor's estate, and the estate is the lawful owner of such assets.

451.    The Defendants are not authorized to assume or exercise any rights ownership of such assets.

452.    The Defendants are exercising control of the Debtor's assets, to the exclusion of the Debtor's rights.

453.    The Defendants have intentionally and unlawfully converted the assets to their sole use and benefit and to the exclusion of the Debtor's rights to the assets.

454.    The Defendants' conversion of the estate's property is the proximate cause of injury to the Debtor's bankruptcy estate, in an exact amount to be proved during this Adversary Proceeding

## NINTH CLAIM FOR RELIEF
*(Violation of Automatic Stay as to Flash and McCoy III)*

455.    The Debtor re-alleges all preceding paragraphs of the Complaint, the First Amended Complaint and Second Amended Complaint and incorporates them herein.

456.    11 U.S. Code § 362 ("Automatic stay") provides in part that "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section (a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;...".

457.    The Defendants McCoy III and Flash have committed willful violations of the § 362(a)(3) for which the Debtor is entitled to relief.

458.    The Debtor requests the entry of a judgment which sanctions the Defendants McCoy III and Flash for their violations of the stay, in such amount as is determined at a trial of this adversary proceeding.

## REQUEST FOR REFERRAL OF DEFENDANTS MISTY MCCOY AND MCCOY III TO UNITED STATES ATTORNEY FOR THE WESTERN DISTRICT OF NORTH CAROLINA FOR CRIMINAL PROSECUTION

The facts of this case compel the Court to refer these matters to the United States Attorney

for the Western District of North Carolina for the criminal prosecution of Misty McCoy and McCoy III. The Debtor has previously requested the referral for McCoy. However, Misty McCoy and McCoy III have also acted in conspiracy with McCoy to violate several criminal statutes, including but not necessarily limited to: North Carolina General Statute § 14-114 ("Fraudulent disposal of personal property on which there is a security interest"); North Carolina General Statute § 14-115 ("Secreting property to hinder enforcement of lien or security interest"); 18 U.S. Code § 152 ("Concealment of assets; false oaths and claims; bribery"); and 18 U.S. Code § 157 ("Bankruptcy fraud").

## CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court:

A.      Hold a hearing on the Debtor's emergency motions and grant the relief sought therein, including the appointment of a Receiver and/or preliminarily and permanently enjoining Defendants McCoy III and Flash from further alienating or disposing of assets and property which constitute the collateral of the Debtor;

B.      Enter Judgment against the Defendants Flash and McCoy III, jointly and severally, for actual damages, punitive damages, treble damages, attorney's fees, pre- and post-judgment interest and costs on the Third through Ninth Claims for Relief;

C.      Enter Judgment against all Defendants jointly and severally for actual, punitive or treble damages as to all Claims for Relief on account of their civil conspiracy to defraud the Debtor and the bankruptcy estate;

D.      Provide in the Order that it is immediately enforceable notwithstanding the provisions of Rule 62 of the Federal Rule of Civil Procedure ("Stay of Proceedings to Enforce a Judgment"); and

E.      Provide the Debtor with such other relief as the Court deems just and proper, in law and equity.

Dated:  December 19, 2018


**THE HENDERSON LAW FIRM**

 /s/ James H. Henderson
James H. Henderson
State Bar No. 13536
1120 Greenwood Cliff
Charlotte NC 28202-2826
Telephone:      704.333.3444
Facsimile:       704.333.5003
Email:            henderson@title11.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has served the attached **SECOND AMENDED COMPLAINT** via ECF and First Class Mail  to all parties or their attorney of record requesting notice as follows:

Robert McCoy, Jr.
mccoymotors@live.com
mnmccoy@hotmail.com
robmccoy@comporium.net.


McCoy Motors and Misty McCoy
c/o Kristin Harmon Lang, Esq.
Lang Law Firm, P.C.
2435 Plantation Center Drive, Suite 205
Matthews, North Carolina 28105
kharmonlang@gmail.com

Robert McCoy, Jr.
11915 John K Hall Way
Charlotte NC 28277

Robert McCoy, III
11915 John K Hall Way
Charlotte NC 28277

Flash Autos LLC
c/o Registered Agent
Robert McCoy III
3606 HWY 51
Fort Mill, S.C. 29715

Flash Autos LLC
3606 HWY 51
Fort Mill, S.C. 29715

This 19th day of November, 2018.

**THE HENDERSON LAW FIRM**

 /s/ James H. Henderson
James H. Henderson
State Bar No. 13536
1120 Greenwood Cliff
Charlotte NC 28202-2826
Telephone:        704.333.3444
Facsimile:        704.333.5003
Email:        henderson@title11.com