United States Bankruptcy Court
Western District of North Carolina

Ace Motor Acceptance Corporation,
    Plaintiff

Adv. Proc. No. 18-03036-jcw

McCoy Motors, LLC,
    Defendant

# CERTIFICATE OF NOTICE

District/off: 0419-3      User: ea     Page 1 of 1     Date Rcvd: Dec 27, 2018
                        Form ID: pdf     Total Noticed: 6

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 29, 2018.
```
cr             +Bank of New England,   Attn: Glenn Boghosian, Esq.,   Boghosian Hawkins & Remmes,
                 45 Haverhill St.,   Andover, MA 01810-1414
dft            +McCoy Motors, LLC,   3606 Highway 51,   Fort Mill, SC 29715-8351
dft            +Misty McCoy,   11915 John K Hall Way,   Charlotte, NC 28277-2855
dft            +Robert McCoy, Jr.,   3606 Highway 51,   Fort Mill, SC 29715-8351
5834221         North Carolina Department of Revenue,   Bankruptcy Unit,   P.O. Box 1168,
                 Raleigh, NC 27602-1168
```

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
```
5834220        +E-mail/Text: cio.bncmail@irs.gov Dec 27 2018 18:27:34      Internal Revenue Service,
                 P.O. Box 7317,   Philadelphia, PA 19101-7317
                                                                                              TOTAL: 1

              ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
pla             Ace Motor Acceptance Corporation
dft             Flash Autos, LLC
dft             McCoy Motors, LLC d/b/a Ride Fast
dft             Robert McCoy, III
                                                                                   TOTALS: 4, * 0, ## 0
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 29, 2018                              Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 27, 2018 at the address(es) listed below:
```
              James H. Henderson    on behalf of Plaintiff    Ace Motor Acceptance Corporation
               henderson@title11.com, ginny@title11.com
              Kristin Harmon Lang    on behalf of Defendant Misty   McCoy kharmonlang@gmail.com
              Kristin Harmon Lang    on behalf of Defendant    McCoy Motors, LLC d/b/a Ride Fast
               kharmonlang@gmail.com
              Kristin Harmon Lang    on behalf of Defendant    McCoy Motors, LLC kharmonlang@gmail.com
              R. Keith Johnson   on behalf of Creditor    Bank of New England rkjpa@bellsouth.net
                                                                                             TOTAL: 5
```

FILED & JUDGMENT ENTERED
Steven T. Salata

December 27 2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | |
| **Ace Motor Acceptance Corporation,** | ) | Chapter 11 |
| | ) | Case No. 18-30426 |
| **Debtor.** | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| **Ace Motor Acceptance Corporation,** | ) | |
| | ) | |
| **Plaintiff.** | ) | |
| | ) | **Adversary Proceeding** |
| v. | ) | **No. 18-03036** |
| | ) | |
| **McCoy Motors, LLC;** | ) | |
| **McCoy Motors, LLC, d/b/a Ride Fast;** | ) | |
| **Robert McCoy, Jr.; and Misty McCoy** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**SUPPLEMENTAL ORDER**
**(TO NOVEMBER 21, 2018 ORDER RECOMMENDING WITHDRAWAL OF**
**REFERENCE OF ADVERSARY PROCEEDING FOR FURTHER CIVIL, AND**
**POTENTIALLY CRIMINAL, CONTEMPT PROCEEDINGS)**

**ON NOVEMBER 21, 2018** the undersigned entered an order recommending that the U.S. District Court withdraw reference[1] of this Adversary Proceeding in its entirety for the purpose of

---

[1] Pursuant to 28 U.S.C. 157(d).

undertaking further civil contempt proceedings and potentially initiating criminal contempt proceedings against Defendants, McCoy Motors, LLC ("McCoy Motors") and Robert McCoy, Jr. ("McCoy") and to consider entry of default against these defendants (the "Recommended Order") (Docket no. 104). That recommendation is pending before the Hon. Robert Conrad, U.S. District Judge.

Since entry of the Recommended Order, further hearings have taken place in bankruptcy court. Specifically, on December 18, 2018 an evidentiary hearing was conducted on the following matters:

1) Ace Motor Acceptance Corporation's ("Ace"), Motion for Order Granting Leave to File Second Amended Complaint to Add Parties and Additional Causes of Action; (Docket no. 99);

2) Ace's Motion for Order Appointing Receiver for McCoy Motors, LLC and Flash Autos, LLC (Docket no. 107);

3) McCoy's Motion for Dismissal and Opposition to the December 18, 2018 Hearing and the Appointment of Receiver (Docket no. 123);

4) Ace's Motion for Order Striking "Motion for Dismissal and Opposition to the December 18, 2018 Hearing and the Appointment of Receiver" [Doc. 109] and Imposing Sanctions on Robert McCoy, Jr. for Continued Violations of North Carolina Statutes and Local Rules Pertaining to Unauthorized Practice of Law (Docket no. 111);

5) McCoy's Motion for Order to Dismiss/Remove James Henderson as Plaintiffs/ Debtors Attorney, Refer James Henderson to the US Attorney for Perjury and NC Bar for Violation of Rules of Professional Conduct Request for Hearing Date of December 18, 2018 (Docket no. 122);

6) Ace's Motion for Order Striking Pro Se Objection by Robert McCoy to McCoy Motors, LLC Subpoena; Motion for Order Holding Robert McCoy in Further Contempt of Court Pursuant to Bankruptcy Rule 9016 and Rule 45(g) of the Federal Rules of Civil Procedure, Compelling Compliance and Requiring the Payment of Fees and Costs; Request for Emergency Hearing (the "McCoy Contempt Motion") (Docket no. 139);

7) Ace's Motion for Order Finding Robert McCoy III in Contempt of Court Pursuant to Bankruptcy Rule 9016 and Rule 45(g) of the Federal Rules of Civil Procedure, Compelling Compliance and Requiring the Payment of Fees and Costs; Request for Emergency Hearing (the "McCoy III Contempt Motion") (Docket no. 140);

8) Kristin Harmon Lang's Motion to Withdraw as Attorney for McCoy Motors, LLC, McCoy Motors, LLC D/B/A Ride Fast, Rob McCoy and Misty McCoy (Docket no. 144).

Plaintiff, Ace, appeared at the December 18, 2018 hearings through counsel and presented evidence in support of its positions. Misty McCoy and McCoy Motors likewise appeared through counsel. McCoy appeared pro se. Robert McCoy III ("McCoy III") and Flash Autos, LLC ("Flash") did not appear.

Bench orders were announced during these hearings granting some of the motions, denying others, and taking a third group under advisement, including the motion to appoint a receiver.[2]

---

[2] **Granted**: Ace's Motion for leave to amend its complaint. **Denied**: 1) McCoy's Motion for Dismissal and Opposition to December 18, 2018 Hearing and Appointment of Receiver (lack of standing); 2) McCoy's Motion for Order to Dismiss/Remove James Henderson as Plaintiffs/ Debtors Attorney, Refer James Henderson to the US Attorney for Perjury and NC Bar for Violation of Rules of Professional Conduct Request for Hearing Date of December 18, 2018; 3) Ace's Motion for Order Striking "Motion for Dismissal and Opposition to the December 18, 2018 Hearing and the Appointment of Receiver" [Doc. 109] and Imposing Sanctions on Robert McCoy, Jr. for Continued Violations of North Carolina Statutes and Local Rules Pertaining to Unauthorized Practice of Law. **Under Advisement**: 1) Ace's Motion for Order Appointing Receiver for McCoy Motors, LLC and Flash Autos LLC; 2) that portion of Ace's Motion for Order Striking McCoy's Motion to dismiss, etc. seeking sanctions against McCoy for the unauthorized practice of law; 3) Ace's McCoy Contempt Motion; and 4) Ace's McCoy III Contempt Motion. **Continued**: Attorney Lang's Motion to Withdraw.

3

Written Orders are currently being prepared and will be entered as quickly as possible.

That said, the evidence presented during these hearings provides new facts (and corrects several previously misrepresented facts) concerning post injunction actions taken by McCoy, Misty McCoy, and McCoy Motors (the "Defendants") in derogation of Ace's rights as a property owner and/or a secured creditor and this Court's orders. The undersigned believes it should summarize what was gleaned from these latest hearings for the benefit of the U.S. District Court in considering withdrawal of reference, and potential next steps in the proceeding if reference is withdrawn.

## PRIOR PROCEEDINGS

Prior proceedings in this action which led to McCoy and McCoy Motors being held in civil contempt are detailed in several orders: 1) Order Concerning Interim Servicing of Accounts of Vehicle Buyers; and Order Setting Hearing on Preliminary Injunction (the "June 25 Order") (Docket no. 8); 2) the Order Granting Motions for Preliminary Injunction and Other Emergency Relief (the "August 1 Order") (Docket no. 26); 3) the Order Finding Certain Defendants in Civil Contempt and Continuing Pretrial Conference (the "Contempt Order"); and last, 4) the Recommended Order (collectively, the "Orders").

In sum, this is a UCC foreclosure and collection action by Ace, a floorplan lender, against its borrower, McCoy Motors. Having been thwarted in its post default efforts to recover its property/collateral, Ace filed suit. What makes this proceeding unusual and procedurally difficult is the fact that the action was not brought in South Carolina state court, where McCoy Motors is located, but rather in the Western District of North Carolina—in the bankruptcy court in which Ace is a Chapter 11 Debtor in Possession.

After the action was filed, Ace quickly sought injunctive relief to secure its

property/collateral. The parties agreed to a consent order, the June 25 Order, that was intended to preserve the status quo pending a preliminary injunction hearing. That consent order kept McCoy Motors in possession of the underlying property and allowed McCoy Motors to continue to collect customer accounts, but it also required the Defendants to preserve the property, account for the same, and to escrow collections. Unfortunately, the Defendants made little or no effort to comply with the June 25 Order. As a result, and after a further evidentiary hearing, the August 1 Order was entered—a mandatory, preliminary injunction. The August 1 Order awarded Ace possession of the underlying property pending trial (subject to a requirement to preserve the assets, account for the same, and escrow collections) and terminated McCoy Motors' right to collect the customer accounts.

     Again, the Defendants failed to comply with the August 1 Order. Among many things, they prevented Ace from entering McCoy Motors' premises to obtain possession of its vehicle inventory, they continued to repossess cars and collect payments from customers and secreted the same, they made no effort to provide any accounting, and they undertook efforts intended to give the impression that McCoy Motors had gone out of business. According to the Defendants' testimony, shortly after the August 1 Order was entered, McCoy Motors closed, sent its records to the South Carolina Department of Motor Vehicles, surrendered possession of its location to the landlord, and was now defunct. The Defendants maintained that a new and entirely independent entity, Flash, was now operating at the site. While Ace demonstrated that Flash was a newly formed business owned by the McCoy's 20-year-old son, McCoy III, a college student, the Defendants maintained that they were not involved in its formation and were entirely ignorant of its business affairs. The Defendants' contentions in this regard were incredible and were rejected. It appeared that Flash was a sham.

McCoy and McCoy Motors were held in civil contempt for failing to comply with the June 25 Order and the August 1 Order; as well as the Order Continuing Hearing to September 18, 2018 on Conditions. However, Defendant Misty McCoy was not held in civil contempt. Both McCoy and Misty McCoy testified at the contempt hearing that Misty McCoy was not an active employee of McCoy Motors and was not a participant in any of these matters. Lacking access to McCoy Motors' premises and records, Ace was unable to prove otherwise.

The contempt hearing was followed by a purge hearing on November 6, 2018. On that date, McCoy and McCoy Motors had not in any way purged themselves of their contempt. Thus, the undersigned bankruptcy judge entered the November 21, 2018 Recommended Order—it appearing that nothing less than incarceration of McCoy for civil contempt would secure compliance with the undersigned's prior orders.[3] It further appeared that these parties were also guilty of criminal contempt.[4]

Meanwhile, the present motions were joined and scheduled for hearing in bankruptcy court on December 18, 2018. Notably, Ace now asks that a receiver be appointed for McCoy Motors and Flash.

Seeking testimony and documentation to support its motions, Ace served subpoenas and subpoenas duces tecum upon McCoy Motors, McCoy III/Flash and others. (Docket nos. 116 and 119). None of the parties subpoenaed sought protection from the subpoenas. McCoy did attempt to quash the subpoenas and to force a continuance of the December 18, 2018 hearings. However, McCoy was not a subject of the subpoenas, he did not assert any interest or privilege in the same,

---

[3] Although bankruptcy judges have civil contempt powers, including the power to arrest recalcitrant parties to secure compliance with their orders, the longstanding local district practice has been to address such matters in U.S. District Court

[4] It is generally understood that bankruptcy judges do not possess criminal contempt powers. *See Souther v. Tate (In re Tate)*, 521 B.R. 427, 440 (Bankr. S.D. Ga. 2014).

6

and as McCoy Motors is an incorporated business represented by counsel, he was not able to object on its behalf. In any event his objections were without merit and were overruled.

Two of the subpoenaed parties, McCoy Motors and McCoy III failed to respond to the subpoenas. Neither produced any of the requested documents or information. McCoy Motors appeared at this latest hearing but offered no excuse for its failure to respond to its subpoena. McCoy III/Flash did not appear at the December 18, 2018 hearings. Accordingly, both are subject to civil contempt and discovery sanctions for failing to obey the subpoenas without adequate excuse. Fed. R. Civ. P. 45(g).

## SUPPLEMENTAL FINDINGS AND CONCLUSIONS

In spite of these failures to respond to valid subpoenas, Ace was able to present evidence at the December 18, 2018 hearing which demonstrated that McCoy and McCoy Motors remain in contempt of this Court's orders. In fact, the new evidence confirmed that all of the Defendants have been engaged in, and are still embarked on, a wholesale effort to secret and convert Ace's property/collateral. Notably, Ace presented the testimony of a former employee of McCoy Motors and Flash, Austin Robertson ("Robertson"). Robertson was a credible witness with personal knowledge of the actions of McCoy, Misty McCoy, McCoy Motors, McCoy III, and Flash during the times in controversy. Defendants did little, if anything, to refute Robertson's sworn testimony, and on this occasion offered no witness testimony in their own in defense of Ace's motions.

Robertson's testimony confirms that McCoy and Misty McCoy perjured themselves on numerous occasions at the September 26, 2018 and November 6, 2018 hearings. It also indicates that the Defendants' prior representations about their efforts to comply with the aforementioned injunctions and contempt orders were false. The following facts are now clear:

1. The Defendants have, and continue to, conceal and dispose of Ace's collateral in

7

contravention of this Court's orders.  During the pendency of this proceeding, McCoy and Misty McCoy continued to collect car payments from customers, but would only accept cash or money orders from McCoy Motors customers so that no "money trail" was created.

    2. Additionally, McCoy directed Robertson to move vehicles (Ace's collateral) behind a locked fence.  McCoy further hid or attempted to hide an additional 50 vehicles at other locations.  Finally, McCoy instructed Robertson and other McCoy Motors employees to remove valuable parts from McCoy Motors' vehicles in order to use them to repair and improve Flash's vehicles.

    3. McCoy went on a spending spree in order to create the appearance that neither McCoy nor McCoy Motors had any money or assets.  McCoy recently paid Robertson to do substantial work on his home and purchased three ATV's, a UTV, two Harley Davidson motorcycles, a Tahoe, a Camaro, a BMW, and a boat.  Previously McCoy had advised this Court that he was without income.  He did not explain how he was able to make such weighty purchases given his alleged financial extremity.

    4. On September 26, 2018, McCoy and/or Misty McCoy testified that: 1) Misty McCoy was not an employee of McCoy Motors or Flash; 2) Misty McCoy was unemployed as of the time of the September 26, 2018 hearing; 3) Misty McCoy did no accounting work for McCoy Motors; and 4) Misty McCoy was not privy to the day to day transactions of McCoy Motors.  Contrary to those statements, from Robertson's testimony it now appears that Misty McCoy was a 30 hour per week employee of McCoy Motors and a direct participant in the events that caused McCoy and McCoy Motors to be held in civil contempt.

    5. With respect to McCoy Motors and Flash Autos, Robertson's testimony about his own involvement in the two entities demonstrates that Flash is but a continuation of McCoy Motors under another name.  Robertson first worked for McCoy Motors under McCoy's direction.

Robertson continued to work, without disruption, after the alleged close of McCoy Motors, but for Flash, again at McCoy's command. Robertson did repo work and sold cars on behalf of Flash, despite the fact that he never filled out employment forms for Flash. Similarly, Robertson continued to do repo work on behalf of McCoy Motors during the same time period, even though McCoy previously testified to the contrary. Essentially the same employees remained at Flash as had worked at McCoy Motors. The only significant change in Robertson's employment, apart from differing operating hours, was that as a Flash employee, he no longer received direct deposit payments for his work. Rather, he was paid by endorsing a check given to him by either McCoy or Misty McCoy, returning the endorsed check to McCoy or Misty McCoy, and then McCoy or Misty McCoy would pay Robertson in cash—he was never paid by McCoy III or Flash Autos.

6. In contrast to the two McCoy's prior testimony that they had nothing to do with Flash, Robertson testified that McCoy helped McCoy III create Flash; that McCoy is present at the business on a daily basis; that McCoy maintains the same office there today as he did when McCoy Motors was operating; and that McCoy advises his son on Flash's business operations, including approving its business deals. Meanwhile, Misty McCoy currently works for Flash in the same capacity that she did for McCoy Motors. She too aided McCoy III in creating Flash, providing the credit card to purchase and helping Robertson pick out the paint by which he repainted McCoy Motors' location for use by Flash.

7. At the November 6, 2018 hearing, an issue arose of whether the Defendants had attempted to intimidate Ace and its counsel by use of a Facebook account purporting to be a woman named "Amanda Small." Ace contended that the Defendants had used this Facebook account to post disparaging references about Ace and its counsel, including an attempt to "friend" Mr. Henderson's children so as to further the disparagement. On that occasion McCoy testified and

9

denied knowing anything about any such Facebook account. He further denied creating any Facebook posts regarding the parties/counsel to this proceeding. However, at the December 18, 2018 hearing, Robertson confirmed that McCoy regularly used a fake Facebook account under the name "Amanda Small" in the course of McCoy Motors' business. The account was employed to "find cars and trick the customer" such that their cars could be repossessed. Robertson further testified that McCoy created a Facebook post about an Ace employee. Thus, it now appears that Defendants McCoy Motors and McCoy were in fact reprehensibly employing the Small Facebook page in an effort to embarrass and intimidate Ace and its Counsel.

### SUPPLEMENTAL CONCLUSIONS AND FURTHER RECOMMENDATIONS

It is now clear that Flash is one and the same as McCoy Motors. Further, McCoy, Misty McCoy, and McCoy Motors are actively transferring, dissipating, concealing, moving, and disposing of the property at issue in this action and are being aided in these endeavors by their son, McCoy III and Flash. Additionally, it appears McCoy and Misty McCoy have perjured themselves in this action.

Previously, Misty McCoy appeared not to be complicit in these untoward actions. Robertson's testimony demonstrates that this conclusion was erroneous, founded on false testimony, and should be reconsidered. As an active participant in these misdeeds, Misty McCoy should be included in the civil contempt citation previously made against the other defendants; further, she too should be included in any criminal contempt charges.

Given these continued activities of Defendants to defeat Ace's rights as an owner of accounts and a secured lender of the Defendants with a blanket lien on their assets, it is paramount that prejudgment remedies be employed to preserve these assets pending trial. Purely on factual grounds, cause exists to appoint a receiver for the Defendant corporations.

However, as the follow-on decision on the receivership motion will explain in greater detail, there are jurisdictional and procedural difficulties in providing this relief in federal court—especially in a bankruptcy court. The Federal Bankruptcy Rules, which govern this action, do not contain an analogue to Rule 66 of The Federal Rules of Civil Procedure, the federal receivership rule. Thus it has been held that a bankruptcy court may not appoint a federal receiver. *See Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 873 (Bankr. N.D. Ill. 2006).

7. As *Teknek* explains, there is an analog to FRCP 64 found in FRBP 7064, which permits a federal court sitting in bankruptcy to exercise any prejudgment remedies provided under the law of the state where the federal court sits. *Id.* at 871. In this case that would mean employing North Carolina prejudgment remedies, including state receivership, in South Carolina. The weight of authority suggests that such state prejudgment remedies may not be exercised across state lines. *See* C.J.S., Attachment § 100 ("[T]he court cannot attach property which is not within the territorial limits of its jurisdiction.") *See also, Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 1965 A.M.C. 234, 12 A.L.R.3d 1081 (2d Cir. 1965) (Account in bank branch in Southern District of New York is outside jurisdiction of U.S. District Court for the Eastern District of New York); *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 606, 1997 A.M.C. 2938 (S.D. N.Y. 1997) ("[F]or … attachment to be appropriate, it is clear that the property must be located within the district…") (emphasis in original). *Accord Allied Maritime Inc. v. Descatrade SA*, 2010 A.M.C. 1949, 2009 WL 4884160 (S.D. N.Y. 2009), order aff'd, 620 F.3d 70, 2011 A.M.C. 54 (2d Cir. 2010). McCoy Motors and most of the property at issue is located in South Carolina.

8. There may be an ability to appoint a receiver under these egregious facts under the U.S. District Court's supplemental jurisdiction pursuant 28 U.S.C. § 1367. Receivership is after all an

11

ancillary proceeding. However, the weight of authority suggests that bankruptcy courts do not possess supplemental jurisdiction.

9. By contrast, federal <u>injunctive</u> relief appears to be available under federal law of equity and under FRBP 7065. As noted, this is essentially an action by a secured creditor to obtain possession of and to liquidate its collateral. However, freeze orders can be authorized under Rule 65 in suits at equity or where the plaintiff has a security interest in the property at issue. *See Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 158 (1st Cir. 2004); *see also U.S. ex rel. Rahman v. Oncology Associates*, 198 F.3d 489, 496–497, 45 Fed. R. Serv. 3d 131 (4th Cir. 1999).

10. Of particular importance, under facts like those presented, a secured lender is entitled to a mandatory injunction to require the borrower to gather its collateral and to "freeze" the same. *See Clark Equipment Co. v. Armstrong Equipment Co.*, 431 F.2d 54, 7 U.C.C. Rep. Serv. 1249 (5th Cir. 1970) (Where state law authorized and the security agreement required the debtor, on default, to assemble and make available to the creditor property subject to a lien, the federal court had jurisdiction to grant mandatory injunction directing defaulting debtor to assemble equipment and other property subject to security agreement, even though it was situated in several states, and make it available to creditor; creditor was not required to resort to state remedy of detinue.)

11. Obviously, the Defendants have not been deterred by this bankruptcy courts' prior injunctive orders, nor its order imposing financial sanctions for civil contempt. Given the limited options, it would appear that incarceration of McCoy would be a next, necessary step to obtain compliance.

12. Consequently, the undersigned recommends that reference of this adversary proceeding be withdrawn in its whole, that further proceedings be conducted on an expedited basis, and that

Misty McCoy be included with the other Defendants in any contempt proceedings.

    **SO ORDERED**.

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |